Steven L. Hoard, SBN: 09736600
MULLIN HOARD & BROWN, L.L.P.
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone: (806) 372-5050
Facsimile: (806) 372-5086
shoard@mhba.com

David R. Langston, SBN 11923800
MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806)765-7491
Facsimile: (806) 765-0553
Email: drl@mhba.com

*Counsel for Creditor Amarillo National Bank*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| PRIMALEND CAPITAL PARTNERS, LP, *et al.* | § § § | Case No. 25-90013 (MXM) |
| *the Debtor.* | § § | |

**AMARILLO NATIONAL BANK'S OBJECTION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING (A) POSTPETITION FINANCING AND (B) THE USE OF CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINSTRATIVE EXPENSE CLAIMS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF[1]**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COMES AMARILLO NATIONAL BANK ("**ANB**"), a creditor in the above-captioned Bankruptcy Case, and files this its Objection to (the "**Objection**")[2] Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A) Postpetition

---

[1] Creditor Amarillo National Bank ("ANB") received Debtors' Motion on the evening of October 22, 2025 and was notified at the time of the emergency hearing on Debtors' motion set for October 24, 2025—less than two days later. Given that short time frame, ANB immediately began preparing its objection. ANB reserves the right to supplement its response and objection, and the failure to raise an argument in this initial objection should not be construed as a waiver.

[2] ANB and Debtors are continuing to negotiate the relief requested in Debtors' Motion and ANB's objections to that requested relief and are continuing to work toward a resolution of those disagreements. But given the short time between Debtors' filing of its Motion and the emergency hearing set to consider that Motion, it was necessary for ANB to file its objection without waiting to see if a resolution with Debtors could be reached.

Financing and (B) the Use of Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Lenders, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related ("**Motion**"). In support of such Objection, ANB would respectfully show the Court as follows:

## I. JURISDICTION

1. The United States Bankruptcy Court for the Northern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(M). Venue in this Court is proper under 28 U.S.C. § 1408.

## II. FACTUAL BACKGROUND

2. On October 22, 2025 (the "**Petition Date**"), Debtors filed for relief under Chapter 11 of the Bankruptcy Code and sought the joint administration of their respective bankruptcy cases.

3. Debtors are three affiliated companies in the auto lending industry—PrimaLend Capital Partners, LP ("**PCP**"), Good Floor Loans LLC ("**Good Floor**"), and LNCMJ Management, LLC ("**LNCMJ**," collectively, the "**Debtors**"). Good Floor makes floorplan revolving lines of credit to buy-here-pay-here car dealerships to finance the purchase of their vehicle inventory. And PCP makes revolving lines of credit, as well as term loans, against the value of the buy-here-pay-here dealers' portfolio of retail installment contracts.

4. ANB is a secured creditor of Good Floor. As of the Petition Date, Good Floor owed ANB approximately $16.2 million[3] in unpaid principal. As security for the amounts it lent to Good Floor, ANB holds a perfected security interest on essentially all of Good Floor's assets.

---

[3] This amount is an approximation and does not include accrued interest, fees, or any other amount owed by Good Floor to ANB.

Included in that collateral is approximately $1.5 million in cash collateral that was derived from the proceeds of ANB's collateral (the "**Cash Collateral**"). *See* 11 U.S.C. § 552(b) (". . . if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds . . . of such property, then such security interest extends to such proceeds . . . ."). For purposes of its Motion, Good Floor admits this $1.5 million constitutes cash collateral under 11 U.S.C. § 363(a). *See* ECF 30-2 at 73 (Good Floor Loans – Cash Collateral Budget).

5.      By way of its Motion, Good Floor seeks an order granting permission to use ANB's Cash Collateral to continue to operate its business. *See generally* Motion. Good Floor argues that the use of the Cash Collateral is "necessary to stabilize and maintain operations and avoid immediate and irreparable harm." Motion at 35. Good Floor argues that the ability to use the Cash Collateral to fund its operations will allow it to continue servicing the floor plan revolving lines of credit it makes to buy-here-pay-here dealerships to finance their vehicles inventories and avoid the need for a quick liquidation of that collateral, which (according to Good Floor) would have "catastrophic consequences for the value of ANB's collateral." Motion at 35. Good Floor argues that avoiding such a result provides ANB with adequate protection. Good Floor also proposes to grant ANB "replacement liens on all future acquired property and interests of any nature whatsoever" as additional adequate protection. *Id.* at 35-36.

