Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
akaufman@grayreed.com

Harrison Denman (*pro hac vice* pending*)*
Laura Garr (*pro hac vice* pending)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: harrison.denman@whitecase.com
laura.garr@whitecase.com

*Counsel to the Ad Hoc Group of PCAP Unsecured Noteholders*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PRIMALEND CAPITAL PARTNERS, LP, *et al.*, | ) | Case No. 25-90013 (MXM) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |

**OBJECTION OF THE AD HOC GROUP OF PCAP
UNSECURED NOTEHOLDERS TO INTERIM APPROVAL OF THE DIP MOTION**

The ad hoc group of holders (the "**Ad Hoc Group**," with each individual member a "**Holder**") of approximately 90% of the 6.50% Senior Secured Notes due 2028 (the "**Notes**") issued pursuant to those certain note purchase agreements, dated as of July 9, 2021, by and among PCAP Holdings LP ("**PCAP**" or the "**Borrower**," and together with its affiliates, the "**Company**"), hereby states as follows in support of this objection (the "**Objection**") to entry of an interim order (the "**Proposed Interim Order**") granting the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Lenders, (IV) Modifying*

---

[1] The debtors and debtors in possession in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of their respective Employer Identification Numbers, are as follows: PrimaLend Capital Partners, LP (0313) ("**PCP**"), Good Floor Loans LLC (8219) ("**GFL**"), and LNCMJ Management, LLC (1374) ("**LNCMJ**"). The location of the Debtors' headquarters is 3460 Lotus Dr. Ste. 100, Plano, TX 75075.

*the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 30] (the "**DIP Motion**"):[2]

## PRELIMINARY STATEMENT

1. The Ad Hoc Group has grave concerns regarding how PrimaLend conducted its affairs over the past years, including with respect to prepetition fraudulent transfers; how certain of its lenders transacted with insiders at what appears to be other than arms-length; how its insiders encumbered estate property to leverage their influence over the company during a period of distress; how PrimaLend purports to have entered into certain insider transactions on the eve of bankruptcy via the Exchange Transaction;[3] and how those same insiders may have directed PCAP in its recent engagement with its unsecured noteholders. These concerns – and others – will need to be addressed over the course of these Chapter 11 Cases. But the most immediate of the Ad Hoc Group's concerns is one that directly implicates the relief requested from the Court in the DIP Motion: how Primalend's directors elected to file three of its entities for chapter 11 – but not its primary obligor on its outstanding funded debt.

2. That is surprising because PCAP is the most distressed of all PrimaLend entities: It guarantees over $160 million in outstanding first lien obligations and issued $75 million in unsecured notes; it admitted to being in default since November; it failed to make the required interest payment in July; it has been living under a noticed Event of Default since March; its parent and subsidiaries are now in chapter 11; and its noteholders have been engaged in restructuring negotiations with PrimaLend for months. Those discussions included offers by the Ad Hoc Group to fund a plan of reorganization and a DIP, a new iteration of which was just submitted by the Ad Hoc Group to PrimaLend yesterday. And yet, PCAP alone has

---

[2] Capitalized terms not otherwise defined in filed Objection shall have the meanings ascribed to them in the DIP Motion or the First Day Declaration, as applicable.

[3] *See Declaration of Tanya Meerovich in Support of Debtors' Chapter 11 Petitions and Requests and First Day Relief* [Docket No. 29] (the "**First Day Declaration**"), ¶ 42

declined to file for chapter 11.

3. PCAP's attempt to evade court supervision warrants scrutiny. And insofar as PCAP remains out of bankruptcy court supervision, it will be unable to grant, or receive, chapter 11 releases or discharges.

4. The DIP Motion, however, asks the Court to intervene with respect to these issues now at a first day hearing on an emergency basis with next to no notice. It does so in two ways. <u>First</u>, the DIP Motion seeks to frustrate the Ad Hoc Group's competing proposals for DIP financing and global consensus, by imposing a 3:1 roll up on the new money financing and by tactically weaponizing the decision by PCAP to keep itself out of bankruptcy. <u>Second</u>, the DIP Motion seeks (i) to impose DIP guaranty obligations on PCAP and (ii) approval of releases by PCAP of the DIP Secured Parties. *See* DIP Motion at ¶ 6(i) (naming non-debtor PCAP as a guarantor); Ex. B ("Stipulations and Releases"). Each issue is addressed herein.

## **OBJECTION**

### I. The DIP Financing Is Part of a Strategy to Frustrate Creditors and Protect Insiders

5. Transparency, and process protections for creditors, are fundamental to chapter 11. *See Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 431–32 (5th Cir. 2022). Keeping PCAP out of bankruptcy, while simultaneously racing to court seeking aggressive DIP financing, frustrates these two objectives.

