Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11    Doc 167-1    Filed 12/08/25    Entered 12/08/25 15:35:51    Desc
Exhibit A - BVY2 Agreement Exemplar    Page 1 of 12

# PARTICIPATION AGREEMENT

**THIS PARTICIPATION AGREEMENT** (as the same may be amended, modified or restated from time to time, this "Agreement") is dated as of **NOVEMBER 4, 2024** (the "Effective Date"), and is between **PRIMALEND CAPITAL PARTNERS, LP**, a Texas limited partnership ("Seller"), and **BVY PARTNERS II LLC**, a Texas limited liability company ("Purchaser").

Seller and Purchaser hereby agree as follows:

1. Loan. Seller has made or will make a loan (the "Loan") to ▮▮▮▮▮▮▮▮▮▮▮▮▮ a Texas limited liability company ▮▮▮▮▮▮▮▮▮▮▮, individually and collectively, and jointly and severally, "Debtor") in the stated principal amount of up to **FIVE MILLION AND NO/100 DOLLARS ($5,000,000.00)**. Such Loan has been made in accordance that certain **PROMISSORY NOTE** dated as of **NOVEMBER 25, 2021**, among Debtor and Seller (as the same may be amended, modified or restated from time to time in a manner consistent with this Agreement, the "Note"). Unless otherwise defined herein or the context hereof otherwise requires, each term defined in the Note (and used herein) is used herein with the same meaning as set forth in the Note.

2. Participation. Seller hereby sells, and Purchaser hereby buys, an undivided participation in the Loan (the "Participation") equal to **TWO MILLION SIXTY THOUSAND ONE HUNDRED EIGHTY-EIGHT AND 14/100 DOLLARS ($2,060,188.14)** (referred to herein as Purchaser's "Participation Amount,") which shall entitle Purchaser: (a) to receive from Seller, from and after the Effective Date, (i) Purchaser's Pro Rata Part (hereinafter defined) of any and all principal payments made by Debtor to Seller under the Note, and (ii) Purchaser's Pro Rata Part of any and all interest payments made by Debtor to Seller under the Note; and (b) to Purchaser's Pro Rata Part of the rights and benefits of Seller under the Note; subject, however, to the terms and conditions, if any, set forth with respect to such rights in the Note and as further modified by this Agreement. Purchaser shall not have any rights to any fees which Seller is entitled to receive under the Note. It is further understood and agreed that the rights of Purchaser to the Participation sold hereunder exist solely as a result of this Agreement or as provided in the Note. Except for the obligation of Seller to account for payments received by it or as otherwise specifically provided herein, the sale and purchase of the Participation hereunder shall be without recourse against, or representation or warranty (except as set forth herein) by, Seller. "Pro Rata Part" means an amount, or a right, title or interest, determined at any time, with respect to any other amount, or any other right, title or interest, by multiplying such amount, or such other right, title or interest, by a fraction, the numerator of which is the aggregate amount of outstanding payments ("Purchase Payments") made by Purchaser to Seller as Purchaser's Participation and Expenses not reimbursed by Debtor and the denominator of which is the aggregate amount of outstanding advances of the Loan and expenses not reimbursed by Debtor. If, at any time, Purchaser's Participation Amount meets or exceeds **50.00%** of the Loan, Purchaser shall immediately sell to Seller, and Seller hereby agrees to purchase, an amount equal to a percentage sufficient to reduce Purchaser's Participation Amount to 49.99% or less (the "Repurchased Participation"), when calculated as a percentage, of the outstanding advances under the Loan. The final amount of the Repurchased Participation shall be subject to Seller's sole discretion, but shall not be less than an amount to sufficient to reduce Purchaser's Participation Amount to 49.99% or less of the outstanding advances under the Loan. It is the express intent of the parties hereto that the sale of the Participation by Seller to Purchaser hereunder be, and be treated for all purposes as, a true sale by Seller of the Participation.

3. Consideration. In consideration for the purchase of the Participation, Purchaser agrees to pay to Seller in immediately available funds:

    (a) A Purchase Payment equal to Purchaser's Participation Amount on or before the Effective Date, and

    (b) A servicing fee equal to 2.00% of the outstanding principal balance of the Loan, from time to time, on a monthly basis, commencing with the month ending November 30, 2024, and continuing on the last day of each month thereafter, for Seller's servicing of the Loan; provided, Purchaser's obligation to remit payment of the servicing fee is expressly subordinate to Purchaser's obligations to Third Coast Bank, a Texas state bank ("Bank") or its successors and assigns, under and pursuant to that certain Loan and Security Agreement dated November 4, 2024, by and between Purchaser and Bank (the "Loan Agreement").

PARTICIPATION AGREEMENT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – PAGE 1
PRIMALEND CAPITAL PARTNERS, LP – BVY PARTNERS II LLC

Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11    Doc 167-1    Filed 12/08/25    Entered 12/08/25 15:35:51    Desc
Exhibit A - BVY2 Agreement Exemplar    Page 2 of 12

Notwithstanding the foregoing, if Seller is unable to service the Note, then Purchaser may elect to assume servicing and custodian responsibilities for the Note, in which case Seller shall grant Purchaser a non-exclusive, unlimited right to use the intellectual property of Seller, but only to the extent necessary or convenient to undertake such servicing activities and custodian activities of the Note and other Loan Documents.