6.      As further discussed below, ANB objects to Debtors' request for permission to use ANB's Cash Collateral because ANB has not consented to the use of its Cash Collateral and Debtors' proposed plan does not offer ANB adequate protection for the use of its Cash Collateral.

## III. ARGUMENT IN SUPPORT OF OBJECTION TO DEBTORS' MOTION TO USE CASH COLLATERAL

7. ANB objects to Debtors' Motion for an order authorizing the use of ANB's Cash Collateral because Debtors request does not comply with section 363 of the Bankruptcy Code.

8. At the outset, the cash on hand at Good Floor as of the Petition Date constitutes cash collateral under the Bankruptcy Code. The Bankruptcy Code defines "cash collateral" to include "cash, . . . deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the . . . proceeds, products . . . or profits of property . . . whether existing before or after the commencement of a case[.]" 11 U.S.C. § 363(a). The cash on hand at Good Floor as of the Petition Date of approximately $1.5 million complies with this definition, and Debtors have admitted as much in their Motion. *See* ECF 30-2 at 73 (Good Floor Loans – Cash Collateral Budget).

9. A debtor-in-possession "may not use, sell, or lease cash collateral . . . unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." 11 U.S.C. § 363(c)(2). Because ANB has not consented to the use of its Cash Collateral, the Court must deny Debtors' Motion unless Debtors can show—by a preponderance of the evidence—that ANB's interest in the Cash Collateral is adequately protected. *Id.* § 363(e) & (p).

10. Adequate protection "must not be illusory and, particularly in the context of the use of cash collateral, must be 'of the most indubitable equivalence.'" *In re Goode*, 235 B.R. 584, 589 (Bankr. E.D. Tex. 1999) (quoting *In re Waste Conversion Technologies, Inc.*, 205 B.R. 1004, 1007 (D. Conn. 1997)). Thus, in considering Debtors' Motion, the court "should not focus on 'whether or not it is in the best interest of the Debtor and the secured creditor,'" but instead

"'whether or not the Debtor carries its burden to show that its use of the cash collateral will not reduce the value of the creditor's interest in the property without providing adequate protection—the indubitable equivalent of the creditor's interest in the property.'" *Id.* (quoting *In re Glasstream Boats, Inc.*, 110 B.R. 611, 613 (Bankr. M.D. Ga. 1990)). Debtors cannot carry this burden.

11. *First*, Debtors argue that the very act of using the Cash Collateral to continue operating its business—primarily servicing the dealer floor plan loans it has outstanding—will avoid a speedy liquidation of the collateral that would be detrimental to ANB's interest in the Collateral. But as discussed, the question is not "whether or not it is in the best interests of the Debtor and the secured creditor" to allow the use of a secured creditor's cash collateral. *Id.* (quotation omitted). The question is instead whether Debtors have carried their burden to show that their plan will provide adequate protection. Thus, Debtors' argument that the operation of the business will be in ANB's best interest fails as a matter of law.

12. To the extent Debtors argue that a reorganization will be impossible unless they are allowed to use the Cash Collateral to continue to operate their business, that fact does not justify the use of cash collateral, in the absence of some meaningful protection of the creditor's interest. *See Goode*, 235 B.R. at 589-90. Moreover, ANB is the secured creditor of Good Floor and should be entitled to decide the disposition of the collateral securing their loan to Good Floor. Debtors' argument fails.

13. *Second*, Debtors' own budget for Good Floor demonstrates that their plan to use the Cash Collateral will not offer adequate protection. Good Floor's "Cash Collateral Budget" attached as an exhibit to its Motion projects that Good Floor will have *negative* cash flow for each of the five weeks shown in the budget—depleting ANB's Cash Collateral by a total of

approximately $89,000, or approximately 5.9%, in just five weeks.