6. Shielding PCAP from the Bankruptcy Court undermines transparency as to this Company. In February 2025, PCAP notified its noteholders that the Company had incurred a large write-off in the fourth quarter of 2024. That write-off substantially exceeded prior write-offs and is so inexplicable as to warrant scrutiny of the Company's accounting practices. To date the Company has not offered any explanation for the sudden deterioration in its business. Instead, the First Day Declaration simply blamed COVID-19. First Day Dec. at ¶¶ 30–33. At

3

the same time, the Company has disclosed significant intercompany transactions over the past year. *See id.* at 35, 40–42. Many of these transactions involved insiders. *Id.* at 35, 41, 42.[4]

7. Nor did these insider transactions cease before the commencement of restructuring discussions. On the eve of bankruptcy, the Company purports to have reached an "agreement in principle" on an insider transaction that could impact the value of its assets. As the Company discloses in its First Day Declaration:

> *In response, the Debtors and their advisors engaged in negotiations with BVY2 and its advisors regarding a potential transaction to resolve the issues related to the concerns raised by the Potential Purchaser. Prior to the Petition Date, the Debtors and BVY2 reached an agreement in principle, that the Potential Purchaser has also reviewed, that involves BVY2 transferring its BVY2 Participations in 27 loans to PCP, in exchange for PCP transferring to BVY2 5 loans in which BVY2 owns BVY2 Participations (the "Exchange Transaction"). The Exchange Transaction results in PCP owning 27 loans unencumbered by the obligations of the BVY2 Participation Agreements and BVY2 Consent Rights.*

First Day Dec. ¶ 42. Presumably the Company intends to seek Court approval for this Exchange Transaction.

8. 

9. Scrutiny is therefore needed to verify these prepetition transactions and ascertain the extent of potential claims and causes of action. PCAP's unsecured noteholders, however, are the constituency most incentivized to get to the bottom of what happened here.

---

[4] Indeed, the insiders themselves have implicitly recognized the blurred boundaries between their assets and estate property. For example, in its limited objection and reservation of rights with respect to the DIP Motion (the ("**BVY II DIP Objection**"), BVY Partners II LLC objects on the basis that the Company's current systems may fail to adequately set aside revenues that belong to the insiders, not the Company. *See* BVY DIP Objection at ¶ 8.

PCAP's decision to avoid bankruptcy appears intended to attempt to deprive its unsecured noteholders of standing in the Chapter 11 Cases. It likewise appears designed to lessen the likelihood of the formation of an official committee of unsecured creditors.

10. At the same time, the DIP financing – and in particular its roll-up component – would prejudice the Ad Hoc Group's ongoing efforts to negotiate a global consensual resolution to these cases. For months, the Ad Hoc Group has engaged in good faith with the Company on the contours of a consensual resolution to these cases which would include DIP Financing and a new money chapter 11 plan. Those conversations continued until the morning of the bankruptcy filing, for which no advance notice was provided.

11. To continue those conversations, the Ad Hoc Group made another DIP financing proposal to the Company yesterday. That proposal is plainly superior to that pending before the Court. It offers $10 million in new money financing and a four-month term, as opposed to the proposed financing which offers only $4 million in new money and a one-month term.

12. Moreover, the proposed financing includes a 3:1 roll-up of the prepetition first lien loans. As a result, although the proposed DIP only funds $4 million in new money, it could layer on as much as an additional $12 million in superpriority debt that would need to be refinanced in full under any competing proposal, all to the detriment of the Ad Hoc Group's efforts to propose competing financing and plan structure alternatives.

**II.   The DIP Motion Seeks to Impose Impermissible, and Unjustified, Guaranty Obligations on PCAP and Provide Releases from PCAP to the DIP Secured Parties**

13. The DIP Motion requests approval for the imposition of a guaranty obligation on non-debtor PCAP and releases from PCAP to the DIP Secured Parties. DIP Motion, Ex. B. The legal basis for this request is unstated, and unknown. Not being subject to the Bankruptcy Code, PCAP and its creditors cannot receive the same benefits and protections that it awards

5

to stakeholders of Debtors subject to postpetition financing obligations. For example, no good faith finding is required, or can be offered, to vouchsafe the incurrence of these incremental debt obligations.

14. It is also unclear whether PCAP even supports the imposition of these obligations and releases. PCAP itself did not file the request for, or announce its support for, the imposition of these new obligations. That is not surprising because PCAP will not be receiving any benefit in exchange for its incurrence of the debt obligations. As the Debtors' cash management motion makes clear, the funds will never touch PCAP.[5] As the DIP Budget makes clear, the funds will never be utilized by PCAP. PCAP will also not receive anything in exchange for the releases it purports to grant to the "current and future" DIP Secured Parties.

15. PCAP should file for chapter 11 and rejoin its fate to that of its affiliated Debtors. At that point, the incurrence of DIP guaranty obligations or grant of releases can be entertained alongside the full suite of benefits and burdens that are otherwise imposed on entities subject to the Court's protection. *See Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 205–06 (2024) (finding that the benefits of the Bankruptcy Code are reserved to the debtor who offered a "fair and full surrender of its property"). Absent filing for bankruptcy, however, the Court should decline to render PCAP a guarantor of the DIP obligations or approve the releases provided by PCAP to the DIP Secured Parties.

*[Remainder of page intentionally left blank.]*

---

[5] *Debtors' Emergency Motion (I) Authorizing the Debtors to (A) Continue to Operate their Existing Cash Management System and Maintain Existing Bank Accounts, (B) Continue Using Existing Checks and Business Forms, (C) Maintain their Corporate Card Program, and (D) Continue Intercompany Transactions; (II) Waiving Certain UST Guidelines; And (III) Granting Related Relief* [Docket No. 20], Exs. B and C.

Respectfully submitted this 24th day of October, 2025.

**GRAY REED**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Aaron M. Kaufman
    Texas Bar No. 24060067
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:    jbrookner@grayreed.com
          akaufman@grayreed.com

– and –

**WHITE & CASE LLP**

Harrison Denman (*pro hac vice* pending*)*
Laura Garr (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:    harrison.denman@whitecase.com
          laura.garr@whitecase.com

*Counsel to the Ad Hoc Group of PCAP Unsecured Noteholders*

## Certificate of Service

I certify that on October 24, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Jason S. Brookner*
Jason S. Brookner