4.  <mark>Payments. With respect to the Loan, Seller shall:</mark>

    (a)    if Purchaser has granted Bank a security interest in the Participation, within ten (10) days after Seller's receipt of a written request from Purchaser and/or Bank, send Debtor a written notice (in the manner set forth in Paragraph 30 below) of the Participation and Purchaser's pledge of the Participation to secure Purchaser's obligations to Bank under and pursuant to the terms of the Loan Agreement;

    (b)    proceed diligently to collect all payments due under the Loan Documents as they come due and to require Debtor to perform all material terms, covenants and conditions of the Loan Documents;

    (c)    keep a complete and accurate account of all sums collected by Seller from Debtor and any other obligor on account of the Loan Documents and the application thereof;

    (d)    <mark>segregate on its books and records all funds received on account of the Loan Documents (including without limitation any amounts paid under any guaranty or other credit support). ;</mark>

    (e)    if Debtor makes only a partial principal or interest payment to Seller under the Note, , subject to Paragraphs 5 and 6 of this Agreement, Seller shall credit Purchaser (and Purchaser shall be entitled to receive) an amount equal to the product of (a) Purchaser's Pro Rata Part, multiplied by (b) the amount of such partial payment;

    (f)    provide, or cause to be provided, to Purchaser on an annual basis, no later than thirty (30) days after the end of a calendar year, a statement of the Participation, setting forth the outstanding principal balance of the Loan after recordation of December's financial activity, including an itemization of principal, interest and any other amounts collected under the Loan Documents and related reserve/escrow account activity; and

    (g)    notify Purchaser and Bank of the occurrence of any default by Debtor under the Loan Documents in accordance with and pursuant to Paragraph 17 below.

5.  <mark>Payments to Purchaser. Purchaser's share of each principal or interest payment shall be paid to Purchaser by transfer of federal funds to Purchaser, by ACH transfer, on the LAST day of each month.</mark> Without limitation of Purchaser's obligation to pay Expenses (hereinafter defined) as provided in Paragraph 7 hereof, it is agreed that Seller shall be entitled to deduct from of such payments (before remitting any remaining amount of such payments to Purchaser) Purchaser's Pro Rata Part of each Expense, if any, which has not been paid by Purchaser to Seller within twenty (20) days after request for payment is made by Seller, regardless of whether Purchaser disputes its obligation to pay any such Expense, but without prejudice to Purchaser's rights to recover the amount so deducted if not in fact owed by Purchaser. Notwithstanding any other provision of this Agreement, Seller shall have the right, but not the obligation, to set-off and deduct all or any portion of any amounts due and payable by Purchaser to Seller under this Agreement from amounts otherwise due and payable by the Seller to Purchaser pursuant to this Paragraph 5.

6.  Required Repayments to Debtor; Failure to Fund. Purchaser shall repay to Seller any sums paid to Seller by Debtor and distributed by Seller to Purchaser which Seller shall be required to return to Debtor or to any receiver, trustee, or custodian for Debtor. In the event Purchaser fails or refuses to make any such payment to pay its Pro Rata Part of the Expenses (as required in Paragraph 7 of this Agreement) to Seller (each being a "Defaulted Payment"), then; (a) in addition to any of its rights at law or in equity, Seller shall be entitled, but in no event shall have the obligation to fund such Defaulted Payment and, notwithstanding anything to the contrary herein, for so long thereafter as Purchaser fails to make such Defaulted Payment to offset the amount of such Defaulted Payment by Seller against Purchaser's Pro Rata Part of all sums received by Seller under this Agreement (including offset for

PARTICIPATION AGREEMENT ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ – PAGE 2
PRIMALEND CAPITAL PARTNERS, LP – BVY PARTNERS II LLC

Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11 Doc 167-1 Filed 12/08/25 Entered 12/08/25 15:35:51 Desc
Exhibit A - BVY2 Agreement Exemplar Page 3 of 12

interest owed by Purchaser to Seller as provided below) until reimbursed therefor by Purchaser; and (b) if Purchaser does not cure its failure to make such Defaulted Payment within five (5) days after notice from Seller (and for so long thereafter as Purchaser fails to make such Defaulted Payment) Purchaser shall be deemed to have offered to sell Purchaser's entire Participation for a sales price equal to the Purchase Payments which have been funded by Purchaser as of the date of such sale plus any and all unpaid interest thereon in which Purchaser shares under Paragraph 2 hereof, which offer Seller may, but shall not be obligated to, accept. Furthermore, the unpaid portion of any such amount paid by Seller on behalf of Purchaser shall be payable by Purchaser to Seller on demand and shall bear interest for each day from the date of such payment until it is repaid by Purchaser at the rate borne by advances of the Loan as calculated in the Note, but never in excess of the maximum non-usurious rate permitted by applicable law.

7. Fees and Expenses. Purchaser shall promptly pay its Pro Rata Part of the following (each an "Expense"): (a) all expenses reasonably incurred by Seller and deemed by Seller to be in the best interest of Seller and Purchaser to protect Seller's and Purchaser's rights and interests hereunder and under the Note and in the collateral securing the Loan (including, without limitation, property taxes, insurance premiums and other non-discretionary expenses reasonably incurred by Seller in connection with the protection and preservation of the collateral for the Loan, including those with respect to the completion, operation, management, improvements, maintenance, repair, sale and disposition of collateral after acquisition of title thereto by Seller), and all attorneys' fees incurred by Seller in connection therewith, and (b) to the extent consented to by Purchaser, all other expenses, including, without limitation, attorneys' fees, incurred by Seller in connection with the enforcement of the obligations of Debtor, or any Guarantor (hereinafter defined) under any of the Note, or in connection with any collateral for the Loan. Purchaser shall be entitled to its Pro Rata Part of (i) any payments subsequently received by Seller with respect to such Expenses and (ii) any such Expenses which Purchaser has prepaid but which are not actually expended, which Pro Rata Part shall be in the form of a reimbursement or credit, as applicable.