### Exhibit C

**Good Floor Loans - Cash Collateral Budget**

| ($ thousands) | 1<br>31-Oct[1] | 2<br>7-Nov | 3<br>14-Nov | 4<br>21-Nov | 5<br>26-Nov |
|---|---|---|---|---|---|
| **Cash Flow** | | | | | |
| Net Dealer-Borrower Activity | $ 47 | $ 47 | $ 47 | $ 47 | $ 46 |
| Operating Disbursements | (15) | (36) | (19) | (33) | (22) |
| Restructuring Costs | (62) | (37) | (37) | (37) | (44) |
| **Net Cash Flow** | $ (30) | $ (26) | $ (9) | $ (23) | $ (19) |
| **Liquidity** | | | | | |
| Beginning Cash[2] | $ 1,513 | $ 1,483 | $ 1,457 | $ 1,447 | $ 1,424 |
| Net Cash Flow | (30) | (26) | (9) | (23) | (19) |
| **Ending Cash** | $ 1,483 | $ 1,457 | $ 1,447 | $ 1,424 | $ 1,405 |

**Notes:**
(1) Week ending 10/31 includes 10/22-10/31.
(2) Beginning cash balance estimated as of the Petition Date.

ECF 30-2 at 73. Thus, Good Floor's use of the Cash Collateral will only further deplete the value of the Cash Collateral. That is not adequate protection.

14. *Third*, Good Floor's offer to provide adequate protection in the form of "replacement liens on all future acquired property and interests of any nature whatsoever," Motion at 35-36, fails because Good Floor has no control over whether a dealer pays off existing indebtedness, which in turn reduces the collateral base of ANB, and neither does it have any control over whether a particular dealer requests an advance on its line of credit. In addition, the use of the cash collateral itself on expenditures that produce no new value will result in significant diminution in the amount of ANB's collateral. For example, the expenditure of funds on professional fees does not in itself produce new value. Furthermore, the fluctuation caused by

requests for loan advances by by-here-pay-here dealers, coupled with repayments which reduce the principal balance of notes of unknown quantities, risks the diminution of ANB's collateral without any concomitant increase in collateral value due to the replacement liens. The historical trends over the last few months have shown the collateral values to diminish. Thus, replacement liens may be in place, but in spite of this, if the collateral base is reduced due to factors beyond the control of the Debtors, it creates a collateral deficiency for which there may be no future remedy. That is not adequate protection. And when viewed in conjunction with the Good Floor's declining cash position as outlined in its proposed Cash Collateral Budget, it becomes apparent that Debtors have failed to carry their burden to demonstrate that ANB's Cash Collateral will be adequately protected.

15. *Fourth*, it should also be noted that ANB's loan to Good Floor is significantly undersecured. Thus, there is no "equity cushion" to look to provide adequate protection of ANB's cash collateral.

16. Because Debtors have failed to carry their burden to demonstrate that ANB's Cash Collateral will be adequately protected, the Court should deny Debtors' Motion to the extent it seeks permission to use the ANB's Cash Collateral.

## IV. CONCLUSION

17. For these reasons, ANB objects to the Debtors' Motion and respectfully requests an Order (1) prohibiting the Debtors from using cash collateral in its possession, custody, or control and (2) requiring the Debtors to provide an accounting, as well as appropriate segregation under section 363(c)(4) of the Bankruptcy Code, of ANB's cash collateral in the Debtors' possession, custody, or control.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, AMARILLO NATIONAL BANK ("**ANB**" or the "**Movant**"), prays that the Bankruptcy Court enter an Order (1) prohibiting the Debtors, PrimaLend Capital Partners, LP, Good Floor Loans LLC, and LNCMJ Management, LLC (the "**Debtors**") from using cash collateral; (2) requiring the Debtors to provide an accounting, as well as appropriate segregation under section 363(c)(4) of the Bankruptcy Code, of ANB's cash collateral in the Debtors' possession, custody, or control; and (3) for such other and further relief as is just.

Respectfully submitted,

/s/ *Steven L. Hoard*
Steven L. Hoard, SBN: 09736600
shoard@mhba.com
MULLIN, HOARD & BROWN, L.L.P.
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone: (806) 372-5050
Facsimile: (806) 372-5086


David R. Langston
MULLIN, HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806)765-7491
Facsimile: (806) 765-0553
Email: drl@mhba.com
***Attorneys for Amarillo National Bank***

## **CERTIFICATE OF SERVICE**

      This is to certify that a true and correct copy of the foregoing Objection was sent via ECF Notification, on this 23rd day of October, 2025, to the following listed parties in interest:

1.     Jason P. Kathman
    Laurie N. Patton
    Alex Anderson
    SPENCER FANE LLP
    5700 Granite Parkway, Suite 650
    Plano, Texas 75024
    ***Proposed Attorneys for the Debtors***

2.     United States Trustee's Office
    1100 Commerce Street
    Room 976
    Dallas, Texas 75202

3.     All others requesting notice through this Court's ECF system.

                                             /s/ *Steven L. Hoard*
                                             Steven L. Hoard