8. Debtor Information; Independent Credit Analysis. Seller shall provide to Purchaser: (a) copies of the executed Note; and (b) a copy of each financial statement received by Seller after the Effective Date. To the extent not already available to Purchaser, Seller shall provide Purchaser and/or make available for Purchaser's inspection during reasonable business hours and at Purchaser's expense, upon Purchaser's written request therefor: (i) copies of the Note; (ii) such information as is then in Seller's possession in respect of the current status of principal and interest payments and accruals in respect of the Loan; (iii) copies of all current financial statements in respect of Debtor, or any guarantor or other Person liable for payment or performance by Debtor of any obligations under the Note (herein called a "Guarantor"), then in Seller's possession with respect to the Loan; (iv) an audit of Debtor, as available pursuant to the Note, and (v) other current factual information then in Seller's possession with respect to the Loan and bearing on the continuing creditworthiness of Debtor or any Guarantor under the Note; provided that nothing contained in this Paragraph shall impose any liability upon Seller, or excuse Purchaser from its obligations hereunder, for Seller's failure to provide Purchaser any of such Note, information, or financial statements, **INCLUDING SUCH FAILURE CONSTITUTING IN WHOLE OR PART SELLER'S STRICT LIABILITY, OR COMPARATIVE, CONTRIBUTORY OR SOLE NEGLIGENCE**, unless such failure constitutes willful misconduct or gross negligence on Seller's part; and provided, further, that Seller shall not be obligated to provide Purchaser with any information in violation of law or any contractual restrictions on the disclosure thereof (provided such contractual restrictions shall not apply to distributing to Purchaser factual and financial information required to be provided under the Note). Purchaser hereby acknowledges, agrees, and represents: (a) that Purchaser has conducted or shall conduct an independent credit analysis of Debtor, and Guarantor and an investigation or assessment of risk with respect to the Loan to satisfy itself that the Participation is a credit which Purchaser would make directly; (b) that Seller has not provided to Purchaser, and Purchaser has not relied on or used in any other way, any credit analysis of Debtor, or any Guarantor prepared by Seller or an investigation or assessment of risk with respect to the Loan prepared by Seller; (c) that any information provided to Purchaser by Seller regarding the Loan, Debtor, any Guarantor or any collateral for the Loan is provided without any warranty or representation, express or implied, as to its accuracy or completeness and is subject to independent verification by Purchaser; and (d) that Purchaser has independently and without reliance upon Seller or any other Person, and based upon such documents and information as Purchaser has deemed appropriate, made its own decision to enter into this Agreement.

9. Amendments, Waivers, etc. Subject to the terms of this Agreement, Seller may enter into any amendment or modification of, or waive compliance with the terms of, any Loan Document without the consent of Purchaser.

Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11 Doc 167-1 Filed 12/08/25 Entered 12/08/25 15:35:51 Desc
Exhibit A - BVY2 Agreement Exemplar Page 4 of 12

10. <u>Purchaser's Ability to Enforce the Note</u>. Purchaser hereby agrees that it shall not have any right or responsibility to enforce the obligations of Debtor or any other party under the Note, and except as expressly provided herein to the contrary, all rights pursuant to the Note (or otherwise) of Seller to secure or enforce payment of the obligations of Debtor, or Guarantor under the Note shall be so held (and such rights shall be exercised solely by and at the option of Seller) for the pro rata benefit of Seller and Purchaser (collectively, "<u>Lenders</u>").

11. <u>Transfer of Responsibilities</u>. In the event that:

    (a) Seller shall breach the terms of this Agreement and Seller shall have failed to cure such default within thirty (30) days after giving written notice thereof to the Seller (or, if the default is of a nature that it cannot reasonably be cured within such thirty (30) day period, such additional period of time not to exceed sixty (60) additional days as may be reasonably required so long as Seller immediately commences its cure and thereafter diligently prosecutes such cure to completion); or

    (b) Seller shall make an assignment for the benefit of its creditors, or shall admit in writing its inability to pay its debts as they become due, or shall file a petition in voluntary bankruptcy or for an arrangement or reorganization pursuant to Federal Bankruptcy Code or any similar law, state or federal, now or hereafter existing ("<u>Bankruptcy Proceeding</u>"), or shall become "insolvent" as that term is defined in the Code, or shall file an answer admitting insolvency or inability to pay or shall fail to pay its debts as they become due, or shall fail to obtain a vacation or stay of any involuntary Bankruptcy Proceeding within one hundred twenty (120) days after the institution of the same, or shall be adjudicated a bankrupt or declared insolvent in any Bankruptcy Proceeding, or shall have a custodian, trustee or receiver appointed for or have any court take jurisdiction of its property, or any part thereof, in any voluntary proceeding for the purpose of reorganization, arrangement, dissolution or liquidation, and such custodian, trustee or receiver shall not be discharged or such jurisdiction not be relinquished, vacated or stayed within one hundred twenty (120) days; or

    (c) Seller shall be dissolved, liquidated or wound up;

then, in such event, Seller shall be in default hereunder and Purchaser and its successors shall be entitled to exercise all rights and remedies available hereunder and at law and in equity.

12. <u>Other Financings</u>. Without limiting rights to which Purchaser otherwise is or may become entitled, Purchaser shall have no interest, by virtue of this Agreement and Purchaser's rights hereunder, in (a) any present or future loans from, letters of credit (other than those issued pursuant to the Note) issued by, or leasing, other financing or capital markets transactions by, Seller or any parent, subsidiary or affiliate of Seller to, on behalf of, or with Debtor, any Guarantor or any partner, parent, subsidiary or other affiliate of any of them (collectively referred to herein as the "<u>Other Financings</u>"), other than the Loan in which Purchaser participates hereunder; (b) any present or future guaranties by or for the account of Debtor which are not contemplated by the Note; (c) any present or future offset exercised by Seller in respect of such Other Financings, except to the extent such present or future offset is also exercised in respect of the Loan; (d) any present or future property taken as security for any such Other Financings, except to the extent such present or future property or assets are also taken as security for the Loan; or (e) any property or assets now or hereafter in the possession or control of Seller which may be or become security for the obligations of Debtor arising under any Loan Document by reason of the general description of indebtedness secured or of property or assets contained in any other agreements, documents, or instruments related to any such Other Financings; <u>provided</u> that, if payments in respect of such guaranties or such property and assets or the proceeds thereof shall be applied to the obligations of Debtor arising in respect of an advance of the Loan in which Purchaser participates hereunder, then Purchaser shall be entitled to share in such application as set forth in <u>Paragraph 2</u> herein. Notwithstanding anything herein to the contrary, Purchaser shall have no interest in any property taken as collateral security for any other loan or loans made, or credit extended, to Debtor by Seller, or in any property now or hereafter in the possession or control of Seller or its agent which may be or become collateral security for the Loan by reason of the general description contained in any general loan, credit or security agreement or collateral note held by Seller or by reason of any right of setoff or otherwise, except that if such property or the proceeds thereof shall be applied in reduction of the Loan, then Purchaser shall be entitled to its Pro Rata Part in such application, subject to the terms hereof.

Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11    Doc 167-1    Filed 12/08/25    Entered 12/08/25 15:35:51    Desc
Exhibit A - BVY2 Agreement Exemplar    Page 5 of 12

13. <u>Performance through Representatives</u>. Seller may perform any of its duties hereunder by or through officers, directors, employees, attorneys, or agents (collectively, "<u>Representatives</u>"), and Seller and its Representatives shall be entitled to rely, and shall be fully protected in relying, upon any communication or document believed by it or them to be genuine and correct and to have been signed or made by the proper Person and, with respect to legal matters, upon the opinion of counsel selected by Seller.

14. <u>Duty of Care</u>. Neither Seller nor its parent, subsidiaries or affiliates, nor any of their Representatives or owners shall be liable for any action taken or omitted to be taken by it or them under this Agreement, any Loan Document or in connection with Other Financings in good faith and believed by it or them to be within the discretion or power conferred upon it or them by this Agreement, any Loan Document or any Other Financing agreement, or be responsible for the consequences of any error of judgment, **INCLUDING IN WHOLE OR PART FOR SELLER'S STRICT LIABILITY, OR COMPARATIVE, CONTRIBUTORY OR SOLE NEGLIGENCE**, except for actions taken or omitted to have been taken by them which constitute willful misconduct or gross negligence. Seller will exercise the same care in administering the Note as it exercises with respect to similar transactions entered into solely for its own account, including, but not limited to, the taking of such action as is appropriate to maintain the perfection and priority of the liens, mortgages and security interests granted by Debtor to Seller in any of the Note, and shall otherwise have no liability or responsibility to Purchaser, **INCLUDING IN WHOLE OR PART FOR SELLER'S STRICT LIABILITY, OR COMPARATIVE, CONTRIBUTORY OR SOLE NEGLIGENCE,** except for actions taken or omitted to be taken by Seller which constitute willful misconduct or gross negligence. Unless indemnified to the satisfaction of Seller against loss, cost, liability, and expense, Seller shall be under no duty to enforce any rights, remedies, powers, or privileges with respect to any of the obligations of Debtor under any of the Note and shall not be compelled to do any act hereunder or thereunder or to take any action toward the exercise or enforcement of the powers created by this Agreement or any Loan Document, or to prosecute or defend any suit in respect thereof. Seller shall not be responsible in any manner to Purchaser for: (a) the effectiveness, enforceability, genuineness, validity, or, except with respect to this Agreement, due execution of this Agreement, any of the Note, or any other documents, agreements, or instruments; (b) any representation, warranty, document, certificate, report, or statement therein made or furnished under or in connection with any of the Note; (c) the adequacy of collateral for the obligations of Debtor, or any Guarantor under any of the Note; (d) the existence, priority, or perfection of any lien or security interest granted or purported to be granted in connection with any of the Note; or (e) the observation of or compliance with any of the terms, covenants, or conditions of the Note on the part of Debtor or any Guarantor. Purchaser will continue to make, independently and without reliance upon Seller, and based on such documents and information as it deems appropriate, its own investigation into the financial condition, creditworthiness, affairs, status and nature of Debtor and any guarantor of the Loan in taking any actions under this Agreement.

15. <u>Not a Loan; No Duty to Repurchase the Participation</u>. No amount paid by Purchaser to purchase the Participation shall be considered a loan by Purchaser to Seller. Seller shall have no obligation to repurchase the Participation upon any default by Debtor under any of the Note or in any other event whatsoever.

16. <u>Amendments, Waivers, etc</u>. Except as otherwise provided herein, Seller may enter into any amendment or modification of, or may waive compliance with the terms of, any Loan Document without the consent of Purchaser; *provided that*, subject to the provisions of the Loan Documents, Seller will not, without the consent of Purchaser, agree to (a) reduce the principal of the Loan or reduce the interest rate thereon; (b) increase the amount of the Loan (provided that Seller may increase the amount of the Loan if the aggregate amount of Purchaser participation hereunder is not increased); (c) reduce the rate at which facility fees in respect of which Purchaser is entitled to a share accrue under the Loan Documents; (d) extend the term of the Loan; (e) postpone any stated payment date for the payment of any principal of, or interest on, the Loan or any facility fees payable to Purchaser; or (f) release all or substantially all of the collateral securing the Loan or all or substantially all materially significant guarantors. As set forth in <u>Paragraph 10</u>, but subject to <u>Paragraphs 17</u> and <u>18</u> hereof, Seller shall be entitled, at its option, and without the consent of Purchaser from time to time and at any time, to exercise any rights or remedies under or in respect of any Loan Document, or refrain from exercising any such right or remedy, upon the occurrence of a default under the Note or at any other time.

17. <u>Notice of Default; Advances After Default</u>. Unless Seller is authorized to offset under <u>Paragraph 6</u> of this Agreement, Seller will, with reasonable promptness, notify Purchaser of any material default with respect to the Loan of which it is actually aware and of any other matters which, in its judgment, materially affect the interest of Purchaser in respect of the Loan (collectively, a "<u>Material Default</u>"), but Seller will not in any event **(INCLUDING**

PARTICIPATION AGREEMENT ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ – PAGE 5
PRIMALEND CAPITAL PARTNERS, LP – BVY PARTNERS II LLC

Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11    Doc 167-1    Filed 12/08/25    Entered 12/08/25 15:35:51    Desc
Exhibit A - BVY2 Agreement Exemplar    Page 6 of 12

**IN WHOLE OR PART FOR SELLER'S STRICT LIABILITY, OR COMPARATIVE, CONTRIBUTORY OR SOLE NEGLIGENCE**, except for gross negligence or willful misconduct) be liable to Purchaser for Seller's failure to do so.  If the Material Default is due to (a) the action or inaction of Seller with respect to its obligations under the Note, or (b) Seller's (i) application for or consent to the appointment of a receiver, trustee, custodian, intervenor, or liquidator of itself or of all or a substantial part of its assets, (ii) filing of a voluntary petition in bankruptcy, admits in writing that it is unable to pay its debts as they become due, or generally not pay its debts as they become due, or (iii) filing of a petition or answer seeking reorganization of an arrangement with creditors or to take advantage of any bankruptcy or insolvency laws, then Purchaser shall be entitled to purchase not less than 100% of Seller's remaining interest in the Note.

       18.      <u>Foreclosure; Acquisition of Title</u>.  If foreclosure or disposition of any of the collateral for the Loan occurs, then after all expenses of foreclosure, disposition and collection are paid, and subject to Seller's right of offset under <u>Paragraph 6</u> hereof, Seller shall promptly remit to Purchaser its Pro Rata Part of all net collections respecting such collateral which are received by Seller as a consequence of such foreclosure.

      In the event that Seller shall have acquired title to any of the collateral by foreclosure or by a deed in lieu of foreclosure or otherwise, that title shall be held in Seller's name or in the name of a nominee acceptable to Seller, but Seller or such nominee shall hold such title for the undivided benefit and protection of Purchaser (to the extent of Purchaser's Pro Rata Part) and Seller.  ==If such title is taken, Seller and Purchaser respectively waive any statutory or common law right of partition or any other similar rights or remedies, and unless Seller is authorized to offset under <u>Paragraph 6</u> of this Agreement, Seller decision as to the best manner in which to proceed with respect to the completion, operation, management, improvement, maintenance, repair, sale and disposition of such collateral shall control.  Seller shall retain in its capacity as lead lender and servicer, all rights with respect to the completion, operation, management, maintenance, improvement and repair of such collateral pending the disposition thereof.==  Purchaser agrees to promptly execute and deliver to Seller all documents which Seller may reasonably request to enable or facilitate the exercise of such rights with respect to such collateral and to effect a disposition thereof.

       19.      <u>Indemnification.</u>  Purchaser agrees that it shall indemnify and hold Seller harmless in accordance with its Pro Rata Part from any and all costs, expenses (including attorneys' fees and disbursements), claims, damages, actions, suits or liabilities that Seller may suffer or incur in connection with or arising out of the Loan, the Note, any transactions contemplated by the Note, any monitoring, restructuring or collection of the Loan or any action taken or not taken by Seller relating in any manner to the Loan or the Note, except for (a) any portion of principal or interest unpaid by Debtor or any Guarantor, (b) those arising under any federal, state or local statute, ordinance, rule or regulation under which Seller has failed to comply, and (c) any costs, expenses (including attorneys' fees and disbursements), claims, damages, actions, suits or liabilities that result from Seller's own gross negligence or willful misconduct.  Notwithstanding anything else set forth in this Agreement, the obligations and indemnities under this Paragraph shall survive the payment in full of the Loan and the termination of the Note.

       20.      <u>Purchaser's Representations</u>.  Purchaser represents and warrants to Seller that: (a) Purchaser is purchasing the Participation hereunder for its own account in respect of a commercial transaction made in the ordinary course of its business and not with a view to or in connection with any subdivision, resale, or distribution thereof; (b) Purchaser is engaged in the business of entering into commercial lending transactions (including transactions of the nature contemplated herein) and can bear the economic risk related to the purchase of the same; and (c) Purchaser does not consider the acquisition of the Participation to constitute the "purchase" or "sale" of a "security" within the meaning of any federal or state securities statute or law, or any rule or regulation under any of the foregoing.  Purchaser acknowledges that this Agreement is not intended to constitute the sale of any investment security for purposes of any securities act (federal or state) or regulations issued thereunder.

       21.      <u>Seller Acknowledgements</u>.  Seller acknowledges that (a) the sale of the Participation to Purchaser is a true and irrevocable sale; (b) Seller has no recourse to the Participation except to the extent permitted by the terms of this Agreement; and (c) Purchaser has no recourse to Seller, except for (i) Purchaser's breaches of its representations, warranties or covenants and (ii) Purchaser indemnities, in each case, as expressly stated in this Agreement.

       22.      <u>Seller's Representations</u>.  Seller represents and warrants to Purchaser that, as of the Effective Date, (a) no default in the payment of principal or interest on the Loan has occurred and remains uncured under the Note;

Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11    Doc 167-1    Filed 12/08/25    Entered 12/08/25 15:35:51    Desc
Exhibit A - BVY2 Agreement Exemplar    Page 7 of 12

(b) Purchaser is being requested to advance no more than its Participation Amount of the current outstanding principal balance of the Loan; (c) Seller has not previously assigned or participated the Loan to a third party except as previously disclosed to Purchaser; (d) Seller is the owner of the Loan and has the right to sell the Participation to Purchaser; (e) Seller is not in default of its obligations under the Loan and Note; (f) Seller is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization or incorporation; (g) Seller has full power, authority and legal right to execute and deliver this Agreement and to perform its obligations hereunder; (h) the making and performance by Seller of this Agreement have been duly authorized by all necessary action and will not violate any provisions of applicable law or regulation, any provision of its charter or bylaws (or comparable, constituent documents) or any order of any court or regulatory body, and will not result in the breach of, or constitute a default under, any agreement, instrument or document to which it is a party or by which it or any of its property may be bound or affected; (i) all authorizations, consents, approvals and licenses of, and filings and registrations with, any governmental authority required under applicable law or regulations for Seller to make and perform this Agreement have been obtained and are in full force and effect; and (j) this Agreement constitutes a legal, valid and binding obligation of Seller, enforceable against it in accordance with its terms.

23. <u>Additional Participations</u>. Without the prior written consent of Purchaser, Seller may grant additional participations (other than the Participation) in, or assignments of, the rights and obligations of Seller under the Note. In such event, the term "Lenders" shall additionally include such additional participants. Purchaser may not grant participations in the Participation. Purchaser is not entitled to further, increased, or additional participations. Any such participations shall be in Seller's sole discretion, including, without limitation, any participations concurrent with or after the Loan has been increased, thereby reducing Purchaser's Pro Rata Part.

24. <u>Withholding Taxes</u>. If Seller shall be required by law to deduct and withhold taxes or other charges imposed by any jurisdiction ("<u>Taxes</u>") from any amounts payable to Purchaser with respect to the Loan because Purchaser is a Non-Exempt Person (hereinafter defined), Seller shall be entitled to do so with respect to Purchaser's interest in such payment (all withheld amounts being deemed paid to Purchaser). A "<u>Non-Exempt Person</u>" is any Person other than a Person who either (a) is a United States Person or (b) has on file with Seller for the year involved such duly-executed form(s) or statements which may, from time to time, be prescribed by law and which, pursuant to applicable provisions of (i) an income tax treaty between the United States and the country of residence of such Person, (ii) the United States Internal Revenue Code of 1986, as amended and as such may hereafter be amended, or (iii) any applicable rules or regulations in effect under (i) or (ii) above, permit Seller to make such payments free of any obligation or liability for withholding. Purchaser agrees to indemnify Seller against and to hold Seller harmless from any Taxes, interest, penalties and attorneys' fees arising from any failure of Seller to withhold Taxes from payments made to Purchaser in reliance upon any representation or document made or provided by Purchaser to Seller, it being agreed that (x) Seller shall be absolutely and unconditionally entitled to accept any such representation or document as being true and correct in all respects and to fully rely thereon without any obligation or responsibility to investigate the same, and (y) Purchaser shall, upon request of Seller and at Purchaser's sole cost and expense, defend any claim relating to the foregoing indemnification, by counsel selected by Purchaser and reasonably satisfactory to Seller. Purchaser represents to Seller that Purchaser is not a Non-Exempt Person and that Seller is not obligated under applicable law to withhold Taxes on any sums paid to Purchaser pursuant to this Agreement. Contemporaneously with the execution of this Agreement, and from time to time as necessary during the term of this Agreement, Purchaser shall deliver to Seller evidence reasonably satisfactory to Seller substantiating that Purchaser is not a Non-Exempt Person and that Seller is not obligated under applicable law to withhold Taxes on sums paid to it with respect to the Loan or otherwise and will furnish to Seller such forms, certifications, statements and other documents as Seller may request from time to time to evidence Purchaser's exemption from the withholding of any tax imposed by any jurisdiction or to enable Purchaser to comply with any applicable laws or regulations relating thereto.

25. <u>No Reliance by Others; Intended Third Party Beneficiary</u>.

(a) Except as set forth in <u>Paragraph 25(b)</u> below, none of the provisions of this Agreement shall inure to the benefit of Debtor or any Person other than Lenders; consequently, Debtor shall not be, and no Person other than Lenders shall be, entitled to rely upon or raise as a claim or defense, in any manner whatsoever, the failure of either Lender to comply with the provisions of this Agreement. Neither Lender shall incur any liability to Debtor or any other Person for any act or omission of the other Lender.

(b) Notwithstanding any provision herein to the contrary, Seller and Purchaser hereby agree

PARTICULATION AGREEMENT ███████████████████ – PAGE 7
PRIMALEND CAPITAL PARTNERS, LP – BVY PARTNERS II LLC

Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11   Doc 167-1   Filed 12/08/25   Entered 12/08/25 15:35:51   Desc
Exhibit A - BVY2 Agreement Exemplar   Page 8 of 12

that it is appropriate, in furtherance of the intent of such parties as set forth herein, that Bank receive the benefit of the provisions of this Agreement as an intended third party beneficiary of this Agreement to the extent of the Bank's security interest in the Participation pursuant to the terms of the Loan Agreement. Upon the Bank assuming Purchasers interests in this Agreement following the occurrence of an event of default under the Loan Agreement, Seller shall have the same obligations to Bank as if Bank were a party to this Agreement, and Bank shall have the same rights and remedies to enforce the provisions of this Agreement as if it were a party to this Agreement.

26. <u>Not a Partnership, etc</u>.  Neither the execution of this Agreement, the sharing in the Note, nor any agreement to share in profits or losses arising as a result of the transactions contemplated hereby is intended to be or to create, and the foregoing shall be construed not to be or to create, any partnership, joint venture, or other joint enterprise between Lenders; and neither the execution of this Agreement, nor the management and administration of the Note and the related documents by Seller, nor any other right, duty or obligation of Seller under or pursuant to this Agreement is intended to be or create any express, implied or constructive trust or other fiduciary relationship between Seller and Purchaser.  Lender shall, acting solely for this purpose as a non-fiduciary agent of Debtor, maintain a register on which it enters the name and address of Purchaser and the principal amount (and stated interest) of Purchaser's interest in the Loan (the "<u>Purchaser Register</u>") for purposes of Section 5f.103-1(c) of the U.S. Treasury Regulations.  The entries in the Purchaser Register shall be conclusive absent manifest error.

27. <u>Waivers, etc</u>.  No delay or omission by any party to exercise any right under this Agreement shall impair any such right, nor shall it be construed to be a waiver thereof.  No waiver of any single breach or default under this Agreement shall be deemed a waiver of any other breach or default.  Any waiver, consent, or approval under this Agreement must be in writing to be effective.

28. <u>Recovery of Costs, etc</u>.  In the event of any action to enforce the provisions of this Agreement against a party hereto, the prevailing party shall be entitled to recover all costs and expenses incurred in connection therewith including, without limitation, attorneys' fees and expenses.

29. <u>Illegality</u>.  The illegality or unenforceability of any provision of this Agreement shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Agreement.

30. <u>Notices</u>.  Except as otherwise provided to the contrary in this Agreement, any notice, consent, approval, direction, authorization, request or demand required or which any party desires to give to another party under this Agreement, must be in writing (including facsimile, telegram or telex) to be effective and shall be deemed to have been given when actually received or, if sent by facsimile, upon telephonic confirmation of receipt or, if mailed, on the third business day after it is enclosed in an envelope addressed to the party to be notified at the address stated opposite its signature below (or at such other address as may have been designated by written notice), properly stamped, sealed, and deposited in the appropriate official postal service.  Notwithstanding the foregoing, no notice of change of address shall be effective except upon receipt.  This Paragraph shall not be construed in any way to require giving of notice or demand to or upon any Person in any situation or for any reason.  If Purchaser does not notify or inform Seller of whether or not it consents to, or approves of or agrees to any matter of any nature whatsoever with respect to which its consent, approval or agreement is required under the express provisions of this Agreement or with respect to which its consent, approval or agreement is otherwise requested by Seller, in connection with the Loan or any matter pertaining to the Loan, within ten (10) business days (or such longer period as may be specified by Seller) after such consent, approval or agreement is requested by Seller, Purchaser shall be deemed to have given its consent, approval or agreement, as the case may be, with respect to the matter in question.

31. <u>Construction</u>.  Whenever in this Agreement the singular number is used, the same shall include the plural where appropriate, and <u>vice versa;</u> and words of any gender in this Agreement shall include each other gender where appropriate.

32. <u>Counterparts/Facsimile</u>.  This Agreement and all amendments hereto may be executed in any number of original counterparts, each of which when so executed and delivered shall be an original, and all of which, collectively, shall constitute one and the same agreement, it being understood and agreed that the signature pages may be detached from one or more counterparts and combined with the signature pages from any other counterpart in order that one or more fully executed originals may be assembled.  In addition, due execution of this Agreement by any

PARTICIPATION AGREEMENT ███████████████████████ – PAGE 8
PRIMALEND CAPITAL PARTNERS, LP – BVY PARTNERS II LLC

Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11    Doc 167-1    Filed 12/08/25    Entered 12/08/25 15:35:51    Desc
Exhibit A - BVY2 Agreement Exemplar    Page 9 of 12

party may be evidenced by a facsimile copy hereof reflecting the signature of such party; provided, however, that such party shall forward to the other parties via overnight courier an executed counterpart of this Agreement bearing its ink original signature.

33. <u>Successors and Assigns</u>. Subject to <u>Paragraph 23</u>, the provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. Purchaser may assign and grant a security interest in and to all of its rights, title, and interest in the Participation only to Bank or its successors and assigns in accordance with and pursuant to the terms of the Loan Agreement. Such assignment and security interest does not require prior written consent from Seller and shall become effective upon written notice to Seller, provided that such assignment complies with all applicable terms and conditions of this Agreement.

34. <u>Construction; Venue</u>. This Agreement been executed and delivered in the State of Texas, shall be governed by and construed in accordance with the laws of the State of Texas, and shall be performable by the parties hereto in Plano, Collin County, Texas (the "<u>Venue Site</u>"). Any action or proceeding under or in connection with this Agreement shall be brought in any state or federal court within the Venue Site. Each party hereto hereby irrevocably (a) submits to the nonexclusive jurisdiction of such courts, and (b) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in any such court or that any such court is an inconvenient forum. Purchaser agrees that service of process upon it may be made by certified or registered mail, return receipt requested, at its address set forth for Purchaser herein or as otherwise allowed by law. Nothing herein shall affect the right of Seller to serve process in any other manner permitted by law.

35. <u>Invalid Provisions</u>. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance.

36. <u>Waiver of Right to Trial by Jury</u>. **THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF THIS AGREEMENT.**

37. <u>Entire Agreement</u>. This Agreement embodies the entire agreement between the parties, supersedes all prior agreements and understandings between such parties, if any, relating to the subject matter hereof, and may be amended only by an instrument in writing executed jointly by an authorized officer of each party hereto and, if Seller has received notice from Purchaser that this Agreement has been assigned to Bank or if Purchaser has granted Bank a security interest in this Agreement, the prior written consent of Bank.

38. <u>Confidentiality</u>. Without the prior written consent of Seller, Purchaser agrees: (a) not to make demand upon any Debtor or any Guarantor in connection with this Agreement, the Loan or the Note; and (b) not to disclose to any person or entity, except as may be required by law or authorities regulating Purchaser, any Confidential Information (as hereinafter defined) regarding Debtor, any Guarantor or any party affiliated with or related to the foregoing (each, a "<u>Debtor Related Person</u>"), the Note, the Collateral, this Agreement and any matters relating hereto or thereto. Purchaser further agrees that it will sign a more specific confidentiality agreement if so requested by Seller. "<u>Confidential Information</u>" means all information received from Seller, any parent, subsidiary or other affiliate of Seller and each of their representatives (each, a "<u>Seller Related Person</u>") or from any Debtor Related Person, other than any such information that is available to Purchaser on a non-confidential basis, but specifically excluding information: (c) in Purchaser's possession from a source other than a Seller Related Person or Debtor Related Person and not known by Purchaser to be subject to any restrictions as to further disclosure; (d) specifically disclosed to Purchaser by Seller as free of any restrictions as to further disclosure; or (e) available to the public (other than by disclosure by Purchaser); provided, however, Confidential Information shall not include, and Debtor, any Guarantor, each of Seller and Purchaser and the respective affiliates of each of the foregoing (and the respective partners, directors, officers, employees, agents, advisors and other representatives of each of the foregoing and their affiliates) may disclose to any and all parties: (f) any information with respect to the U.S. federal and state income tax treatment of the transactions contemplated hereby and any facts that may be relevant to understanding such tax treatment, which facts shall not include for this purpose the names of the parties or any other party named herein or information that would permit identification of the parties or such other parties or any pricing terms or other non-public business or financial information that is unrelated to such tax treatment or facts; and (g) all materials of any kind (including

PARTICIPATION AGREEMENT ███████████████████████████ – PAGE 9
PRIMALEND CAPITAL PARTNERS, LP – BVY PARTNERS II LLC

Docusign Envelope ID: 480F03AC-ADAB-4448-8E4F-C0E296B960C5

Case 25-90013-mxm11    Doc 167-1    Filed 12/08/25    Entered 12/08/25 15:35:51    Desc
Exhibit A - BVY2 Agreement Exemplar    Page 10 of 12

opinions or other tax analyses) relating to such tax treatment or facts that are provided to any of the parties referred to above.

        39.      <u>Time of Essence</u>.  Time is hereby declared to be of the essence of this Agreement and of every part hereof.

---

### NOTICE OF FINAL AGREEMENT

THE AMENDMENT AND THE PLEDGE AGREEMENT, AS AMENDED BY THIS AMENDMENT, REPRESENT THE FINAL AGREEMENT BETWEEN AND AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN AND AMONG THE PARTIES.

---

*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.*
*THE SIGNATURE PAGES FOLLOW.*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective, duly authorized officers, as of the Effective Date.

**SELLER:**

PRIMALEND CAPITAL PARTNERS, LP,
a Texas limited partnership

By:    LNCMJ MANAGEMENT, LLC,
        a Texas limited liability company
        its General Partner

By:   /s/ Mark Jensen (DocuSigned, 048EC1A1A848477...)
Name:  Mark A. Jensen
Title:   Manager

Address:

3460 Lotus Drive, Suite 100
Plano, Texas 75075
Attention:   Mark A. Jensen


Administrative Contact (but not for legal notices):

Name:   Linda Burdeaux
Title:    Controller
Telephone No. 972-239-6668
Facsimile No. 972-239-6010
Email: lburdeaux@primalend.com

Wire Instructions:

Bank: _____,
     _____,
     _____

ABA:  _____

Account Number: _____

Account to Credit:  PRIMALEND CAPITAL
3460 Lotus Drive, Suite 100
Plano, TX  75075
Attention:   Mark Jensen

**PURCHASER:**

BVY PARTNERS II LLC,
a Texas limited liability company

By:     LNCMJ 2 LLC,
         a Texas limited liability company
         its Manager

By:     *Mark Jensen* (DocuSigned)
Name:   Mark A. Jensen
Title:     Manager

Address:

10300 N. Central Expressway, Suite 410
Dallas, Texas 75231
Attention:     Mark A. Jensen

Administrative Contact (but not for legal notices):

Name:     _____
Title:      _____
Telephone No.     _____
Facsimile No.      _____
Email:     _____

Wire Instructions:

_____
ABA No.: _____
Reference: _____
Note No.: _____
Attention: _____