**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **PRIMALEND CAPITAL PARTNERS, LP,** *et al.*[1] | § | **Case No. 25-90013 (MXM)** |
| | § | |
| Debtors. | § | **(Jointly Administered)** |

---

## AMENDED JOINT PLAN OF REORGANIZATION OF PRIMALEND CAPITAL PARTNERS, LP, *ET AL*

---

Jason P. Kathman (Texas Bar No. 24070036)
Laurie N. Patton (Texas Bar No. 24078158)
Alex Anderson (Texas Bar No. 24138084)
**SPENCER FANE LLP**
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com
Email: lpatton@spencerfane.com
Email: alanderson@spencerfane.com

Zachary R.G. Fairlie (Admitted *Pro Hac Vice*)
**SPENCER FANE LLP**
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100 – Telephone
(816) 474-3216 - Facsimile
Email: zfairlie@spencerfane.com

**COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION**

**DATED: January 5, 2026**

---

[1] The debtors and debtors-in-possession in these Chapter 11 Cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: PrimaLend Capital Partners, LP (0313) ("**PCP**"), Good Floor Loans LLC (8219) ("**GFL**"), LNCMJ Management, LLC (1374) ("**LNCMJ**"), and PCAP Holdings LP (8774)("**PCAP**"). The location of the Debtors' headquarters is 3460 Lotus Dr. Ste. 100, Plano, TX 75075.

# TABLE OF CONTENTS

Page

I.   SUMMARY OF THE PLAN ................................................................................ 1

  1.1   Overview of the Plan ..................................................................................1

  1.2   Payments to Creditors ................................................................................1

II.  DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ........................................................................................................... 1

  2.1   Scope of Definitions ...................................................................................1

  2.2   Definitions..................................................................................................1

  2.3   Rules of Interpretation .............................................................................18

  2.4   Computation of Time ...............................................................................18

  2.5   Exhibits and Plan Supplement .................................................................18

  2.6   Approved Disclosure Statement ...............................................................18

III. DESIGNATION OF CLASSES OF CLAIMS ................................................ 19

  3.1   Classification in General..........................................................................19

  3.2   Formation of Debtor Groups for Convenience Only ...............................19

  3.3   Summary of Classification........................................................................19

  3.4   Special Provisions Related to Unimpaired Claims ..................................20

  3.5   Elimination of Vacant Classes .................................................................20

  3.6   Cramdown .................................................................................................20

  3.7   Subordination ...........................................................................................20

  3.8   Voting Classes; Presumed Acceptance by Non-Voting Classes..............20

  3.9   Controversy Concerning Impairment .......................................................20

IV.  PAYMENT OF ADMINISTRATIVE EXPENSES AND CERTAIN PRIORITY CLAIMS............................................................................................................ 21

  4.1   Administrative Claims and Deadline .......................................................21

  4.2   Professional Claims and Deadline ...........................................................21

  4.3   Priority Tax Claims...................................................................................23

  4.4   DIP Facility Claims...................................................................................23

  4.5   Payment of Statutory Fees .......................................................................23

V.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........... 23

  5.1   Class 1 — Other Secured Claims.............................................................23

  5.2   Class 2 – Other Priority Claims ...............................................................23

  5.3   Class 3: Secured Claims of First Lien PCP Lenders................................24

  5.4   Class 4: Secured Claims of ANB..............................................................25

i

5.5     Intentionally Omitted ........................................................................26

5.6     Class 6: Claims of Meir Benit Trust. ...............................................26

5.7     Class 7: PCAP Unsecured Noteholders .............................................26

5.8     Class 8: PCP Unsecured Noteholders. ...............................................26

5.9     Class 9: General Unsecured Claims ..................................................27

5.10    Class 10: Subordination Claims. ......................................................27

5.11    Class 11: Intercompany Claims ........................................................27

5.12    Class 12: Intercompany Interests. .....................................................28

5.13    Class 13: PCAP Interests ..................................................................28

**VI.     MEANS FOR IMPLEMENTATION ........................................... 28**

6.1     General Settlement of Claims and Interests .....................................28

6.2     Restructuring Transactions. .............................................................29

6.3     Cancellation of Liens .......................................................................32

6.4     Cancellation of Existing Securities and Agreements .......................32

6.5     Corporate Existence .........................................................................32

6.6     Intentionally Omitted .......................................................................32

6.7     Wind Down Estates ..........................................................................32

6.8     Withholding and Reporting Requirements .......................................35

6.9     Exemption from Certain Transfer Taxes .........................................35

6.10    Liquidating Trust .............................................................................36

6.11    Committee and Liquidating Trust Board. ........................................41

6.12    Corporate Governance, Directors and Officers ...............................43

6.13    Preservation of Non-Released Causes of Action ............................43

6.14    Cooperating Parties ..........................................................................45

6.15    Preservation of Confidence and Attorney Client Privilege .............45

6.16    Cooperation with the Liquidating Trust ..........................................46

**VII.    CONDITIONS OF EFFECTIVE DATE ..................................... 46**

7.1     Conditions Precedent to the Effective Date .....................................46

7.2     Waiver of Conditions Precedent ......................................................47

**VIII.   EXECUTORY CONTRACTS AND LEASES .............................. 47**

8.1     General Treatment .............................................................................47

8.2     Payments Related to Assumption of Contracts and Leases. ............47

8.3     Rejection Claims ...............................................................................48

8.4     Debtors' Indemnification Obligations .............................................48

| | 8.5 | Employment Arrangements | 48 |
| | 8.6 | Insurance Contracts | 48 |
| | 8.7 | Reservation of Rights | 49 |
| **IX.** | **PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** | | **49** |
| | 9.1 | Allowance of Claims | 49 |
| | 9.2 | Claims and Interests Administration Responsibilities | 50 |
| | 9.3 | Adjustment to Claims or Interests Without Objection | 50 |
| | 9.4 | Time to File Objections to Claims | 50 |
| | 9.5 | Disallowance of Claims | 50 |
| | 9.6 | Amendments to Claims | 51 |
| | 9.7 | No Distributions Pending Allowance | 51 |
| | 9.8 | Disputed Claims Reserve | 51 |
| | 9.9 | Single Satisfaction of Claims | 51 |
| **X.** | **DISTRIBUTION PROCEDURES** | | **51** |
| | 10.1 | Distributions Generally | 51 |
| | 10.2 | Record Date for Claims | 51 |
| | 10.3 | Form of Distributions | 51 |
| | 10.4 | Conditions to Distributions; Warranty of Entitlement | 52 |
| | 10.5 | Withholding Taxes | 52 |
| | 10.6 | Setoffs | 52 |
| | 10.7 | Rounding | 52 |
| | 10.8 | Undeliverable and Unclaimed Distributions | 52 |
| | 10.9 | Disputed Distributions | 53 |
| **XI.** | **DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS** | | **53** |
| | 11.1 | Discharge of Claims and Termination of Interests | 53 |
| | 11.2 | Term of Injunctions or Stays | 54 |
| | 11.3 | Releases by the Debtors | 54 |
| | 11.4 | Mutual Creditor Releases | 55 |
| | 11.5 | Exculpation | 59 |
| | 11.6 | Injunction | 60 |
| | 11.7 | Protection Against Discriminatory Treatment | 61 |
| | 11.8 | Recoupment | 61 |
| **XII.** | **MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** | | **61** |
| | 12.1 | Modification and Amendments | 61 |

|       | 12.2  | Effect of Confirmation on Modifications ............................................................. 62 |
|       | 12.3  | Revocation or Withdrawal of the Plan ................................................................. 62 |
| **XIII.** | **RETENTION OF JURISDICTION** ............................................................................. **62** |
|       | 13.1  | Retention of Jurisdiction ..................................................................................... 62 |
| **XIV.** | **MISCELLANEOUS PROVISIONS** ........................................................................... **64** |
|       | 14.1  | Immediate Binding Effect ..................................................................................... 64 |
|       | 14.2  | Additional Documents .......................................................................................... 65 |
|       | 14.3  | Reservation of Rights ........................................................................................... 65 |
|       | 14.4  | Successors and Assigns ....................................................................................... 65 |
|       | 14.5  | Service of Documents .......................................................................................... 65 |
|       | 14.6  | Entire Agreement ................................................................................................. 67 |
|       | 14.7  | Exhibits ............................................................................................................... 67 |
|       | 14.8  | Nonseverability of Plan Provisions ..................................................................... 67 |
|       | 14.9  | Votes Solicited in Good Faith .............................................................................. 67 |
|       | 14.10 | Request for Expedited Determination of Taxes .................................................... 68 |
|       | 14.11 | Closing of Chapter 11 Cases ............................................................................... 68 |
|       | 14.12 | No Stay of Confirmation Order ............................................................................ 68 |
|       | 14.13 | Waiver or Estoppel .............................................................................................. 68 |

**Schedule 1 – List of PCP Unsecured Noteholders**

**AMENDED JOINT PLAN OF REORGANIZATION**
**DATED JANUARY 5, 2026**

PrimaLend Capital Partners, LP and its affiliated debtors, as Debtors and debtors-in-possession in the above-caption Chapter 11 Cases, jointly propose this chapter 11 plan for the resolution of outstanding Claims against, and Interests in, the Debtors. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against, and Interests in, such Debtor. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in <u>Section 2.2</u> of the Plan or the Bankruptcy Code or Bankruptcy Rules. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, Assets, results of operations, and historical financial information, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

## ARTICLE I.
## <u>SUMMARY OF THE PLAN</u>

1.1    <u>Overview of the Plan</u>. The Plan provides generally for the administration of all assets owned by the Debtors and for the resolution and treatment of outstanding Claims and Interests. More specifically, the Plan provides for *inter alia*: (i) a sale of the PCP Transferred Assets, (ii) a sale of the GFL Transferred Assets, and (iii) the creation of a liquidating trust to monetize certain litigation assets transferred to the Liquidating Trust.

1.2    <u>Payments to Creditors</u>. The Plan provides for Creditors to be paid as provided in Article V herein. All Creditors of the Debtors will be paid as provided herein in accordance with the priority scheme established by the Bankruptcy Code. **PLEASE CONSULT ARTICLE V FOR SEPARATE INFORMATION REGARDING THE SPECIFIC TREATMENT OF YOUR CLAIM. ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE II.
## <u>DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME</u>

2.1    <u>Scope of Definitions</u>. As used in this Plan and the Disclosure Statement, the following terms shall have their respective meanings as set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.2    <u>Definitions</u>.

2.2.1    <u>1933 Act</u>: The Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

2.2.2  <u>Ad-Hoc Noteholder Group</u>: The ad hoc group of certain of the PCAP Unsecured Notes due 2028 issued pursuant to those certain note purchase agreements, dated as of July 9, 2021, by and among PCAP.

2.2.3  <u>Ad-Hoc Noteholder Group Counsel</u>:  The law firms of White & Case LLP and Gray Reed & McGraw LLP.

2.2.4  <u>Administrative Claim</u>: Any Claim for payment of any cost or expense of administration of the Chapter 11 Cases entitled to priority in accordance with Sections 503(b) and/or 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtors' Estates and operating their businesses on and after the Petition Date to and including the Confirmation Date, and all allowances of compensation and reimbursement of expenses approved by the Bankruptcy Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtors' Estates under Chapter 123, Title 28, United States Code, which, for the avoidance of doubt shall include Professional Claims and Independent Manager Claims.

2.2.5  <u>Administrative Claim Bar Date</u>: The date that is thirty (30) days after the Effective Date, unless not a Business Day, in which case it will be the first Business Day thereafter.

2.2.6  <u>Ad Valorem Tax Claim</u>: A Claim for taxes (together with any related interest, penalty, addition to tax or additional amount imposed by any Governmental Authority) which is assessed based upon the value of the Debtors' Asset and which is secured by a statutory Lien upon that Asset, or the net proceeds from the sale of such Asset, to the extent of the value of the interest of the holder of such Claim in the Debtors' interest in the Asset.

2.2.7  <u>Affiliate</u>:  Has the meaning ascribed to it in 11 U.S.C. § 101(2).

2.2.8  <u>Allowed</u>: When used with respect to a Claim or Interest, means the Claim or Interest (as applicable) (a) to the extent that it is listed in the Schedules in a liquidated, non-contingent, and undisputed amount, but only if no proof of Claim or proof of Interest is Filed with the Bankruptcy Court to evidence such Claim or Interest on or before the Bar Date; (b) any Interest registered in a Debtors' books and records as of the Petition Date; (c) as evidenced by a proof of Claim or proof of Interest Filed on or before the Bar Date, but only to the extent asserted in a liquidated amount, and only if no objection to the allowance of the Claim or Interest or no motion to expunge the proof of Claim or Interest is Filed on or before the Claims Objection Deadline; or (d) to the extent allowed by a Final Order.

2.2.9  <u>Alternative Transaction</u>: A transaction for the purchase or transfer of the PCP Transferred Assets other than the PCP Credit Bid Transaction, as submitted pursuant to the Bidding Procedures.

2.2.10  <u>Alternative Transaction APA</u>: The asset purchase agreement submitted by a Successful Bidder pursuant to the Bidding Procedures, and determined to be the Successful Bid, as that term is defined in the Bidding Procedures.

2.2.11  <u>Alternative Transaction Toggle</u>:  With regard to PCP, the ability of PCP, with the First Lien PCP Lenders consent, to sell the PCP Transferred Assets to a Successful Bidder determined pursuant to the Bidding Procedures. With regard to GFL, the ability of GFL, with ANB's consent, to sell the GFL Transferred Assets pursuant to the Bidding Procedures.

2.2.12  <u>ANB</u>: Amarillo National Bank

2.2.13  ANB Trust Participation Amount: Cash in an amount specified in the Plan Supplement to be funded from Cash held by GFL and deposited into the Liquidating Trust Expense Reserve on the Effective Date in exchange for ANB participating in the Liquidating Trust.

2.2.14  <u>Asset</u>: All right, title and interest in and to any and all property of every kind or nature, whether tangible or intangible, owned by a Debtor or its Estate as of the Effective Date, including, but not limited to, Causes of Action.

2.2.15  <u>Avoidance Action</u>: Any and all rights, claims or actions which the Debtors may assert on behalf of the Estates under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, and any preference or fraudulent transfer action under any applicable state law, except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan.

2.2.16  <u>Ballot</u>: The form of the ballot for voting to accept or to reject the Plan, which accompanies the Plan and the Disclosure Statement delivered to holders of Claims in Impaired Classes.

2.2.17  <u>Bankruptcy Code</u>: The Bankruptcy Reform Act of 1978 as amended, and as applicable to this Chapter 11 case, § 101 et seq. Title 11, United States Code.

2.2.18  <u>Bankruptcy Court</u>: The United States Bankruptcy Court for the Northern District of Texas.

2.2.19  <u>Bankruptcy Rules</u>: The Federal Rules of Bankruptcy Procedure, as amended and prescribed under Section 2075, Title 28, United States Code, as applicable to the Chapter 11 Cases, together with the Local Rules of the Bankruptcy Court.

2.2.20  <u>Bar Date</u>: The Bar Date is the last date on which proofs of Claim or proofs of Interest may be timely Filed against the Debtors unless otherwise extended by Final Order of the Bankruptcy Court, which deadline is March 1, 2026 (with respect to any Claims held by a non-Governmental Authority) and April 20, 2026 (with respect to any Claims held by a Governmental Authority).

2.2.21  <u>Benit Judgment</u>: The Final Judgment signed and entered September 15, 2023 in the case styled: *Meir Benit, et. al v. PrimaLend Capital Partners, LP, et. al*, Cause No. DC-21-06229.

3

2.2.22  <u>Benit Supersedeas Bond</u>: The Supersedeas Bond No. 101198818 in the maximum amount of $4,981,205.69 effective as of January 7, 2025, filed in the case styled: *Meir Benit, et. al v. PrimaLend Capital Partners, LP, et. al*, Cause No. DC-21-06229 staying enforcement of the Benit Judgment.

2.2.23  <u>Bidding Procedures</u>:  The procedures approved pursuant to the Bidding Procedures Order.

2.2.24  <u>Bidding Procedures Motion</u>: The Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Certain Deadlines, (III) Approving the Form and Manner of Notice Thereof, (IV) Authorizing and Approving Procedures for the Assumption and Assignment of the Assumed Contracts, and (V) Granting Related Relief, filed in the Chapter 11 Cases.

2.2.25  <u>Bidding Procedures Order</u>:  Any order entered by the Bankruptcy Court approving the Bidding Procedures Motion.

2.2.26  <u>Business Day</u>: Any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

2.2.27  <u>BVY2-Related Assets</u>: Any litigation proceeds and/or value add from (i) any post-petition cash collected from BVY2 or any Affiliate of BVY2 (or others on their behalf), (ii) net future increases in recoveries related to collateral securing the Prepetition First Lien PCP Credit Facility as a result of eliminating payments to BVY2, and (iii) cash/consideration received in connection with any settlement with BVY2, *provided however,* for the avoidance of doubt, any Avoidance Actions related to BVY2 comprising preference or fraudulent conveyance claims shall not be considered a BVY2-Related Asset.

2.2.28  <u>BVY2</u>: BVY Partners II LLC

2.2.29  <u>Cash</u>: Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any Collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.2.30  <u>Causes of Action</u>: Any Avoidance Action as well as any other claim, cause of action of any kind, suit, controversy, right to payment, whether legal or equitable, known or unknown, liquidated or unliquidated, fixed or contingent, of the Debtors, whether listed in the Debtors' Schedules (as amended, supplemented and/or modified from time to time), the Disclosure Statement, the Plan, the Confirmation Order, any pleading in the Chapter 11 Cases, or any other disclosure, statement, correspondence or communication providing informal notice of such Cause of Action.

2.2.31  <u>Chapter 11 Cases</u>: Collectively, the Debtors' bankruptcy cases, each commenced by the Filing of a voluntary petition with the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, and which are jointly administered under 25-90013 (MXM).

2.2.32  <u>CIBC Bank</u>: CIBC Bank USA

2.2.33  <u>Claim</u>: Any right against the Debtors to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.2.34  <u>Claims Objection Deadline</u>: The date by which parties authorized by the Plan may file objections to Claims, which date shall be ninety (90) days after the Effective Date, unless extended by the Bankruptcy Court. The objection deadline with respect to Administrative Claims is specified separately in the Plan.

2.2.35  <u>Claims Register</u>: The combined registers of proofs of Claim filed in the Chapter 11 Cases, maintained by the Clerk of the United States Bankruptcy Court for the Northern District of Texas.

2.2.36  <u>Class</u>: One of the categories of Claims established under <u>Article III</u> of this Plan.

2.2.37  <u>Collateral</u>: An Asset subject to a valid, enforceable and non-avoidable Lien securing the payment or performance of a Claim.

2.2.38  <u>Committee</u>: The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

2.2.39  <u>Confirmation</u>: Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

2.2.40  <u>Confirmation Date</u>: The date of entry of the Confirmation Order by the Bankruptcy Court.

2.2.41  <u>Confirmation Hearing</u>: The hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing(s) may be continued, rescheduled or delayed.

2.2.42  <u>Confirmation Order</u>: Order of the Bankruptcy Court confirming the Plan and approving the transactions contemplated herein.

2.2.43  <u>Contingent Claim</u>: Any Claim listed in the Schedules as "contingent."

2.2.44  <u>Consenting Plan Parties</u>: The DIP Agent, the Committee, and a majority (as determined by amount of claims held) of the members of the Ad-Hoc Noteholder Group.

2.2.45  <u>Cooperation Agreements</u>: The cooperation agreements that shall be in form and substance reasonably acceptable to the Debtors and the Consenting Plan Parties and once executed by a Cooperating Party, such Cooperating Party will agree to use

commercially reasonable and good faith efforts to fully cooperate with the investigation and prosecution of any Non-Released Cause of Action following the Effective Date, taking into account the individual circumstances of each Cooperating Party.

2.2.46  <u>Cooperating Parties</u>: Those certain individuals identified and agreed upon with the Consenting Plan Parties (as applicable) who duly execute a Cooperation Agreement, all to the satisfaction of the Debtors and the relevant Consenting Plan Parties.

2.2.47  <u>Cooperation Default Notice</u>: The notice containing a proposed form of order to be filed with the Bankruptcy Court requesting an order causing the defaulting Cooperating Party to become a Non-Released Party in the event a Cooperating Party does not cure an alleged default under its Cooperation Agreement.

2.2.48  <u>Creditor</u>: Any Person that is the holder of a Claim that arose on or before the Petition Date, or a Claim of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

2.2.49  <u>Cure Claim</u>: The payment or other performance required to cure any existing default under an executory contract in accordance with Section 365 of the Bankruptcy Code, and unless otherwise specifically provided for in the Plan.

2.2.50  <u>Debtors</u>: Collectively, PCAP Holdings, LP; LNCMJ Management, LLC; Good Floor Loans LLC; and PrimaLend Capital Partners, LP (each a "Debtor," collectively the "Debtors").

2.2.51  <u>Definitive Documents</u>: With regard to the DIP Facility, the DIP Credit Documents, and with regard to: (i) the PCP Credit Bid Transaction, the PCP Credit Bid Transaction Documents, and (ii) the GFL Credit Bid Transaction, the GFL Credit Bid Transaction Documents, or, as applicable, (iii) an Alternative Transaction, the Alternative Transaction APA and the affiliated documents related thereto.

2.2.52  <u>DIP Agent</u>:  CIBC Bank USA

2.2.53  <u>DIP Credit Documents</u>:  The Debtor-in-Possession Credit Agreement executed by PCP and certain of the other Debtors related to the DIP Credit Facility, including any and all guaranty agreements, instruments, and related documents and interim Orders or term sheets, evidencing the DIP Credit Facility, all as approved pursuant to the DIP Order.

2.2.54  <u>DIP Facility</u>:  The postpetition senior secured superpriority term loan facility approved by the DIP Order and described more fully in the DIP Credit Documents.

2.2.55  <u>DIP Facility Claims</u>: All Claims held by the DIP Lenders and the DIP Agent under the DIP Credit Documents on account of, arising under, or relating to the DIP Facility or the DIP Order, which includes Claims for all principal amounts outstanding, interest, reasonable and documented fees, expenses, costs and other charges of the DIP Lenders.

2.2.56  <u>DIP Lenders</u>:  The DIP Lenders providing the DIP Facility under the DIP Credit Documents.

2.2.57  <u>DIP Order</u>: The order authorizing the Debtors to enter into the DIP Facility, entered in these Chapter 11 Cases.

2.2.58  <u>Disallowed</u>: When used with respect to a Claim or Interest, any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; (b) has been withdrawn by the holder of the Claim or Interest; (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which the Bar Date has been established but no proof of Claim or proof of Interest has been Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law; or (d) has not been scheduled in the Schedules and as to which no proof of Claim or proof of Interest has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or the Plan.

2.2.59  <u>Disbursing Agent</u>:  The Disbursing Agent means (i) solely with respect to the Reorganization Transactions, the Wind Down Estates; and (ii) solely with respect to distributions to be made from the Liquidating Trust or Liquidating Trust Assets, the Liquidating Trustee.

2.2.60  <u>Disclosure Statement</u>:  The Disclosure Statement Filed and served with respect to this Plan, as conditionally approved by the Bankruptcy Court, and subsequently approved pursuant to Section 1125 of the Bankruptcy Code.

2.2.61  <u>Disputed</u>: The portion (including, when appropriate, the whole) of a Claim or Interest that is not an Allowed Claim or Allowed Interest as to which: (a) a proof of Claim or proof of Interest has been Filed, or deemed Filed under applicable law or Order of the Bankruptcy Court; (b) an objection has been or may be timely Filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the time that an objection has been or may be Filed, a Claim or Interest shall be considered a Disputed Claim or Interest (a) if the amount or classification of the Claim or Interest specified in the proof of Claim or proof of Interest exceeds the amount or classification of any corresponding Claim or Interest is listed by a Debtor in its Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim or Interest is listed by a Debtor in its Schedules as disputed, contingent, or unliquidated; or (c) in its entirety, if no corresponding Claim or Interest has been listed by a Debtor in its Schedules.

2.2.62  <u>Disputed Claim Reserve</u>: Either (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee for the benefit of holders of Disputed Claims.

2.2.63  <u>Distribution</u>: The payment or distribution of consideration to holders of Allowed Claims and Allowed Interests under this Plan.

2.2.64  <u>Distributable GFL Sale Proceeds</u>:  The Net GFL Sale Proceeds, if any, held by GFL on the Effective Date after funding the treatment of Administrative Claims (including Professional Claims), Priority Tax Claims, other Priority Claims, the ANB Trust Participation Amount, including any Administrative Claims, chargeable against GFL's assets as a result of section 506(c) of the Bankruptcy Code.

2.2.65  <u>Distributable PCP Sale Proceeds</u>:  The Net PCP Sale Proceeds, if any, held by PCP on the Effective Date after funding the treatment of the DIP Facility Claims, Administrative Claims (including Professional Claims), Priority Tax Claims, Other Priority Claims, and the Liquidating Trust Expense Carve-Out.

2.2.66  <u>Effective Date</u>:  The first Business Day on which all of the conditions precedent to the Effective Date specified in <u>Article VII</u> of the Plan shall have been satisfied or waived; provided, however, that if such conditions precedent have been so satisfied or waived, but a stay, injunction or similar prohibition of the Confirmation Order is in effect, then the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect as long as the conditions precedent continue to be satisfied or waived.

2.2.67  <u>Entity</u>:  Has the same meaning as "entity" in section 101(15) of the Bankruptcy Code.

2.2.68  <u>Estates</u>:  Collectively, the bankruptcy estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code.

2.2.69  <u>Exculpated Fiduciaries</u>:  Collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Wind Down Administrator, (iii) the Committee and each of its members in their capacity as such, and (iv) the Independent Manager.

2.2.70  <u>Exculpated Parties</u>: The Exculpated Fiduciaries.

2.2.71  <u>Fee Application</u>: An application of a Professional under Sections 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

2.2.72  <u>File, Filed, or Filing</u>: Means file, filed or filing with the clerk of the Bankruptcy Court, or it authorized designee in the Chapter 11 Cases.

2.2.73  <u>Final Order</u>: Any order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law.

2.2.74  <u>First Lien PCP Agent</u>: CIBC Bank, USA

8

2.2.75  <u>First Lien PCP Lenders</u>:  The Secured Creditors holding Prepetition First Lien PCP Credit Facility Claims.

2.2.76  <u>General Unsecured Claim</u>: Any Claim that is not an Administrative Claim, Priority Tax Claim, or a Claim classified or defined in Classes 1-8 or 10-13.

2.2.77  <u>Governmental Authority</u>: Any transnational, domestic, or foreign federal, state or local governmental unit, authority, department, court, agency or official, including any political subdivision thereof, or any tribal authority.

2.2.78  <u>GFL</u>: Good Floor Loans LLC

2.2.79  <u>GFL Cash</u>: The aggregate Cash held in a deposit accounts in the name of GFL.

2.2.80  <u>GFL Credit Bid APA</u>: The asset purchase agreement specifying the terms of the GFL Credit Bid Transaction.

2.2.81  <u>GFL Credit Bid Purchaser</u>: The purchaser identified in the GFL Credit Bid APA to purchase the GFL Transferred Assets, which Entity may be ANB.

2.2.82  <u>GFL Credit Bid Transaction</u>: The transaction whereby ANB, or its assigns, purchases the GFL Transferred Asset utilizing the amounts owed on the Prepetition GFL Credit Facility Claim, and which initial credit bit amount shall be equal to $3.6 Million.

2.2.83  <u>GFL Credit Bid Transaction Documents</u>: The documents necessary to effectuate the GFL Credit Bid Transaction, including the GFL Credit Bid APA.

2.2.84  <u>GFL Transferred Assets</u>:  The purchased assets identified in the GFL Credit Bid APA, *provided, however*, the GFL Transferred Assets shall not include the GFL Cash.

2.2.85  <u>Impaired</u>: Has the same meaning as set forth in Section 1124 of the Bankruptcy Code.

2.2.86  <u>Independent Investigation</u>: The investigation of potential claims and Causes of Action held by the Estates conducted by the Independent Manager.

2.2.87  <u>Independent Manager</u>: Matthew R. Kahn, solely in his capacity as an independent manager of LNCMJ Management, LLC.

2.2.88  <u>Independent Manager Claims</u>: The unpaid fees and expenses as of the Effective Date due to Matthew R. Kahn in his capacity as Independent Manager of LNCMJ Management, LLC pursuant to his agreement with LNCMJ Management, LLC. On the Effective Date, the Independent Manager Claims shall be deemed Allowed Administrative Claims against the Debtors.

2.2.89  <u>Insider</u>: Has the same meaning as set forth in Section 101(31) of the Bankruptcy Code and shall include Mark Jensen, Christi Jensen (and all relatives of each

9

of Mark and Christi Jensen), as well as any and all non-Debtor Affiliates, and all current and former directors and officers of the Debtors.

2.2.90  Intercompany Claim: Includes any Claim by a Debtor against the other Debtor.

2.2.91  Intercompany Interest:  An Interest in a Debtor held by another Debtor.

2.2.92  Interest: Any equity security (as defined in section 101(16) of the Bankruptcy Code) in any of the Debtors, and any other security or equity interest in any of the Debtors, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest or other instrument, evidencing any fixed or contingent ownership interest in any of the Debtors, whether or not transferable and whether fully vested or vesting in the future, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, that existed immediately before the Effective Date, and including any equity interest issued to any of the Debtors' current or former employees and non-employee directors various forms of long-term incentive compensation, including stock options, stock appreciation rights, restricted stock, restricted stock units, performance shares/units, incentive awards, Cash awards, and other stock-based awards.

2.2.93  Lien: With respect to any property or Asset, any mortgage, lien, interest pledge, charge, security interest, encumbrance, mechanics' lien, materialmen's lien, statutory lien or right, and other consensual or non-consensual lien, whenever granted and including, without limitation, those charges or interest in property within the meaning of "lien" under Section 101(37) of the Bankruptcy Code.

2.2.94  Lien Documents: An agreement, instrument, affidavit, filing, or recording evidencing, creating or perfecting a Lien.

2.2.95  Liquidating Trust: The Liquidating Trust created under the Liquidating Trust Agreement for the benefit of the Liquidating Trust Beneficiaries.

2.2.96  Liquidating Trust Agreement: The Liquidating Trust Agreement to be executed by the Debtors and the Liquidating Trustee in a form reasonably acceptable to the Committee and the Ad-Hoc Noteholder Group.

2.2.97  Liquidating Trust Assets: All legal and equitable interests of the Debtors in (i) Liquidating Trust Causes of Action (which includes for the avoidance of doubt, Avoidance Actions), (ii) BVY2-Related Assets, (iii) any Interests the Debtors own in any non-Debtor Affiliates other than the PRE Interests, (iv) solely in connection with the commencement, prosecution, pursuit, or settlement of the Liquidating Trust Causes of Action and BVY-2 Related Assets, and subject to Section 6.15, all evidentiary privileges of any type or nature whatsoever, including attorney-client privilege, the work product privilege or doctrine, and any other privilege or immunity attaching to any documents or communications in any form, including electronic data hosted on remote servers, and any other applicable evidentiary privileges of each of the foregoing (collectively, the

"**Privileges**") belonging to the Debtors and the Committee; and (v) the Liquidating Trust Expense Carve-Out and, if applicable, the ANB Trust Participation Amount.

2.2.98 <u>Liquidating Trust Beneficiary</u>: The holders of Allowed Prepetition First Lien PCP Credit Facility Claims, Allowed PCAP Unsecured Noteholder Claims, Allowed PCP Unsecured Noteholders Claims, and Allowed General Unsecured Claims Filed as of the Bar Date.

2.2.99 <u>Liquidating Trust Board</u>: The board established upon the Effective Date, to monitor and supervise the Liquidating Trustee's administration of the Liquidating Trust and to take such other action as are set forth in this Plan, the Liquidating Trust Agreement and the Confirmation Order, or as may be approved by the Bankruptcy Court.

2.2.100 <u>Liquidating Trust Causes of Action</u>: All Non-Released Causes of Action other than the Purchaser Causes of Action, and all entitlements, proceeds, and rights to payment with respect to any of the foregoing, which shall be transferred to the Liquidating Trust as Liquidating Trust Assets on the Effective Date. For the avoidance of doubt, Liquidating Trust Causes of Action shall include all Causes of Action against Cooperating Parties, subject to <u>Section 6.14</u>.

2.2.101 <u>Liquidating Trust Expense Carve-Out</u>: Cash in the amount of $350,000.00 to be funded from Cash held by PCP and deposited into the Liquidating Trust Expense Reserve on the Effective Date.

2.2.102 <u>Liquidating Trust Expense Reserve</u>: Either (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee.

2.2.103 <u>Liquidating Trust Initial Funding Option</u>: The initial funding opportunity offered to certain holders of Liquidating Trust Interests as described in <u>Section 6.10(j)</u> of the Plan.

2.2.104 <u>Liquidating Trust Interest</u>: The non-certificated beneficial interests in the Liquidating Trust which may be transferred according to the procedures to be set forth in the Liquidating Trust Agreement and shall entitle the holder thereof to the distributions of the Liquidating Trust Assets which shall be made pursuant to the Liquidating Trust Agreement and the Plan.

2.2.105 <u>Liquidating Trustee</u>: The Person to be jointly appointed by the Ad-Hoc Noteholder Group and the Committee, and reasonably acceptable to the Debtors pursuant to the Plan and the Liquidating Trustee Agreement and identified in the Plan Supplement to, among other things, (i) act as trustee of the Liquidating Trust, (ii) manage the Liquidating Trust Assets, (iii) administer, dispute, object to, seek to subordinate, compromise, or otherwise resolve all PCP Unsecured Noteholder Claims, and General Unsecured Claims, (iv) make distributions from the Liquidating Trust Assets to the Liquidating Trust Beneficiaries, and (v) manage and administer to the Disputed Claims Reserve.

2.2.106    <u>Net GFL Sale Proceeds</u>:  The Cash received by GFL pursuant to an Alternative Transaction involving the sale of the GFL Transferred Assets.

2.2.107    <u>Net PCP Sale Proceeds</u>:  The Cash received by the PCP pursuant to an Alternative Transaction involving the sale of the PCP Transferred Assets.

2.2.108    <u>Non-Released Causes of Action</u>:  All Claims and Causes of Action held by the Estates not released, waived, or transferred pursuant to this Plan and/or the APA, as the same may be amended, modified, or supplemented from time to time; in each case, which shall be transferred on the Effective Date, and, for the avoidance of doubt, all entitlements, proceeds, and rights to payment with respect to any of the foregoing, with further details to be set forth in the Plan Supplement. Non-Released Causes of Action shall include the Liquidating Trust Causes of Action and Purchaser Causes of Action.  A list of the known Non-Released Causes of Action will also be filed as a Plan Document prior to the Voting Deadline.

2.2.109    <u>Non-Released Parties</u>:  All Persons and Entities that are not "Released Parties," including Cooperating Parties, subject to <u>Section 6.14.</u>

2.2.110    <u>Order</u>: Any order or judgment of the Bankruptcy Court as entered on the docket for the Chapter 11 Cases.

2.2.111    <u>Other Priority Claim</u>:  Any Claims other than an Administrative Expense Claim or a Priority Tax Claim that is entitled to priority of payment pursuant to section 507(a) of the Bankruptcy Code.

2.2.112    <u>Other Secured Claim</u>: Any Secured Claim against a Debtor other than a Priority Tax Claim, a DIP Claim, a Prepetition First Lien PCP Credit Facility Claims, or a Prepetition GFL Credit Facility Claim.

2.2.113    <u>Other Secured Claims Cap</u>: The sum of $25,000.00.

2.2.114    <u>PCAP</u>:  PCAP Holdings LP

2.2.115    <u>PCAP Interest</u>:  An Interest in PCAP.

2.2.116    <u>PCAP Noteholder Mutual Release Parties</u>: Collectively, and in each case, solely in their capacities as such, (i) the holders of PCAP Unsecured Notes that vote to accept the Plan, (ii) the holders of PCAP Unsecured Notes whose vote to accept or reject the Plan is solicited but that do not vote to accept or reject the Plan, (iii) the holders of PCAP Unsecured Notes that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth in the Plan, and (iv) the holders of PCAP Unsecured Notes that were given the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

2.2.117    <u>PCAP Unsecured Notes</u>:  The 6.5% Senior Unsecured Notes due 2028, owed by PCAP and issued pursuant to that certain Note Purchase Agreement dated

July 9, 2021, by and among PCAP, as borrower, each of the guarantors party thereto, as amended, modified, or otherwise supplemented from time to time.

2.2.118     PCAP Unsecured Noteholders:   Those Creditors holding PCAP Unsecured Noteholders Claims.

2.2.119     PCAP Unsecured Note Agreement:   That certain Note Purchase Agreement dated July 9, 2021, with PCAP as borrower, as amended, modified, or otherwise supplemented from time to time.

2.2.120     PCAP Unsecured Noteholder Claims:   Claims based upon the PCAP Unsecured Notes.

2.2.121     PCP: PrimaLend Capital Partners, LP

2.2.122     PCP Credit Bid. The bid made by the First Lien PCP Lenders (or their assigns) for the purchase of the PCP Transferred Assets, as more specifically outlined in the Definitive Documents.

2.2.123     PCP Credit Bid APA: The asset purchase agreement specifying the terms of the PCP Credit Bid Transaction.

2.2.124     PCP Credit Bid Purchaser:   The Entity purchasing the PCP Transferred Assets pursuant to the PCP Credit Bid Transaction.

2.2.125     PCP Credit Bid Transaction:   The transaction whereby the First Lien PCP Lenders, or their assigns, purchase the PCP Transferred Assets utilizing the amounts owed pursuant to the DIP Facility Claims and the Prepetition First Lien PCP Credit Facility Claims.

2.2.126     PCP Credit Bid Transaction Documents: The documents necessary to effectuate the PCP Credit Bid Transaction.

2.2.127     PCP Lender Mutual Release Parties: Collectively, and in each case, solely in their capacities as such, (i) First Lien PCP Lenders that vote to accept the Plan, (ii) First Lien PCP Lenders whose vote to accept or reject the Plan is solicited but that do not vote to accept or reject the Plan, (iii) First Lien PCP Lenders that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth in the Plan, and (iv) First Lien PCP Lenders that were given the opportunity to opt out of granting the releases set forth in the Plan but did not opt out.

2.2.128     PCP Transferred Assets:   The purchased assets identified in the PCP Credit Bid APA, which assets will include, solely in connection with the commencement, pursuit, or settlement of the Purchased Causes of Action, and subject to Section 6.15, the Privileges belonging to the Debtors and the Committee.

2.2.129     PCP Unsecured Notes: Those certain unsecured promissory notes held by the PCP Unsecured Noteholders.

2.2.130    PCP Unsecured Noteholders: The individuals specified in Schedule 1 to this Plan.

2.2.131    PCP Unsecured Noteholder Claims: Claims based upon the PCP Unsecured Notes.

2.2.132    Person: Any individual, entity, or Governmental Authority of any nature whatsoever, specifically including any individual, firm, company, corporation, partnership, trust, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization, or any other entity.

2.2.133    Petition Date: With regard to PCP, GFL, and LNCMJ, October 22, 2025. With regard to PCAP December 12, 2025.

2.2.134    Plan: The Joint Plan of Reorganization, either in its present form or as it may be altered, amended, modified, or supplemented from time to time.

2.2.135    Plan Documents: All documents, forms, lists and agreements contemplated under this Plan to effectuate the terms and conditions hereof which, for the avoidance of doubt, shall include the Liquidating Trust Agreement.

2.2.136    Plan Supplement: The compilation of Plan Documents and any other documents, forms, exhibits, lists and schedules as specified in this Plan and the Disclosure Statement which will be Filed with the Bankruptcy Court no later than three (3) days prior to the commencement of the Confirmation Hearing, as such documents may be altered, restated, modified, or supplemented from time to time.

2.2.137    Post-Sale Reserve: A reserve of cash funds set aside by each of the Debtors from its respective Estate on the Effective Date to fund the operations of the Wind Down Estates in accordance with a wind-down budget to be agreed to by and between the Debtors and the First Lien PCP Lenders.

2.2.138    PRE Interests: All Interests of PCAP in Primalend Real Estate, LLC.

2.2.139    Prepetition First Lien PCP Credit Facility:  That certain credit agreement dated as of August 27, 2024, by and among PrimaLend Capital Partners LP, as borrower, each of the guarantors named therein, CIBC Bank, as administrative agent, and the lenders party thereto (as amended, modified, restated and/or replaced from time to time) and all related and ancillary documents, including all collateral and security documents, as well as any amendments, extensions, modifications, and/or reinstatements, thereto.

2.2.140    Prepetition First Lien PCP Credit Facility Claims:  Claims based upon the Prepetition First Lien PCP Credit Facility.

2.2.141    Prepetition GFL Credit Facility: That certain credit agreement dated as of September 20, 2022, by and between Good Floor Loans LLC, as borrower, each of the guarantors named therein, and ANB, as lender.

14

2.2.142    Prepetition GFL Credit Facility Claims: Claims based upon the Prepetition GFL Credit Facility.

2.2.143    Priority Non-Tax Claim: Any Claim entitled to a priority under, *inter alia*, Section 507(a) of the Bankruptcy Code other than a Priority Tax Claim.

2.2.144    Priority Tax Claim: Any Claim of a Governmental Authority that is entitled to priority in payment under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

2.2.145    Privileges: Solely in connection with the commencement, prosecution, pursuit, or settlement of the Liquidating Trust Causes of Action and BVY-2 Related Assets, or with regard to the PCP Transferred Assets, solely in connection with the commencement, prosecution, pursuit or settlement of the Purchaser Causes of Action, and subject to Section 6.15, all evidentiary privileges of any type or nature whatsoever, including attorney-client privilege, the work product privilege or doctrine, and any other privilege or immunity attaching to any documents or communications in any form, including electronic data hosted on remote servers, and any other applicable evidentiary privileges of each of the foregoing.

2.2.146    Pro Rata: The proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate Face Amount of all Allowed Claims in such Class.

2.2.147    Professional: Any Person employed in the Chapter 11 Cases pursuant to Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.2.148    Professional Claim: Any Claim that is Filed by a Professional pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.2.149    Professional Claim Bar Date: The date that is sixty (60) days after the Effective Date.

2.2.150    Purchaser: Either, as appropriate, given the relevant context (i) the PCP Credit Bid Purchaser, (ii) GFL Credit Bid Purchaser, and/or (iii) a Successful Bidder.

2.2.151    Purchaser Causes of Action: All Non-Released Causes of Action and related Privileges held by the Estates that are transferred to (i) the PCP Credit Bid Purchaser, (ii) GFL Credit Bid Purchaser, and/or (iii) a Successful Bidder, and all entitlements, proceeds, and rights to payment with respect to any of the foregoing. For the avoidance of doubt, all Non-Released Causes of Action that are not Purchaser Causes of Action or Non-Released Causes of Action related to PCP Lender Mutual Release Parties (if any) shall be Liquidating Trust Causes of Action and shall vest with the Liquidating Trust on the Effective Date.

2.2.152    Related Parties:  With respect to any Person or Entity, such Person's or Entity's current or former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, Affiliates, managed accounts or funds, and each of their respective current and former

equity holders, directors, managers, owners, principals, shareholders, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, investment bankers, consultants, representatives, other professionals and the respective successors and assigns thereof.

2.2.153 <u>Released Parties</u>: Each of the following solely in its capacity as such: (a) the Debtors; (b) Wind Down Administrator; (c) the DIP Agent and each DIP Lender; (d) the First Lien PCP Agent and each First Lien PCP Lender; (e) the Committee and each member of the Committee, solely in their capacity as such; (f) all holders of PCAP Unsecured Notes, solely in their capacity as such; (g) the Independent Manager and any Professional retained by the Independent Manager; (h) Tanya Meerovich, in her capacity as Chief Restructuring Officer, or any successor to such position; (i) any Professional retained by the Debtors, or the Committee by order of the Bankruptcy Court in the Chapter 11 Cases; and (j) each Related Party of each Person or Entity in clauses (c) through (i).[2]

2.2.154 <u>Restructuring Transactions</u>: One or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (i) the consummation of the transactions provided for under or contemplated by the Plan, (ii) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan, and that satisfy the requirements of applicable law, (iii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan, (iv) if applicable, the Alternative Transaction, and (v) all other actions that the Debtors or Wind Down Administrator, as applicable, and, if applicable, a Successful Bidder(s), determine are necessary or appropriate and consistent with this Plan.

2.2.155 <u>Schedules</u>: The Schedules of Assets and Liabilities and the Statements of Financial Affairs Filed by or on behalf of each Debtor in the Chapter 11 Cases pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may hereafter be amended, modified or supplemented.

2.2.156 <u>Schedule of Assumed Contracts and Leases</u>: The schedule of executory contracts and unexpired leases to be assumed by the Debtors pursuant to the Plan, if any, as the same may be amended, modified, or supplemented from time to time.

2.2.157 <u>Secured Claim</u>: Any Claim to the extent (a) secured by a Lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under Sections 553 of the Bankruptcy Code, in each case to the extent of the value of the Secured Creditor's interest in the Debtor's interests in the property or the amount of the set off, as applicable; provided, however, that

---

[2] The "Released Parties" are subject to ongoing review including as part of the Independent Investigation and may be expanded to include additional parties, including *inter alia* some or all officers, directors, and employees of the Debtors, or limited pending the results of the Independent Investigation.

nothing herein shall prohibit a Secured Creditor from making the election provided in Section 1111(b)(2) of the Bankruptcy Code.

2.2.158    Secured Creditor: Any Creditor that is the holder of a Secured Claim.

2.2.159    Subordinated Claim: Any Claim (a) arising from rescission of a purchase or sale of a Security of any of the Debtors or of an affiliate of any of the Debtors, (b) for damages arising from the purchase or sale of such a Security, (c) for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of a Claim described in (a) or (b) above, (d) otherwise subordinated pursuant to Section 510 of the Bankruptcy Code, (e) subordinated by Final Order, or (f) based on fines, penalties, forfeiture or for multiple, exemplary, or punitive damages; *provided, however,* that notwithstanding any provision to the contrary in this section 2.2.151 or elsewhere in the Plan, section 510(a) of the Bankruptcy Code and any Estate or third party contractual right or subordination or turnover shall be waived and shall not be enforced with respect to any PCP Noteholder Claim or PCAP Noteholder Claim.

2.2.160    Subordinated Tax Penalty Claim: Any Claim against the Debtors or their Estates in connection with any tax liability and for any fine, penalty, disgorgement, forfeiture order of restitution or for multiple, exemplary, or punitive damages (other than the type specified in Section 507(a)(8)(G)) of the Bankruptcy Code to the extent that such fines, penalties, disgorgements, forfeitures, orders of restitution, or damages are not compensation for actual pecuniary loss suffered by a holder of such Claim; *provided, however*, in accordance with 18 U.S.C. § 3613(e), nothing herein shall apply to any fine, penalty, disgorgement, forfeiture, order of restitution entered or ordered in connection with any criminal action or criminal proceeding by the United States.

2.2.161    Successful Bid: The "Successful Bid" identified pursuant to the Bidding Procedures.

2.2.162    Successful Bidder(s):  The "Successful Bidder(s)" identified pursuant to the Bidding Procedures.

2.2.163    U.S. Trustee Fees: Fees payable pursuant to 28 U.S.C. § 1930.

2.2.164    Undetermined Claim: Any Claim that is (a) a Disputed Claim; (b) a Claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined Administrative Claim; or (d) a claim that is an Unliquidated Claim or Contingent Claim.

2.2.165    Unimpaired: When used with reference to a Claim or Interest, a Claim or Interest that is not Impaired.

2.2.166    Unliquidated Claim: Any Claim that is listed in the Schedules as "unliquidated."

2.2.167 <u>Wind Down Administrator</u>: The Person or Persons identified in the Plan Supplement, if known, and appointed on the Effective Date, who will serve as the trustee and administrator overseeing the Wind Down Estates and dissolution of the Debtors and their Estates in accordance with the Plan.

2.2.168 <u>Wind Down Estates</u>. The Estates of the Debtors following the Effective Date.

2.2.169 <u>Wind Down Estate Assets</u>: Collectively any Assets of the Debtors' Estates that are not Liquidating Trust Assets, not sold pursuant to the PCP Credit Bid Transaction, GFL Credit Bid Transaction, or Alternative Transaction, and not otherwise disposed of or transferred pursuant to this Plan. For the avoidance of doubt, the PRE Interests shall not be Wind Down Estate Assets and shall otherwise be transferred pursuant to the terms of the Plan.

2.3 <u>Rules of Interpretation</u>. For purposes of this Plan, (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an existing document, pleading or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) the words "herein," "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (iv) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply, unless an alternate calculation is expressly provided herein (i.e., Business Days).

2.4 <u>Computation of Time</u>. In computing any period of time prescribed or allowed in this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.5 <u>Exhibits and Plan Supplement</u>. All exhibits are incorporated into and are a part of the Plan as if set forth in full herein. Holders of Claims and Interests may obtain a copy of the Filed exhibits upon written request to the Debtors. Upon their Filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website, or at the website maintained for these Chapter 11 Cases at https://cases.stretto.com/PrimaLend. The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtors expressly reserve the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify or supplement any exhibit to the Plan in conformance with the provisions of this Plan.

2.6 <u>Approved Disclosure Statement</u>. The terms and provisions of the Disclosure Statement, as conditionally approved by the Bankruptcy Court, are expressly incorporated herein, except where such provisions of the Disclosure Statement may conflict with the terms of this Plan. In the event that such a conflict arises, the terms of this Plan and the Confirmation Order shall control, with the Confirmation Order controlling over the terms of this Plan.

## ARTICLE III.
## DESIGNATION OF CLASSES OF CLAIMS

3.1     Classification in General.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

3.2     Formation of Debtor Groups for Convenience Only. The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, Confirmation of this Plan, and making distributions in respect of Allowed Claims or Interests under the Plan.  Except as otherwise specified in the Plan, such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal entities.

3.3     Summary of Classification. The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.  All of the potential Classes for the Debtors are set forth herein.   Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.3.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Secured Claims of First Lien PCP Lenders | Impaired | Entitled to Vote |
| 4 | Secured Claims of ANB | Impaired | Entitled to Vote |
| 6 | Claims of Meir Benit Trust | Impaired | Entitled to Vote |
| 7 | Claims of PCAP Unsecured Noteholders | Impaired | Entitled to Vote |
| 8 | Claims of PCP Unsecured Noteholders | Impaired | Entitled to Vote |
| 9 | General Unsecured Claims | Impaired | Entitled to Vote |

| 10 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 12 | PCAP Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 13 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

3.4     Special Provisions Related to Unimpaired Claims. Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors, the Wind Down Estates, or the Liquidating Trustee as the case may be, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5     Elimination of Vacant Classes. Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.6     Cramdown. If any Class of Claims is deemed to reject this Plan or is entitled to vote on this Plan does not vote to accept this Plan, the Debtors may (a) seek Confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code, including, without limitation, to provide for a treatment that will render such Class of Claims to be Unimpaired.

3.7     Subordination. The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto; *provided, however*, that the Debtors shall not re-classify any Prepetition First Lien PCP Credit Facility Claim, DIP Facility Claim, or PCAP Unsecured Noteholder Claim.

3.8     Voting Classes; Presumed Acceptance by Non-Voting Classes. If a Class contains Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

3.9     Controversy Concerning Impairment. If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## PAYMENT OF ADMINISTRATIVE EXPENSES AND CERTAIN PRIORITY CLAIMS

4.1     Administrative Claims and Deadline. Except to the extent that a holder of an Allowed Administrative Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Claim (other than a Professional Claim or a DIP Claim) shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Claim in accordance with the following: (a) (i) if Allowed on or prior to the Effective Date, then on the Effective Date or as soon as reasonably practicable thereafter; (ii) if not Allowed as of the Effective Date, then no later than forty-five (45) days after the date on which an order Allowing such Administrative Claim becomes a Final Order; or (iii) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided* that any Allowed Administrative Claim assumed by any Purchaser shall be deemed paid in full under the Plan.

Except for Professional Claims and DIP Facility Claims, and notwithstanding any prior Filing or Proof of Claim, Proofs of Claim seeking the allowance and payment of Administrative Claims must be Filed and served on the Debtors or the Wind Down Estates and their counsel by no later than the Administrative Claims Bar Date pursuant to the procedures set forth in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the holder of the Administrative Claims.

**Except as otherwise provided in the Plan, holders of Administrative Claims (other than Professional Claims) that do not File and serve a Proof of Claim or application for payment of administrative expenses requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Wind Down Estates, the Estates, or the Debtors' assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date unless otherwise ordered by the Bankruptcy Court.**

4.2     Professional Claims and Deadline.

(a)     Final Fee Applications. Each Professional who holds or asserts an Administrative Claim that is a Professional Claim (except from those Professionals who were ordinary course professionals retained pursuant to an order of the Bankruptcy Court) incurred prior to the Effective Date shall File with the Bankruptcy Court and serve on all parties entitled to receive such notice its Fee Application by no later than the Professional Claim Bar Date. Failure to timely and properly File and serve the Fee Application as required under this section shall result in the Professional Claim being forever barred and discharged. No Professional Claim will be deemed Allowed until an Order allowing the Professional Claim becomes a Final Order. Any party in interest with standing to object to a Professional Claim may File such an objection to thereto, but such objection must be filed no later than twenty-one (21) days after the Filing of the Professional Claim. Following such twenty-one (21) day period, if no objections have been filed, the Court may enter an order approving the payment of such Professional Claim, absent a hearing. Upon entry of any such order, the Wind Down Administrator shall make all payments for any such approved Professional Claim in accordance with Section 4.2(d) of this Plan.

(b)     Post-Confirmation Date Fees and Expenses.   Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Wind Down Administrator shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Wind Down Administrator (as applicable). Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Wind Down Administrator (as applicable) may employ and pay any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. Further, except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Wind Down Administrator (as applicable) shall pay, within ten (10) Business Days after submission of a detailed invoice such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals of the Debtors or the Wind Down Estates (as applicable). If the Debtors or the Wind Down Administrator dispute the reasonableness of any such invoice, the affected Professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

(c)     Professional Fee Reserve Account. On the Effective Date, the Debtors shall fund an amount in Cash into the Professional Fee Reserve Account equal to (a) the aggregate accrued and unpaid Professional Claims as of the Effective Date (which shall be estimated by each applicable Professional in its reasonable discretion based on the amount of then-accrued Profession Claims plus a reasonable estimate of fees and expenses that will accrue up until the Effective Date), less (b) any amount then held in the Professional Fee Reserve Account. Funds held in the Professional Fee Reserve Account shall be held for the benefit of the Professionals and shall not be property of the Estates, *provided, however* that to the extent that funds remain in the Professional Fee Reserve Account following the payment of all Professional Fees, those excess funds shall be paid Pro Rata to the First Lien PCP Lenders. The Professionals shall reasonably and in good faith estimate their Profession Claims before and as of the Effective Date, taking into account any prior payments, and shall deliver such estimates to the Debtors no later than ten (10) Business Days prior to the anticipated Effective Date, such estimates may be revised and provided to the Debtors no later than two (2) Business Days prior to the anticipated Effective Date.

(d)     Payment of Professional Claims. Professional Claims shall be paid in full without interest or other earnings therefrom, in Cash, from the Professional Fee Reserve Account, in such amounts as are Allowed by the Bankruptcy Court, as soon as reasonably practicable after such Professional Claims are Allowed. The obligations of the Estates with respect to Professional Claims shall not be limited by nor deemed limited to the balance of funds held in the Professional Fee Reserve Account. To the extent that funds held in the Professional Fee Reserve Account are insufficient to satisfy the amount of accrued Professional Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency. No Liens, claims, or interests shall

encumber the Professional Fee Reserve Account in any way, other than customary liens in favor of the depository bank at which the Professional Fee Reserve Account is maintained.

4.3     <u>Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on the Effective Date or as soon as practicable thereafter or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

4.4     <u>DIP Facility Claims</u>.   Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of all DIP Facility Claims, on the Effective Date, each holder of a DIP Claim shall receive its Pro Rata share of the PCP Transferred Assets; *provided, however,* if an Alternative Transaction is consummated as to the PCP Transferred Assets, the DIP Facility shall be paid in full from the Net PCP Sale Proceeds.

4.5     <u>Payment of Statutory Fees</u>. All fees due and payable on or before the Effective Date (a) pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, and (b) to the United States Trustee, shall be paid by the Wind Down Estates on or before Effective Date. From and after the Effective Date, any fees and charges which are assessed under Chapter 123, Title 28, United States Code, in relation to the Chapter 11 Cases shall be paid by the Liquidating Trustee as they become due.

# ARTICLE V.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

5.1     <u>Class 1 — Other Secured Claims</u>

(a)     *Classification*:  Class 1 consists of all Other Secured Claims.

(b)     *Treatment*:   On the Effective Date, to the extent any Other Secured Claims exist and except to the extent a holder of an Allowed Other Secured Claim agrees to different treatment on account of such Allowed Other Secured Claim, each holder of an Other Secured Claim that is Allowed as of the Effective Date shall be satisfied by either (i) payment in full in Cash, (ii) reinstatement pursuant to section 1124 of the Bankruptcy Code, or (iii) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

(c)     *Voting*:   Class 1 is Unimpaired under the Plan. Holders of Class 1 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

5.2     <u>Class 2 – Other Priority Claims</u>

(a)     *Classification:* Class 2 consists of all Other Priority Claims.

(b)    *Treatment:*    Except to the extent that a holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Priority Claim at the option of Debtors, each holder shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Class 2 Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

5.3    Class 3: Secured Claims of First Lien PCP Lenders

(a)    *Classification*: Class 3 consists of all Prepetition First Lien PCP Credit Facility Claims.

(b)    *Allowance*:  The Class 3 Prepetition First Lien PCP Credit Facility Claims shall be deemed allowed in an amount equal to the greater of (i) $100 Million *minus* the aggregate amount of DIP Facility Claims, (ii) the amount of any PCP Credit Bid for the PCP Transferred Assets *minus* the aggregate amount of DIP Facility Claims, and (iii) the amount of any Successful Bid for the PCP Transferred Assets *minus* the aggregate amount of DIP Facility Claims (the "**Class 3 Secured Claims**").

(c)    *Treatment*: On the Effective Date, except to the extent that a holder of a Allowed Prepetition First Lien PCP Credit Facility Claim agrees to different treatment on account of such Prepetition First Lien PCP Credit Facility Claim, each holder of an Allowed Prepetition First Lien PCP Credit Facility Claim shall receive (a) its Pro Rata portion of all of the PRE Interests by virtue of a standalone assignment agreement to the First Lien PCP Lenders or their assignee, and (b) in the event that the PCP Credit Bid Transaction is consummated, each holder of an Allowed Prepetition First Lien PCP Credit Facility Claim shall receive, in partial satisfaction of such Claim its Pro Rata portion of the PCP Transferred Assets that remain available for distribution following the satisfaction of the DIP Facility Claims; *provided* that any all Administrative Claims (including Professional Claims and Independent Manager Claims), Priority Tax Claims, Other Secured Claims (subject to the Other Secured Claims Cap), and Other Priority Claims have been paid or will be paid or escrowed prior to the Effective Date; *provided, further,* if an Alternative Transaction occurs as to the PCP Transferred Assets, each holder of an Allowed First Lien PCP Credit Facility Claim shall receive its Pro Rata share of the Distributable PCP Sale Proceeds (if any), after payment or satisfaction, as applicable, of all Allowed DIP Facility Claims. Notwithstanding the foregoing, nothing in this Section 5.3, or in this Plan, shall be deemed as a waiver or release of any claims, causes of action, or collateral interests that the holders of First Lien PCP Credit Facility Claims may have against any individual or entity that guaranteed the obligations under the First Lien PCP Credit Facility. Except as specifically provided within the Plan, the terms and conditions of the Prepetition First Lien PCP Credit Facility are recognized and reaffirmed as the first priority lien over all collateral described in the Prepetition First Lien PCP Credit Facility which will continue to govern and secure the obligations owed to the First Lien PCP

Lenders and DIP Lenders at all times, including on a post-Confirmation basis and following the Effective Date of the Plan.

(d)     *Deficiency Claim*:  Unless otherwise agreed by the holder of a First Lien PCP Credit Facility Claim, pursuant to section 506(a) of the Bankruptcy Code, each holder of a First Lien PCP Credit Facility Claim shall have an Allowed general unsecured claim treated in Class 9 in an amount equal to their Prepetition First Lien PCP Credit Facility Claim *minus* the amount of their Class 3 Secured Claim. Notwithstanding the treatment afforded to Class 9 Claims and any recoveries on BVY2-Related Assets as specified in Section 6.10(o), the First Lien PCP Lenders shall receive, on account of their deficiency claim, ten percent (10%) of the Liquidating Trust Interests.

(e)     *Voting*: Class 3 is Impaired under the Plan. Holders of Class 3 Prepetition First Lien PCP Credit Facility Claims will be entitled to vote to accept or reject the Plan.

5.4     Class 4: Secured Claims of ANB.

(a)     *Classification*: Class 4 consists of the Claims of ANB related to the Prepetition GFL Credit Facility.

(b)     *Treatment*: On the Effective Date, except to the extent that ANB agrees to different treatment on account of its Prepetition GFL Credit Facility Claim, ANB shall receive, in full satisfaction of such Prepetition GFL Credit Facility Claim (a) in the event that the GFL Credit Bid Transaction is consummated, the GFL Transferred Assets, and (b) the GFL Cash; *provided* that the GFL Cash shall be reduced by an amount estimated by GFL to pay or escrow for any and all Administrative Claims (including Professional Claims and Independent Manager Claims), Priority Tax Claims, Other Secured Claims (subject to the Other Secured Claims Cap), and Other Priority Claims attributable to GFL, and such Cash necessary for such estimates has been paid or will be paid or escrowed prior to the Effective Date; *provided, further*, if an Alternative Transaction occurs as to the GFL Transferred Asset, ANB shall receive the Distributable GFL Sale Proceeds (if any). Notwithstanding the foregoing, nothing in this Section 5.4, or in this Plan, shall be deemed as a waiver or release of any claims or causes of action ANB may have against any individual or entity that guaranteed the obligations under the Prepetition GFL Credit Facility.

(c)     *Alternative Treatment*: In the event that the GFL Credit Bid Transaction is not consummated, GFL shall transfer, on or before the date that is thirty (30) days after the Effective Date, to ANB, as the indubitable equivalent of  ANB's Prepetition GFL Credit Facility Claims, (a) the GFL Transferred Assets, and (b) the GFL Cash; *provided* that the GFL Cash shall be reduced by an amount estimated by GFL to pay or escrow for any and all Administrative Claims (including Professional Claims and Independent Manager Claims), Priority Tax Claims, Other Secured Claims (subject to the Other Secured Claims Cap), and Other Priority Claims attributable to GFL, and such Cash necessary for such estimates has been paid or will be paid or escrowed prior to the Effective Date.

(d)    *Voting*: Class 4 is Impaired under the Plan. Holders of Class 4 Prepetition GFL Credit Facility Claims will be entitled to vote to accept or reject the Plan.

5.5    <u>Intentionally Omitted</u>.

5.6    <u>Class 6: Claims of Meir Benit Trust</u>.

(a)    *Classification:*  Class 6 consists of Allowed Claims of Meir Benit Trust related to the Benit Judgment.

(b)    *Treatment:*  On the Effective Date, except to the extent that the holder of an Allowed Claim related to the Benit Judgment agrees to different treatment, the Allowed Claims of Meir Benit Trust shall be entitled to recover the amount of the Benit Supersedeas Bond posted to secure the Benit Judgment, and any amount of the Benit Judgment that exceeds the amount of the Benit Supersedeas Bond, shall be treated as a General Unsecured Claim. The Benit Judgment shall first be payable from the Benit Supersedeas Bond, and any amount remaining thereafter shall be paid pursuant to the treatment afforded to General Unsecured Claims. The appeal of the Benit Judgment shall otherwise be dismissed on the Effective Date.

(c)    *Voting:* Class 6 is Impaired under the Plan. Holders of Class 6 Meir Benit Trust Claims are entitled to vote to accept or reject the Plan.

5.7    <u>Class 7: PCAP Unsecured Noteholders</u>.

(a)    *Classification:* Class 7 consists of the Allowed Claims of the PCAP Unsecured Noteholders.

(b)    *Allowance*:   The Class 7 PCAP Unsecured Noteholder Claims shall be deemed Allowed in the amount of $79,401,041.72 million.

(c)    *Treatment:*   On the Effective Date, each holder of an Allowed PCAP Unsecured Noteholder Claim will be entitled to receive, in full and final satisfaction of such Allowed PCAP Unsecured Noteholder Claims, its Pro Rata share of 61.625% of the Liquidating Trust Interests. Further, on or before the Effective Date, the Debtors shall pay the reasonable attorneys' fees of the Ad-Hoc Noteholder Group Counsel; *provided,* the payment of fees to the Ad-Hoc Noteholder Group Counsel shall not exceed $700,000.00.

(d)    *Voting:*  Class 7 is Impaired under the Plan. Holders of Class 7 Unsecured Noteholder Claims will be entitled to vote to accept or reject the Plan.

5.8    <u>Class 8: PCP Unsecured Noteholders</u>.

(a)    *Classification:*   Class 8 consists of the Allowed Claims of the PCP Noteholder Claims.

(b)    *Treatment:*   On the Effective Date, each holder of an Allowed PCP Unsecured Noteholder Claim will be entitled to receive, in full and final satisfaction of

such Allowed PCP Unsecured Noteholder Claims, its Pro Rata share of 23.375% of the Liquidating Trust Interests; *provided, however,* the Liquidating Trust Agreement shall include a mechanism for the forfeiture and reallocation of any Liquidating Trust Interests issued on account of any Allowed PCP Noteholder Claims existing on the Effective Date that subsequently become Subordinated Claims or Disallowed Claims.

(c)      *Voting:* Class 8 is Impaired under the Plan. Holders of Class 8 PCP Unsecured Noteholder Claims will be entitled to vote to accept or reject the Plan.

5.9      Class 9: General Unsecured Claims.

(a)      *Classification*: Class 9 consists of all General Unsecured Claims.

(b)      *Treatment*:  Except to the extent that the holder of an Allowed General Unsecured Claim agrees in writing to other treatment, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction and discharge of such Allowed General Unsecured Claim, its Pro Rata share of 5% of the Liquidating Trust Interests; *provided, however,* the Liquidating Trust Agreement shall include a mechanism for the forfeiture and reallocation of any Liquidating Trust Interests issued on account of any Allowed General Unsecured Claims existing of the Effective Date that subsequently become Subordinated Claims or Disallowed Claims.

(c)      *Voting*:  Class 9 is Impaired under the Plan. Holders of Class 9 General Unsecured Claims will be entitled to vote to accept or reject the Plan.

5.10      Class 10: Subordination Claims.

(a)      *Classification*:  Class 10 consists of all Subordinated Claims.

(b)      *Treatment*:      All Subordinated Claims, if any, shall be discharged, cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Allowed Subordinated Claims shall not receive any distribution on account of such Allowed Subordinated Claims.

(c)      *Voting*: Class 10 is Impaired under the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, holders of Class 10 Claims are conclusively presumed to reject this Plan, and the votes of such holders shall not be solicited with respect to Subordinated Claims.

5.11      Class 11: Intercompany Claims.

(a)      *Classification:* Class 11 consists of all Intercompany Claims.

(b)      *Treatment:*      On the Effective Date, each Intercompany Claim shall be canceled and released without any distribution on account of such Intercompany Claim, *provided, however,* after the Effective Date, the PCP/GFL Intercreditor Agreement shall continue to exist and be enforceable by the PCP Credit Bid Purchaser, GFL Credit Bid Purchaser, and/or Successful Bidder (each as an assignee of the same, as applicable) in

27

connection with the PCP Credit Bid Transaction, the GFL Credit Bid Transaction, and/or Alternative Transaction, as applicable.

(c) *Voting*: Class 11 is Impaired under the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, holders of Class 11 Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to Intercompany Claims.

5.12    Class 12: Intercompany Interests.

(a) *Classification*: Class 12 consists of all Intercompany Interests.

(b) *Treatment*: On the Effective Date, all Intercompany Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and such holders of Intercompany Interests shall not receive any distribution on account of such Intercompany Interests.

(c) *Voting*: Class 12 is Impaired under the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, holders of Class 12 Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to Intercompany Interests.

5.13    Class 13: PCAP Interests.

(a) *Classification*: Class 13 consists of the Interests in PCAP.

(b) *Treatment*: On the Effective Date, all Interests in PCAP shall be canceled, released, and extinguished, and will be of no further force or effect, and such holders of Interests in PCAP shall not receive any distribution on account of such Intercompany Interests, provided however, that nothing in this Section 5.13 or the Plan shall interfere with or impair the ability of PCAP (or LNCMJ acting on behalf of PCAP) to assign its interests in the PRE Interest to the First Lien PCP Lenders or their assignee.

(c) *Voting*: Class 13 is Impaired under the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, holders of Class 13 Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to the Interests in PCAP.

**ARTICLE VI.**
**MEANS FOR IMPLEMENTATION**

6.1    General Settlement of Claims and Interests. Pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, releases, and other benefits provided pursuant to this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holders of Claims or Interests may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute

the Bankruptcy Court's approval of the compromise and settlement of all Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims or Interests, and is fair, equitable, and reasonable.

6.2     Restructuring Transactions.

(a)     On or prior to the Effective Date (or as soon as practicable thereafter), the following transactions shall occur in the following order, as the Debtors or the Wind Down Administrator (as applicable) may take all actions necessary or appropriate to effectuate such transactions:

(i)     On or after the Effective Date, the Debtors shall consummate the PCP Credit Bid Transaction and GFL Credit Bid Transaction, or in the event an Alternative Transaction is elected, then the Debtor or Wind Down Estates shall consummate the applicable Alternative Transaction.

(ii)     On or after the Effective Date, the Debtors or the Wind Down Administrator will enter into such Restructuring Transactions and will take such actions as may be necessary or appropriate to merge, dissolve, or otherwise terminate the corporate existence of the Debtors. The actions to effect the Restructuring Transactions may include:  (i) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law, as well as other terms to which these entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms as these entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, continuance, or dissolution or similar instruments with the applicable governmental authorities; and (iv) the taking of all other actions that the Wind Down Administrator determines to be necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

(b)     PCP Credit Bid Transaction.  Subject to the Alternative Transaction Toggle, on the Effective Date, PCP shall consummate the PCP Credit Bid Transaction and the PCP Transferred Assets and related Privileges shall vest in the PCP Credit Bid Purchaser free and clear of all Liens, Claims, charges, or encumbrances pursuant to section 1123 of the Bankruptcy Code and the PCP Credit Bid Transaction Documents; *provided*, that, the conditions precedent set forth in the Definitive Documents shall have been satisfied or waived in accordance with the terms thereof; *provided, further,* all Administrative Claims (including Professional Claims and Independent Manager Claims), DIP Facility Claims, Priority Tax Claims, Other Secured Claims (subject to the Other Secured Claims Cap), Other Priority Claims, and Liquidating Trust Expense Carve-Out shall have been paid, or assumed by the PCP Credit Bid Purchaser. For the avoidance of doubt, the First Lien PCP Lenders are authorized to, in their discretion, credit bid in accordance with section 363(k)

of the Bankruptcy Code and the Bidding Procedures in connection with any auction for the PCP Transferred Assets.

Upon entry of the Confirmation Order, and pursuant to section 10.301 of the Texas Business Organizations Code, all matters provided for under the PCP Credit Bid APA and the other Definitive Documents related to effectuating the PCP Credit Bid Transaction will be deemed authorized and approved without any requirement or further act or action by the Debtors or the Debtors' governing bodies.  PCP is authorized to execute and deliver, and to consummate the transactions contemplated by the PCP Credit Bid Transaction Documents, as well as to execute, deliver, file, record and issue any documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

(c)    GFL Credit Bid Transaction.  Subject to the Alternative Transaction Toggle, on the Effective Date, GFL or the Reorganized GFL shall consummate the GFL Credit Bid Transaction and the GFL Transferred Assets shall vest in the GFL Credit Bid Purchaser free and clear of all Liens, Claims, charges, or encumbrances pursuant to section 1123 of the Bankruptcy Code and the GFL Credit Bid Transaction Documents; *provided*, that, the conditions precedent set forth in the Definitive Documents shall have been satisfied or waived in accordance with the terms thereof; *provided, further,* all Administrative Claims (including Professional Claims and Independent Manager Claims), Priority Tax Claims, Other Secured Claims (subject to the Other Secured Claims Cap), Other Priority Claims, and Liquidating Trust Expense Carve-Out shall have been paid, or assumed by the GFL Credit Bid Purchaser. For the avoidance of doubt, ANB is authorized to, in its discretion, credit bid in accordance with section 363(k) of the Bankruptcy Code and the Bidding Procedures in connection with any auction for the GFL Transferred Assets.

Upon entry of the Confirmation Order, and pursuant to section 10.301 of the Texas Business Organizations Code, all matters provided for under the GFL Credit Bid APA and the other Definitive Documents related to effectuating the GFL Credit Bid Transaction will be deemed authorized and approved without any requirement or further act or action by the Debtors or the Debtors' governing bodies.  GFL is authorized to execute and deliver, and to consummate the transactions contemplated by the GFL Credit Bid Transaction Documents, as well as to execute, deliver, file, record and issue any documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

(d)    Alternative Transaction. In the event an Alternative Transaction is elected, then on the Effective Date, the Debtor utilizing the Alternative Transaction Toggle shall consummate the Alternative Transaction(s) specified in the Alternative Transaction APA(s) submitted pursuant to the Bidding Procedures instead of the PCP Credit Bid Transaction specified in Section 6.2(b) if the Alternative Transaction relates to the PCP Transferred Assets, and instead of the GFL Credit Bid Transaction specified in Section 6.2(c) if the Alternative Transaction relates to the GFL Transferred Assets. Thereafter, the PCP Transferred Assets and/or GFL Transferred Assets, as applicable, shall vest in the

Successful Bidder free and clear of all Liens, Claims, charges, or encumbrances pursuant to section 1123 of the Bankruptcy Code and the Alternative Transaction Documents; *provided*, that, the conditions precedent set forth in the Alternative Transaction APA shall have been satisfied or waived in accordance with the terms thereof.

Upon entry of the Confirmation Order by the Bankruptcy Court, and pursuant to section 10.301 of the Texas Business Organizations Code, all matters provided for under the Alternative Transaction APA and the other Definitive Documents will be deemed authorized and approved without any requirement of further act or action by the Debtor or Wind Down Estates. The Debtor and Wind Down Estates are authorized to execute and deliver, and to consummate the transactions contemplated by the Alternative Transaction Documents, as well as to execute, deliver, file, record and issue any documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

(e)     On or before the Effective Date, the Debtors may, (i) cause any or all of the Debtors to be liquidated or merged into one or more of the other Debtors or any other subsidiaries of the Debtors or dissolved, (ii) cause the transfer of assets between or among the Debtors, (iii) change the name of one or more of the Debtors or Wind Down Estates to such name that may be determined in accordance with applicable law, and (v) engage in any other transaction in furtherance of the Plan. Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by any shareholder, director, manager, member, or general or limited partner of any of the Debtors.

(f)     On or after the Effective Date, the Wind Down Administrator may, in its sole discretion, take such action as permitted by applicable law and organizational documents, as the Wind Down Administrator may determine is reasonable and appropriate, including, without limitation, causing: (i) a Debtor to be merged into another Debtor or an affiliate of a Debtor; (ii) a Debtor to be dissolved; (iii) the legal name of a Debtor to be changed; or (iv) the closure of a Debtor's Chapter 11 bankruptcy case on the Effective Date or any time thereafter.

(g)     On the Effective Date, or as soon as reasonably practicable thereafter, the Wind Down Administrator may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable parties may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having any other terms to which the applicable parties may agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, amendments, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable

31

entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

6.3     Cancellation of Liens. Except as otherwise specifically provided herein (including, without limitation, Section 6.2 of the Plan), upon the occurrence of the Effective Date, any Lien securing any Secured Claim shall be deemed released, and the holder of such Secured Claim  shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Wind Down Administrator, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Wind Down Administrator. Notwithstanding the foregoing, nothing in this Section 6.3, or in this Plan, shall be deemed as a waiver or release of any claims, causes of action, or collateral interests that the holders of Prepetition First Lien PCP Credit Facility Claims may have against any individual or entity that guaranteed the obligations under the Prepetition First Lien PCP Credit Facility.

6.4     Cancellation of Existing Securities and Agreements. Except as expressly provided in the Plan, on the Effective Date, all notes, instruments, and certificates evidencing debt of, or equity interests in, the Debtors, including, without limitation, the Prepetition First Lien PCP Credit Facility (to the extent such facility is not amended and restated), the Prepetition GFL Credit Facility (to the extent such facility is not amended and restated), the PCAP Unsecured Notes, the PCP Unsecured Notes, the PCAP Interests, and all warrants, options, and other entitlements to purchase and/or receive PCAP Interests, shall be deemed surrendered and canceled and any obligation of the Debtor thereafter shall be discharged; *provided, however*, nothing in this Section 6.4 or the Plan shall interfere with or impair the ability of PCAP (or LNCMJ acting on behalf of PCAP) to assign its interests in the PRE Interest to the First Lien PCP Lenders or their assignee, *provided further that*, notwithstanding Confirmation or the occurrence of the Effective Date, the Prepetition First Lien PCP Credit Facility and the PCAP Unsecured Notes Agreements shall continue in effect solely for purposes of enabling holders of Allowed Claims and Interests to receive distributions under the Plan and to carry out the terms and conditions set forth in this Plan.

6.5     Corporate Existence.  On or after the Effective Date, each of the Debtors will be subject to a Restructuring Transaction.  The equity or membership interests of each Debtor entity that is not subject to a Restructuring Transaction on the Effective Date will vest in the Wind Down Estates pursuant to this Plan.  For the avoidance of doubt, the Debtor entities that are not subject to a Restructuring Transaction on the Effective Date will continue to exist after the Effective Date for the limited purpose of completing the transfer of the Liquidating Trust Assets to the Liquidating Trust and the Wind Down Transactions.  Promptly after completing the Wind Down Transactions, such entities shall be dissolved by the Wind Down Administrator.

6.6     Intentionally Omitted.

6.7     Wind Down Estates.

(a)     Vesting of Wind Down Estate Assets in the Wind Down Estate. Except as otherwise provided in the Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date, all Wind Down Estate Assets (including all interests, rights, and privileges related thereto, subject to Section 6.15) in each Estate shall vest in the Wind Down Estate,

to be administered by the Wind Down Administrator in accordance with the Plan, free and clear of all Claims, Liens, and encumbrances to the fullest extent provided by section 363 or 1123 of the Bankruptcy Code; *provided that*, for the avoidance of doubt, no Assets that are, or shall be, transferred pursuant to the PCP Credit Bid Transaction, GFL Credit Bid Transaction, and/or Alternative Transaction shall vest in the Wind Down Estate.

The vesting of the Wind Down Estate Assets, as authorized by the Plan, shall not be construed to destroy or limit any such Asset or right or be construed as a waiver of any right, and such rights may be asserted by the Wind Down Estate as if such Asset or right was still held by the Debtors.

(b)     Wind Down Administrator.   The Wind Down Administrator shall be selected by the Debtors, subject to the prior written consent and approval of the First Lien PCP Lenders and the DIP Lenders.  The Wind Down Administrator shall be the successor to and representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The powers, rights, and responsibilities of the Wind Down Administrator shall include the authority and responsibility to fulfill the obligations of the Plan consistent with the Confirmation Order.

On the Effective Date, the authority, power, and incumbency of the Persons acting as managers, directors, and officers of the Debtor entities comprising the Wind Down Estate shall vest in the Wind Down Administrator.  The Wind Down Administrator shall be appointed the sole manager, sole director, and sole officer of the Debtor entities comprising the Wind Down Estate, as applicable, and shall succeed to the powers of the Debtors' managers, directors, and officers.  From and after the Effective Date, the Wind Down Administrator shall be the sole representative of the Wind Down Estate and shall have the authority to sell, liquidate, or otherwise dispose of any and all of the Wind Down Estate Assets without any additional notice to or approval from the Bankruptcy Court.

In the event the Wind Down Administrator resigns, becomes incapacitated, or unable to continue serving in such role for any reason, the First Lien PCP Lenders shall select a suitable replacement Wind Down Administrator as promptly as possible without the need for any further action or order of the Bankruptcy Court.

(c)     Wind Down Transactions.  The Wind Down Administrator shall retain the authority to take all necessary actions to wind down the operations of the Wind Down Estates and dissolve the entities comprising the Wind Down Estates, to the extent required by applicable law.  Subject in all respects to the terms of this Plan, the Wind Down Administrator shall have the power and authority to take any action necessary to dissolve the entities comprising the Wind Down Estate, and may, subject to the prior written consent and approval of the First Lien PCP Lenders and the DIP Lenders:  (i) file a certificate of dissolution for the Wind Down Estates, together with all other necessary corporate and company documents, to effect the dissolution of the Wind Down Estates under applicable laws; (ii) complete and file all final or otherwise required federal, state, and local tax returns and pay all required taxes, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors, their respective Estates, or the entities comprising the Wind Down Estates for any tax incurred during the

33

administration of the Bankruptcy Case, as determined under applicable tax laws; and (iii) represent the interests of the Debtors, their respective Estates, and entities comprising the Wind Down Estate before any taxing authority in all tax matters, including any action, suit, proceeding, or audit, provided however, that nothing herein shall permit the Wind Down Estates to pay any tax liability or tax expenses owed by Insiders or Affiliates.

Any appropriate, applicable filing by the Wind Down Administrator of any certificates of dissolution (or similar documentation) of the entities comprising the Wind Down Estates shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholder, members, officers, board of directors, or board of managers of the Debtors or any of their respective Affiliates.  As the entities comprising the Wind Down Estates will be dissolved upon completion of the administration of this Plan, no new corporate organizational documents will be executed by the Wind Down Administrator.

For the avoidance of doubt, the Wind Down Administrator shall not be empowered to perform any actions designated to the Liquidating Trust or the Liquidating Trustee under the Plan or the Liquidating Trust Agreement.

(d)     Fees and Expenses of the Wind Down Administrator. The Wind Down Estate Expenses shall be paid after the Effective Date solely using the Post-Sale Reserve. The Wind Down Administrator, on behalf of the Wind Down Estate, may employ, without further order of the Bankruptcy Court, professionals (including professionals previously employed by the Debtors) to assist in carrying out duties for the Wind Down Estate and may compensate and reimburse the expenses of such professionals in the ordinary course, without further order of the Bankruptcy Court, subject to the Post-Sale Reserve.

(e)     Settlement of Claims.  Except as otherwise provided in the Plan, on and after the Effective Date, the Wind Down Administrator, with the consent of the First Lien PCP Lenders and the DIP Lenders, may compromise or settle any Claims related to the Wind Down Estate Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the charges that it incurs on or after the Effective Date for Wind Down Estate Expenses, professionals' fees, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

(f)     Sales of Assets by the Wind Down Estate. The Wind Down Administrator may conduct any sales or liquidations of De Minimis Assets on any terms it deems reasonable, subject to the consent of the First Lien PCP Lenders and the DIP Lenders (with such consent not to be unreasonably withheld), without further order of the Bankruptcy Court.  In lieu of conducting sales or liquidating its assets, with the consent of the First Lien PCP Lenders and/or DIP Lenders, as applicable, the Wind Down Administrator may transfer any Wind Down Estate Assets to the First Lien PCP Lenders and/or DIP Lenders, as applicable, free and clear of all liens, claims, and encumbrances after the Effective Date.

(g)    Abandonment of Assets by the Wind Down Estate.  The Wind Down Administrator may, with the consent of the First Lien PCP Lenders and the DIP Lenders, on no less than 14 days' written notice to the U.S. Trustee, abandon any Wind Down Estate Assets which the Wind Down Administrator determines are burdensome to the Wind Down Estate, including any pending adversary proceeding or other legal action commenced or commenceable by any Debtor prior to the Effective Date; *provided that* if the U.S. Trustee provides a written objection to the Wind Down Administrator prior to the expiration of such 14 day period with respect to the proposed abandonment of any Wind Down Estate Asset, then such property may be abandoned only pursuant to an order by the Bankruptcy Court.

6.8    Withholding and Reporting Requirements. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtors and Wind Down Estates shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Allowed Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Authority, including income, withholding, and other tax obligations, on account of such distribution. The Debtors and the Wind Down Administrator have the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations. The Debtors and the Wind Down Administrator may require, as a condition to receipt of a distribution, that the holder of an Allowed Claim or Interest complete and return a Form W-8 or W-9, as applicable to each such holder. If a Debtor or Wind Down Administrator makes such a request and the holder fails to comply within a reasonable time after the request is made, the amount of such distribution shall be subject to withholding at the highest applicable rate. Such holder agrees that if any form or certification it previously delivered expires or becomes obsolete or inaccurate in any respect, it shall update its W-8 or W-9, as applicable.

6.9    Exemption from Certain Transfer Taxes.  Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer, or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust, or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in the Plan (whether to one or more of the Wind Down Estates or otherwise), and (d) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or Governmental Authority in which any instrument hereunder is to be recorded shall, pursuant to

35

the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

6.10   Liquidating Trust

(a)   Creation of Liquidating Trust.   On or before the Effective Date, the Liquidating Trust shall be formed pursuant to this Plan, the Liquidating Trust Agreement (which, for the avoidance of doubt, shall be considered a Plan Document) shall be executed by the Debtors and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries.

(b)   Purpose of Liquidating Trust.   The Liquidating Trust shall be established to administer certain post-Effective Date responsibilities under the Plan for the benefit of holders of Liquidating Trust Interests, for the purposes of (i) reviewing, reconciling, allowing, objecting to, and resolving all Disputed Claims, (ii) making Distributions to holders of Liquidating Trust Interests, (iii) maintaining the Disputed Claims Reserve, and (iv) otherwise administering the Liquidating Trust Assets.   Solely in connection with the commencement, prosecution, pursuit, or settlement of the Liquidating Trust Causes of Action and BVY-2 Related Assets, the Liquidating Trust shall hold and stand in the same position as the Debtors, their Estates, and the Committee as to the Privileges, shall have all of the rights of the Debtors, their Estates, and the Committee to preserve and assert any such Privileges, and shall be deemed to be an assignee by each Debtors and its respective Estate and the Committee of each such Privilege, all of which shall vest in the Liquidating Trust as of the Effective Date. The Liquidating Trust shall have no objective to continue or engage in the conduct of a trade or business.

(c)   Conflicts Between Liquidating Trust Agreement and Plan.   In the event of any inconsistencies or conflicts between the Liquidating Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

(d)   Vesting of Liquidating Trust Assets in Liquidating Trust.   On the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all rights, titles, and interests in and to the Liquidating Trust Assets and, in accordance with section 1141 of the Bankruptcy Code, the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims, Interests, Liens, other encumbrances or interests of any kind.   Such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Liquidating Trust Expenses shall be paid out of the Liquidating Trust Assets, subject to the terms of the Liquidating Trust Agreement.

The vesting of the Liquidating Trust Assets, as authorized by the Plan, shall not be construed to destroy or limit any such Asset or gith or be construed as a waiver of any right, and such rights may be asserted by the Liquidating Trust as if such Asset or right was still held by the Debtors.

(e)    Plan is Motion to Transfer Liquidating Trust Assets. This Plan shall be considered a motion pursuant to Bankruptcy Code §§ 105, 363, and 365 to transfer and assign to the Liquidating Trust Free and Clear, but subject to the Liquidating Trust's obligations under the Plan, any and all Liquidating Trust Assets as of the Effective Date, with all benefits to the Estates under such sections of the Bankruptcy Code.  Any objections to such transfer and assignment must be made as an objection to Confirmation of this Plan to be heard at the Confirmation Hearing.

After the Effective Date, the Liquidating Trustee may present such Order(s) or assignment(s) to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where the Liquidating Trust Assets are or were located, which provide that such property is conveyed to the Liquidating Trust.  The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned. This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by this Plan, shall be given prior to the presentation of such Order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any Liquidating Trust Assets shall be conclusively deemed to have consented to the transfer and assignment of such Liquidating Trust Assets Free and Clear to the Liquidating Trust by failing to object to confirmation of this Plan, except as otherwise provided in this Plan.

(f)    Liquidating Trustee. The Liquidating Trustee is to be set forth in the Liquidating Trust Agreement. The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date. The Liquidating Trustee shall retain and have all rights, powers and duties necessary to carry out his responsibilities under this Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall have the rights and powers of the Debtors as debtors-in-possession under section 1107 of the Bankruptcy Code to (i) hold, manage, and distribute to holders Liquidating Trust Interests the Liquidating Trust Assets, (ii) hold the Liquidating Trust Assets for the benefit of holders of Liquidating Trust Interests, (iii) review, reconcile, allow, prosecute, and resolve objections to Distributed Claims, (iv) maintain and administer the Disputed Claims Reserve, and (v) perform such other functions as are provided in the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and Liquidating Trust Assets. The Liquidating Trustee shall be entitled to reasonable compensation, subject to the terms of the Liquidating Trust Agreement. The Liquidating Trustee shall be deemed to be a judicial substitute for each of the Debtors as the party-in-interest in these Chapter 11 Cases, or in any judicial proceeding or appeal to which the Debtors are a party, solely with respect to the purposes of the Liquidating Trust set forth in the Plan or Liquidating Trust Agreement, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, and is appointed as the representative of the Estates solely for the purposes set forth in Section 6.10(b) of the Plan.  The Liquidating Trustee shall have the right to object to Claims in Classes 6-10  on any and all grounds that the Debtors

would have to object to such Claims and shall be the representative of the Estates with respect to such objections. Matters relating to the appointment, removal and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee shall be set forth in the Liquidating Trust Agreement, provided that the Liquidating Trust Agreement shall authorize the Liquidating Trust Board, in its sole discretion, to remove the Liquidating Trustee at any time. The Liquidating Trustee shall be required to perform his or her duties as set forth in this Plan and the Liquidating Trust Agreement.

(g)     Issuance of Liquidating Trust Interests. It is an integral and essential element of this Plan that the offer and issuance of Liquidating Trust Interests pursuant to this Plan, to the extent such Liquidating Trust Interests constitute securities under the 1933 Act, shall be exempt from registration under the 1933 Act and any State or local law, pursuant to Bankruptcy Code § 1145 or other applicable exemptions, without limitation. The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Cases, the Debtors, the Liquidating Trustee, the U.S. Securities and Exchange Commission and all other federal, state and local regulatory enforcement agencies, to the effect that the Liquidating Trustee is a successor to the Debtors under this Plan pursuant to Bankruptcy Code § 1145, that the offer of the Liquidating Trust Interests is occurring pursuant to this Plan, that the offer of the Liquidating Trust Interests is in exchange for a Claim against, or an Interest in, the Debtors, and that such offer and issuance, to the extent such Liquidating Trust Interests constitute securities under the 1933 Act, fall within the exemption from registration under the 1933 Act and any state or local law pursuant to Bankruptcy Code § 1145. In lieu of certificates evidencing the Liquidating Trust Interests, the Liquidating Trustee shall maintain a register of the names, addresses, and interest percentages of the holders of the Liquidating Trust Interests based upon the provisions of this Plan which designate the Persons who are entitled to receive the beneficial interests in the Liquidating Trust.

(h)     Retention of Professionals. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that are necessary to assist the Liquidating Trustee in the performance of his or her duties. Subject to the Liquidating Trust Agreement, the reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust from the Liquidating Trust Assets. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business from the Liquidating Trust Assets, and shall not be subject to the approval of the Bankruptcy Court. Professionals of the Committee shall be eligible for retention by the Liquidating Trustee, and former employees of the Debtors shall be eligible for retention by the Liquidating Trust and Liquidating Trustee.

(i)     Liquidating Trust Expense Reserve. On the Effective Date, the Liquidating Trustee shall deposit the Liquidating Trust Expense Carveout into the Liquidating Trust Expense Reserve. The funds constituting the Liquidating Trust Expense Reserve are to be used by the Liquidating Trustee solely to satisfy the expenses of the Liquidating Trust and the Liquidating Trustee as set forth in the Plan; *provided, however,* that all costs and expenses associated with the winding up of the Liquidating Trust and the storage of records and documents shall constitute expenses of the Liquidating Trust and shall be paid from the funds held in the Liquidating Trust

Expense Reserve.  In no event shall the Liquidating Trustee be required or permitted to use his or her personal funds or assets for such purposes.

(j)    <u>Liquidating Trust Expenses</u>. Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan pursuant to the provisions of this <u>Section 6.10</u>, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from the Liquidating Trust thereunder (including the reimbursement of reasonable expenses) shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee. Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval. In addition to other relevant provisions, the Liquidating Trust Agreement shall provide that (i) all holders of Liquidating Trust Interests shall have the right to participate in the initial funding of the Liquidating Trust, with participating Liquidating Trust Interest holders to receive, among other things, preferential treatment with priority over Liquidating Trust Interests owned by non-participating Liquidating Trust Interests holders (the "Liquidating Trust Initial Funding Option"), and (ii) except for the Liquidating Trust Expense Carve-Out, the Liquidating Trust shall not be funded by third parties until the holders of Liquidating Trust Interests have declined to participate in the Liquidating Trust Initial Funding Option.

(k)    <u>U.S. Federal Income Tax Treatment of Liquidating Trust</u>.

(i)    The Liquidating Trust, duly organized under the laws of the State of Texas, is created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making the Distributions to certain holders of Allowed Claims. The Liquidating Trust Beneficiaries, who will be treated as grantors and deemed owners for federal income tax purposes, are the holders of Liquidating Trust Interests. The Liquidating Trust shall file federal income tax returns for the Liquidating Trust as a grantor trust pursuant to Section 671 of the Internal Revenue Code of 1986, as amended, and the Treasury Tax Regulations promulgated thereunder. The parties shall not take any position on their respective tax returns with respect to any other matter related to taxes that is inconsistent with treating the Liquidating Trust as a "Liquidating Trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance from the Internal Revenue Service.

(ii)    For all federal and applicable state and local income tax purposes, all Persons (including without limitation the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will treat the transfers and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries as (a) a transfer of the Liquidating Trust Assets directly to the Liquidating Trust Beneficiaries followed by (b) the transfer of the Liquidating Trust Assets by the Liquidating Trust Beneficiaries to the Liquidating Trust. The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Liquidating Trust Beneficiaries will be treated as the grantors and deemed owners of their allocable portion of the Liquidating Trust Assets for federal income

39

tax purposes.

The fair market value of the portion of the Liquidating Trust Assets that is treated for U.S. federal income tax purposes as having been transferred to each Liquidating Trust Beneficiary will be determined by the Liquidating Trustee, and all parties (including, without limitation, the Liquidating Trustee and the Liquidating Trust Beneficiaries) must utilize such fair market values determined by the Liquidating Trustee for federal and applicable state and local income tax purposes.

The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidating Trust Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust during the applicable taxable period. Such allocation will be binding on all parties for federal and applicable state and local income tax purposes, and the parties will responsible for the payment of any federal, state and local income tax due on the income and gain so allocated to them.

(l)    Liability, Indemnification of Liquidating Trustee. The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

(m)    Termination. The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets, including Causes of Action transferred and assigned to the Liquidating Trust, are fully resolved, abandoned or liquidated and the Cash and other amounts held in reserve have been distributed in accordance with this Plan and the Liquidating Trust Agreement. Except in circumstances set forth below, the Liquidating Trust shall terminate no later than five (5) years after the Effective Date. However, if warranted by the facts and circumstance provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Liquidating Trust, the terms of the Liquidating Trust may be extended one or more times (not to exceed a total of five extensions, unless the

40

Liquidating Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue. Each such extension must be approved by the Bankruptcy Court with notice thereof to all of the unpaid beneficiaries of the Liquidating Trust. Upon the occurrence of the termination of the Liquidating Trust, the Liquidating Trustee shall file with the Bankruptcy Court a report thereof, seeking an order discharging the Liquidating Trustee.

(n)     Copies of Books and Records. Within ten (10) Business Days of the Effective Date, the Debtors or the Wind Down Administrator (as applicable) shall transfer or cause to be transferred copies of all books and records of the Debtors (whether or not they existed prior to or after the Petition Date) as well as any and all email and document retention systems to the Liquidating Trust. The Debtors and the Wind Down Administrator shall not be permitted to destroy or otherwise abandon any documents relevant to the Liquidating Trust Assets without the Ad-Hoc Noteholder Group and the Committee's consent prior to the Effective Date or the Liquidating Trustee's consent from and after the Effective Date; *provided,* the reasonable costs related to transfer and preservation of such documents shall be an expense of the Liquidating Trust and shall be paid by the Liquidating Trust upon presentment of such invoice; *provided, further* the provisions of this section shall be subject to the provisions of Section 6.15.

(o)     BVY2-Related Assets. Notwithstanding anything to the contrary in the Plan or the Liquidating Trust Agreement, the proceeds or value derived from the BVY2-Related Assets shall be distributed (x) sixty percent (60%) Pro Rata to the First Lien PCP Lenders, and (y) forty percent (40%) Pro Rata to the Liquidating Trust to be further distributed by the Liquidating Trustee to holders of Liquidating Trust Interests that hold Liquidating Trust Interests on account of Allowed PCAP Unsecured Noteholder Claims or Allowed PCP Unsecured Noteholder Claims.

6.11     Committee and Liquidating Trust Board.

(a)     Dissolution of Committee.  The Committee shall continue in existence through the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code.  Unless otherwise ordered by the Bankruptcy Court, on the Effective Date, (a) the Committee shall be dissolved and their members shall be released of all their duties, responsibilities and obligations in connection with the Cases, this Plan and the implementation of the same and (b) the retention or employment of the Committee's Professionals and other agents shall terminate.

(b)     Creation of Liquidating Trust Board.

(i)     The Liquidating Trust Board shall consist of three members. One member of the Liquidating Trust Board shall be appointed by each of the (1) Ad-Hoc Noteholder Group, (2) the Committee, and (3) the DIP Agent.

If a member of the Liquidating Trust Board resigns or is otherwise removed, a

replacement Liquidating Trust Board member, as identified in the Plan Supplement, shall be appointed with the mutual consent of the Ad-Hoc Noteholder Group, the Committee, and DIP Agent.

(c)     Procedures.  The Liquidating Trust Board shall adopt bylaws to provide for the governance of the Liquidating Trust. For the avoidance of doubt, the Liquidating Trust Agreement and the bylaws adopted by the Liquidating Trust Board shall provide that the PCAP Unsecured Noteholders shall control the governance and decision-making of the Liquidating Trust.

(d)     Function, Duties, and Responsibilities. The function, duties, and responsibilities of the Liquidating Trust Board shall be set forth in the Liquidating Trust Agreement.

(e)     Duration. The Liquidating Trust Board shall remain in existence until the Liquidating Trust is terminated in accordance with Section 6.10(m) of this Plan.

(f)     Compensation and Expenses. The members of the Liquidating Trust Board shall be entitled to receive reasonable compensation for services rendered in their capacities as members of the Liquidating Trust Board, as well as reimbursement of reasonable expenses by the Liquidating Trust, provided, that, any such reimbursement of reasonable expenses pursuant to this Section 8.6 shall not include fees or compensation of an individual member's attorneys or other professionals.  Such compensation and reimbursement shall be paid from the Liquidating Trust without further order of the Bankruptcy Court.

(g)     Liability; Indemnification. Neither the Liquidating Trust Board, nor any of its members, or designees, nor any duly designated agent or representative of the Liquidating Trust Board, or their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of the Liquidating Trust Board, nor shall any member of the Liquidating Trust Board be liable for any act or omission taken or omitted to be taken in its capacity as a member of the Liquidating Trust Board, other than acts or omissions resulting from such member's willful misconduct, gross negligence or fraud. The Liquidating Trust Board may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, and its agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.   Notwithstanding such authority, the Liquidating Trust Board shall be under no obligation to consult with attorneys, accountants or its agents, and its determination to not do so shall not result in the imposition of liability on the Liquidating Trust Board, or its members and/or designees, unless such determination is based on willful misconduct, gross negligence or fraud.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Committee and its members, designees, and Professionals, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions  or  omissions,  or  consequences  of  such

actions or omissions with respect to the Liquidating Trust or the implementation or administration of this Plan; *provided, however*, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

(h)     First Lien PCP Lenders Access to Information: The Liquidating Trustee or Liquidating Trust Board shall provide regular updates to the First Lien PCP Lenders regarding the status of any litigation commenced on behalf of the Liquidating Trust and on the collection efforts related to any Liquidating Trust Assets.

6.12    Corporate Governance, Directors and Officers.

(a)     Certificates of Formation, Partnership Agreements, and Operating Agreements. Consistent with the Plan, all existing certificates of formation, partnership agreements, and operating agreements will be canceled; accordingly, no new certificates of formation, partnership agreements, and operating agreements will be necessary for any Debtors. Certain of the Debtor entities comprising the Wind Down Estate will continue to exist after the Effective Date for the purpose of completing the transfer of the Liquidating Trust Assets to the Liquidating Trust Agreement, effectuating any transfers or provisions of any Definitive Documents related to the PCP Credit Bid Transaction, GFL Credit Bid Transaction, or Alternative Transaction, including the provisions of any transition services agreement related to such transactions.

(b)     Directors and Officers. As of the Effective Date, the term of the current members of the boards of managers of LNCMJ Management, LLC shall expire automatically and each person serving as a manager of LNCMJ Management, LLC shall be removed and shall be deemed to have resigned and cease to serve automatically. Consistent with the Plan, each of the Estates will vest in the Wind Down Estate effective as of the Effective Date and, thus, no individuals will serve as directors, managers, officers, or voting trustees after the Effective Date for any Debtors. The Wind Down Administrator will be the sole member, manager, director, officer, or other governing body or controlling authority of each Debtor entity that is not subject to a Restructuring Transaction on the Effective Date; *provided*, that the Independent Manager shall retain authority following the Effective Date with respect to matters relating to Professional Claim requests by Professionals acting at his authority and direction in accordance with the terms of the Plan. The Independent Manager, shall not have any of the Independent Manager's privileged and confidential documents, communications, or information transferred (or deemed transferred) to the Wind Down Estates, the Liquidating Trust, or any other Person or Entity without the Independent Manager's prior written consent.

6.13    Preservation of Non-Released Causes of Action. Unless expressly provided otherwise by this Plan or by an Order of the Bankruptcy Court, any and all Non-Released Causes of Action are specifically preserved notwithstanding the occurrence of the Effective Date, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, Avoidance Actions, fraudulent transfer actions, strong-arm power

actions, state law fraudulent transfer actions, improper assignment of interest, assumpsit for money had and received, unjust enrichment, quantum meruit, breach of contract, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, breach of fiduciary duty, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.

Unless expressly provided otherwise by this Plan or by an Order of the Bankruptcy Court, the Liquidating Trust may hold, commence, prosecute, or settle claims against a holder of a Claim or Interest, including but not limited, the following claims and Causes of Action (other than Purchaser Causes of Action), all of which shall constitute Non-Released Causes of Action and shall be preserved:

- Any discharge or dischargeability causes of action under sections 523 or 727 of the Bankruptcy Code related to any Claim or Cause of Action reserved and preserved under the Plan and this Disclosures Statement; and

- Claims, Counterclaims, and Causes of Action asserted in current litigation, whether commenced pre- or post-petition, including but not limited the claims and counterclaims asserted in the matters disclosed in the Debtor's Statements of Financial Affairs filed in the Bankruptcy Case and listed herein.

The Liquidating Trust may pursue the Liquidating Trust Causes of Action and the Purchaser may pursue the Purchaser Causes of Action. No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that any Non-Released Causes of Action will not be pursued against it. The Liquidating Trust and Purchaser expressly reserve all rights to prosecute any and all Non-Released Causes of Action (other than Purchaser Causes of Action) against any Person or Entity. Unless any Causes of Action of the Debtors against a Person or Entity is expressly waived, relinquished, exculpated, released, compromised, transferred, or settled in the Plan or an Order of the Bankruptcy Court, the Liquidating Trust and Purchaser each expressly reserve all Liquidating Trust Causes of Action and all Purchaser Causes of Action, respectively, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Liquidating Trust Causes of Action or Purchaser Causes of Action upon, after, or as a consequence of the Confirmation. The Liquidating Trust and Purchaser respectively reserve and shall retain such Liquidating Causes of Action and Purchaser Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract

during the chapter 11 cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to an Order of the Bankruptcy Court, all Non-Released Causes of Action that a Debtor may hold against any Person or Entity (other than Purchaser Causes of Action) shall vest in the Liquidating Trust, except as otherwise expressly provided in the Plan. The Liquidating Trustee or the Purchaser (as applicable) and/or each of their authorized agents or representatives (or any subsequent assignee), shall respectively retain and may exclusively enforce any and all such Liquidating Trust Causes of Action and Purchaser Causes of Action, respectively, and shall have respectively, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Liquidating Trust Causes of Action and Purchaser Causes of Action, to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, Order, or approval of the Bankruptcy Court, except as noted otherwise within this Plan.

6.14    <u>Cooperating Parties</u>. Upon a Person's or Entity's execution of a Cooperation Agreement, that Person or Entity shall become a Cooperating Party and, for as long as such Cooperating Party remains in compliance with its Cooperation Agreement, such Cooperating Party shall not be treated as a Non-Released Party under the Plan. The Liquidating Trust shall not pursue a Cooperating Party on account of any Non-Released Causes of Action, unless and until such Cooperating Party is or becomes a Non-Released Party. In the event that any Cooperating Party fails (as reasonably determined by the Liquidating Trustee) to substantially adhere to the terms of a Cooperation Agreement, the Liquidating Trustee shall provide a written notice to the Cooperating Party of any alleged default under the respective Cooperation Agreement. Upon receipt of such notice, the Cooperating Party shall have seven (7) days to cure its alleged default. In the event the Cooperating Party does not cure its alleged default, the Liquidating Trustee may file a Cooperation Default Notice requesting entry of an order causing the defaulting Cooperating Party to once again become a Non-Released Party. The Cooperating Party will then have ten (10) Business Days from the filing of a Cooperation Default Notice to object to such Cooperation Default Notice. After notice and a hearing, if the Bankruptcy Court enters an order providing the Cooperating Party did not substantially adhere to the terms of its respective Cooperation Agreement, then such Cooperating Party shall once again become a Non-Released Party, and the Liquidating Trustee shall be entitled to pursue any and all Liquidating Trust Causes of Action against such Non-Released Party. There is no obligation for the Cooperating Parties to incur out of pocket expenses while objecting to any Cooperation Default Notice and under any Bankruptcy Court proceedings involving such Cooperation Default Notice.

6.15    <u>Preservation of Confidence and Attorney Client Privilege</u>.  Except as expressly stated otherwise herein, the Wind Down Estates shall stand in the same position as the Debtors and their Estates as to the Privileges belonging to the Debtors, shall have all of the rights of the Debtors and their Estates to preserve and assert any such Privileges, and shall be deemed to be an assignee by each Debtor and its respective Estate of each such Privilege as of the Effective Date; *provided,* that, solely in connection with the commencement, prosecution, pursuit, or settlement of the Liquidating Trust Causes of Action and BVY2-Related Assets, the Liquidating Trust shall hold and stand in the same position as the Debtors, their Estates, and the Committee as to Privileges belonging to the Debtors as set forth in <u>Section 6.10(b)</u> of the Plan; *provided*, *further* that notwithstanding the foregoing, privilege of the Independent Manager is hereby recognized and

45

shall remain in full force and effect and shall not be waived, nor shall any of his Privileges, including privileged and confidential documents, communications, or information be transferred (or deemed transferred) to the Wind Down Estates, the Liquidating Trust, or any other Person or Entity without the prior written consent of the Independent Manager. The Independent Manager shall produce to Liquidating Trust, on or as soon as reasonably practicable after the Effective Date: (i) all interview memoranda regarding the interviews conducted in the Independent Investigation; (ii) a list of all interviews requested in the Independent Investigation; and (iii) all documents produced to the Independent Manager by the Debtors and/or any third parties. The Independent Manager's agreement to produce these materials does not constitute a waiver of any Privileges or work product protections that might exist, and will not be used by any party, including the Liquidating Trust and Liquidating Trustee, to argue that such a waiver has occurred. The Independent Manager will discuss in good faith whether to produce any additional factual documentation or information related to the Independent Investigation, which shall not include any legal analysis, privileged communications, legal memoranda, or research.

6.16    Cooperation with the Liquidating Trust. Subject to the limitations of Section 6.15, on or as soon as reasonably practicable following the Effective Date, at the sole cost of the Wind Down Estates: (i) the Wind Down Administrator and the Committee (prior to the Committee's dissolution on the Effective Date) shall deliver or cause to be delivered to the Liquidating Trust any and all books and records and all other documents and communications, or copies of the same, related to the Liquidating Trust Causes of Action and; (ii) the Wind Down Administrator, on behalf of the Wind Down Trust, shall use commercially reasonable efforts to provide reasonable and continuing access to such officers, directors and employees of the Debtors and their agents, advisors, attorneys, accountants or any other professionals with knowledge of matters relevant to the Liquidating Trust Causes of Action (including any former officers, directors, employees, agents, advisors, attorneys, accountants, or other professionals who owe a continuing duty of cooperation to the Debtors or Wind Down Estates whether or not they are Cooperating Parties); and (iii) the Wind Down Administrator shall promptly following receipt of a reasonable request from the Liquidating Trustee, use commercially reasonable efforts to, (a) take, or cause to be taken, all such reasonable further actions, and execute and/or deliver all such additional instruments, agreements or documents, as the Liquidating Trustee may request in order to evidence or effectuate the transfer of the Liquidating Trust Assets to the Liquidating Trust and the consummations of the transactions contemplated by this Plan; and (b) cooperate with the Liquidating Trustee in connection with the commencement, prosecution, pursuit, or settlement of the Liquidating Trust Causes of Action and BVY2-Related Assets and the fulfilment of the Liquidating Trustee's duties.

## ARTICLE VII.
## CONDITIONS OF EFFECTIVE DATE

7.1    Conditions Precedent to the Effective Date.  The occurrence of the Effective Date is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered in the Confirmation Order in form and substance reasonably acceptable to the Debtors, and, solely with respect to the definition of "Released Parties," the consent of the Consenting Plan Parties, and the Confirmation Order shall not (a) have been reversed or vacated, (b) be subject to a then-effective stay, or (c) have been modified or

amended without the consent of the First Lien PCP Lenders, the Ad-Hoc Noteholder Group, and the Committee; and

(b)     the Definitive Documents shall contain terms, conditions, representations, warranties, and covenants, each customary for the transactions described herein, and otherwise in form and substance reasonably acceptable to the Debtors, the First Lien PCP Lenders, the Ad-Hoc Noteholder Group, and the Committee.

7.2     <u>Waiver of Conditions Precedent</u>.  Each of the conditions precedent in <u>Section 7.1</u> may be waived in writing by the Debtors with the prior written consent of the First Lien PCP Lenders, the Committee, and the Ad-Hoc Noteholder Group, which consent shall not be unreasonably withheld.

**ARTICLE VIII.**
**EXECUTORY CONTRACTS AND LEASES**

8.1     <u>General Treatment</u>.  All executory contracts and unexpired leases to which any of the Debtors are parties are hereby rejected except for an executory contract or unexpired lease that (a) previously has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (b) is specifically designated as a contract or lease to be assumed on the Schedule of Assumed Contracts and Leases (which includes the , or (c) is the subject of a separate motion to assume or reject such contract or lease filed by the Debtors under section 365 of the Bankruptcy Code before the Effective Date.

8.2     <u>Payments Related to Assumption of Contracts and Leases</u>.

(a)     Any monetary amounts by which any executory contract and unexpired lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors upon assumption thereof. Any objection by a counterparty to a proposed assumption of an executory contract or unexpired lease or amount of any Cure must be filed, served and actually received by the Debtors on or before thirty (30) days after the Effective Date of the Plan applicable to the Debtor that is the counterparty to the executory contract or unexpired lease. Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption and assignment of such executory contract or unexpired lease or to the amount of such Cure will be deemed to have assented to such matters and shall be forever barred, estopped and enjoined from asserting such objection against the Debtors. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, resolution of the Cure amount shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; *provided*, that the Debtors or the Wind Down Estates, as applicable, may settle any dispute regarding the nature or amount of Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court. If there is a dispute as referred to above, the Debtors reserve the right to reject or

47

nullify the assumption or assignment of any executory contract or unexpired lease no later than thirty (30) days after a Final Order determining the Cure, any request for adequate assurance of future performance required to assume and assign such executory contract or unexpired lease, or any other matter pertaining to assumption and/or assignment.

(b)      Assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of assumption and/or assignment. Any proofs of claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court or any other entity.

8.3      Rejection Claims. In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or the Wind Down Estates, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Wind Down Estates no later than thirty (30) days after the later of (a) the Confirmation Date and (b) the effective date of rejection of such executory contract or unexpired lease. Any such Claims, to the extent Allowed, shall be classified as Class 9 General Unsecured Claims.

8.4      Debtors' Indemnification Obligations. No obligations of the Debtors pursuant to corporate charters, bylaws, limited liability company agreements, or other organizational documents to indemnify current and former officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, or employees, based upon any act or omission for or on behalf of the Debtors may be assumed under the Plan. Notwithstanding the foregoing, the obligations of the Debtors to indemnify the Independent Manager, including the obligations under the LNCMJ Operating Agreement and that certain Independent Director Agreement with the Independent Manager, are unaffected by this Section 8.4, and shall be assumed by the Wind Down Estates.

8.5      Employment Arrangements. Subject to Section 8.5(b) of the Plan, all Employment Arrangements shall be treated as executory contracts under the Plan and, on the Effective Date, shall be assumed by the Debtors, as may be amended, pursuant to sections 365 and 1123 of the Bankruptcy Code.

8.6      Insurance Contracts. Notwithstanding anything to the contrary in the Plan, any Definitive Document, or any other order of the Bankruptcy Court:

(a)      All insurance policies pursuant to which the Debtors have any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the respective Debtors and Wind Down

48

Estates and shall continue in full force and effect. All other insurance policies shall vest in the Wind Down Estates.

(b)    To the extent the Debtors plan to extend existing insurance coverage or purchase new insurance coverage covering its current and former officers, directors, members, managers and partners from claims and Causes of Action of any third party (including without limitation any holder of a claim) that remain unreleased as of the Effective Date, such extended or newly purchased insurance shall be in such amounts, for such terms or periods of time, and placed with such insurers as determined by the Debtors.

8.7    Reservation of Rights.

(a)    Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtors or the Wind Down Estates or their respective Affiliates have any liability thereunder.

(b)    Except as explicitly provided in the Plan, nothing herein will waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors and the Wind Down Estates under any executory or non-executory contract or any unexpired or expired lease.

(c)    Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Wind Down Estates under any executory or non-executory contract or any unexpired or expired lease.

(d)    If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Wind Down Estates, as applicable, shall have thirty (30) days after entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE IX.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

9.1    Allowance of Claims. On or after the Effective Date, the Wind Down Estates, the Liquidating Trust, or the Liquidating Trustee (as applicable) shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim immediately prior to the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim. All settlements of Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019, or otherwise shall be binding on all parties.

9.2    <u>Claims and Interests Administration Responsibilities</u>. Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Wind Down Estates, the Liquidating Trust, or the Liquidating Trustee (as applicable), by order of the Bankruptcy Court, shall together have the sole authority to: (1) File, withdraw, or litigate to judgment objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced.

9.3    <u>Adjustment to Claims or Interests Without Objection</u>. Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register without the Wind Down Estates, the Liquidating Trust, or the Liquidating Trustee (as applicable) having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

9.4    <u>Time to File Objections to Claims</u>. Any objections to Claims, which, prior to the Effective Date, may be Filed by any party, shall be Filed on or before the Claims Objection Deadline.

9.5    <u>Disallowance of Claims</u>. Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or that are transferees of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to Section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action (other than Causes of Action that constitute a Transferred Asset under the Purchase Agreement) against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Wind Down Estates (as applicable).

**ANY CLAIM THAT HAS BEEN LISTED IN THE SCHEDULES AS DISPUTED, CONTINGENT, OR UNLIQUIDATED, AND FOR WHICH NO PROOF OF CLAIM HAS BEEN TIMELY FILED, SHALL BE DEEMED DISALLOWED AND SHALL BE EXPUNGED WITHOUT FURTHER ACTION AND WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE BANKRUPTCY COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON**

**ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

9.6     <u>Amendments to Claims</u>. On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

9.7     <u>No Distributions Pending Allowance</u>. Notwithstanding any other provision of this Plan to the contrary, no payment or distribution of any kind or nature provided under the Plan shall be made to the extent that all or any portion of any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as set forth in this Article IX, unless and until such Disputed Claim becomes an Allowed Claim; *provided that* any portion of a Claim that is an Allowed Claim shall receive the payment or distribution provided under the Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

9.8     <u>Disputed Claims Reserve</u>.   On the Effective Date, the Liquidating Trustee shall establish the Disputed Claims Reserve. Subject to <u>Section 6.10(b)</u> of the Plan, Cash in the amount that would be distributable from the Liquidating Trust Assets on account of any Disputed Claims had such Disputed Claim been Allowed on the Effective Date, together with all earnings thereon (net of any taxes imposed thereon or otherwise payable by the Disputed Claims Reserve), shall be retained by the Liquidating Trust.

9.9     <u>Single Satisfaction of Claims</u>. Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100% of such Allowed Claim.

**ARTICLE X.**
**<u>DISTRIBUTION PROCEDURES</u>**

10.1     <u>Distributions Generally</u>.   One or more Disbursing Agents shall make all Distributions to the appropriate holders of Allowed Claims in accordance with the terms of this Plan.

10.2     <u>Record Date for Claims</u>.  The record date for Distributions to Allowed Claims under the Plan shall be the date the Bankruptcy Court enters its Order approving the Disclosure Statement.  For purposes of Distribution to holders of Allowed Claims, the Disbursing Agents will rely on the Claims Register maintained by the Bankruptcy Court except to the extent a notice of transfer of Claim has been Filed with the Bankruptcy Court prior to the record date pursuant to Bankruptcy Rule 3001.

10.3     <u>Form of Distributions</u>.  Any Cash payment to be made pursuant to the Plan may be made by check or wire transfer, at the option of the applicable Disbursing Agent.

10.4    Conditions to Distributions; Warranty of Entitlement.  Each and every Creditor who receives and accepts a Distribution under the Plan on account of an Allowed Claim is deemed to have warranted to the Disbursing Agent making such Distribution that such Creditor is the lawful holder of the Allowed Claim, is authorized to receive the Distribution, and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can, in any way, defeat or modify the right of the Creditor to receive the Distribution.

10.5    Withholding Taxes.  In connection with this Plan, to the extent applicable, the applicable Disbursing Agent shall comply with all tax withholding and reporting requirements validly imposed on them by any Governmental Authority, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in this Plan to the contrary, the Disbursing Agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, payment of applicable withholding taxes from a Distribution, and conditioning a Distribution upon receipt of necessary tax reporting information from the holder of the Claim.

10.6    Setoffs.  Except as otherwise expressly provided in the Plan and pursuant to Sections 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, the Disbursing Agents may upon application and approval by the Bankruptcy Court, setoff against any Distribution to be made pursuant to the Plan on account of an Allowed Claim any claims, rights or Causes of Action held by the Disbursing Agent against the holder of the Allowed Claim, or in relation to the Allowed Claim; *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Disbursing Agents of any such claims, rights or Causes of Action.  If the Disbursing Agent fails to setoff against a Claim and seeks to collect from the holder of such Claim after Distribution to that holder pursuant to the Plan, the Disbursing Agents shall be entitled to full recovery on the claims of the Debtors or their Estates, if any, against the holder of such Claim.

10.7    Rounding.  Where the calculation of a distribution results in a fraction of a cent owing, the calculation shall be rounded down to the nearest whole cent for purposes of paying (or reserving) the Distribution.

10.8    Undeliverable and Unclaimed Distributions.  Any Person that is entitled to receive a Cash Distribution under the Plan but fails to cash a check within ninety (90) days of its issuance shall be entitled to receive a reissued check from the applicable Disbursing Agent for the amount of the original check, without any interest, if such Person requests the Disbursing Agent to reissue such check and provides such documentation as may be requested to verify that such Person is entitled to such check prior to the later of: (i) the first anniversary of the Effective Date; or (ii) six (6) months after such Person's Claim becomes an Allowed Claim. After the expiration of the applicable deadline to request a check to be reissued, the Person who fails to cash a check within ninety (90) days of its issuance shall not be entitled to receive any Distribution under the Plan on account of the Claim that was attempted to be paid. If the Distribution to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable, no further Distributions will be made to such holder unless and until the applicable Disbursing Agent is notified in writing of such holder's current address; *provided*, *however*, a claim for an undeliverable Distribution must be made within one hundred eighty (180) days following the date of issuance of the original Distribution. After such date, all unclaimed property shall revert to the applicable Disbursing

Agent for further disbursement in accordance with the Plan, and the Claim of any holder or successor to such holder with respect to such property shall be discharged, disallowed, and forever barred notwithstanding any federal or state escheatment laws to the contrary. The Disbursing Agents have no obligation to independently undertake any investigation to determine the whereabouts of any holder of an Allowed Claim.

10.9    <u>Disputed Distributions</u>.  No Distribution will be made on account of a Disputed Claim unless and until it becomes Allowed.  Upon a request for estimation by the Debtors, the Committee or Liquidating Trustee, the Bankruptcy Court will determine what amount of Cash from any initial and subsequent Distributions is sufficient to reserve on account of any Disputed Claim not otherwise treated in the Plan pursuant to Section 502 of the Bankruptcy Code or applicable law; in which case, the amount so determined by the Bankruptcy Court shall be deemed the Allowed amount of such Disputed Claims for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum amount to which such Claim may be ultimately Allowed.  Upon motion by a party in interest, the Bankruptcy Court may determine the appropriate amount of any reserves required in connection with a Disputed Claim.  In the event that a dispute arises as to the rightful owner of an Allowed Claim, or a Distribution thereon, the Disbursing Agents may either (a) deposit the Distribution into the Disputed Claims Reserve until a determination is made as to the rightful owner of the Distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the Distribution, or (b) interplead the Distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the Disputed Distribution and the Persons making claim to such Distribution, reserving the right to assert any and all claims that the Disbursing Agents may have in relation to such interpleader action; *provided, however,* that once segregated or interpleaded, interest shall cease to accrue on an Allowed Claim.

## ARTICLE XI.
## DISCHARGE, RELEASE, INJUNCTION, AND RELATED PROVISIONS[3]

11.1    <u>Discharge of Claims and Termination of Interests</u>. Pursuant to Section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and/or the Plan Supplement, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to Section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or

---

[3] The release, exculpation, and injunction provisions are subject to ongoing review including as part of the Independent Investigation and may be expanded or limited pending the results of the Independent Investigation.

Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

11.2    Term of Injunctions or Stays. Unless otherwise provided herein, the Confirmation Order, or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under Section 362 of the Bankruptcy Code and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

11.3    Releases by the Debtors. **AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN ANY PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES SHALL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE WIND DOWN ADMINISTRATOR, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE WIND DOWN ADMINISTRATOR, THE ESTATES OR, IF APPLICABLE, THE LIQUIDATING TRUST), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE ESTATES, THE LIQUIDATING TRUST (IF APPLICABLE) OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP OR OPERATION THEREOF), THE BANKRUPTCY CASES (INCLUDING THE FILING THEREOF), THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE WIND DOWN ADMINISTRATOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT**

**IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE BANKRUPTCY CASES, THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE PLAN, AND DISCLOSURE STATEMENT, THE INDEPENDENT INVESTIGATION, THE DIP FACILITY, AN ACQUISITION AGREEMENT (IF ANY), THE PCP CREDIT BID TRANSACTION (IF APPLICABLE), THE GFL CREDIT BID TRANSACTION, ANY ALTERNATIVE TRANSACTION, THE FORMATION AND NEGOTIATION OF THE LIQUIDATING TRUST, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT OR RELATED CONTRACTS, AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION), OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE,OTHER THAN OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS A CRIMINAL ACT OR CONSTITUTES INTENTIONAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE: (1) POST-EFFECTIVE DATE OBLIGATIONS OF ANY PERSON OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, OR ANY OTHER DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN; (2) THE RIGHTS OF ANY HOLDER OF ALLOWED CLAIMS TO RECEIVE DISTRIBUTIONS UNDER THE PLAN; (3) THE NON-RELEASED CAUSES OF ACTION; (4) ANY CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS A CRIMINAL ACT OR CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER; OR (5) ANY PERSON OR ENTITY THAT IS NOT A RELEASED PARTY.**

11.4   Mutual Creditor Releases.

(a)   **RELEASE OF PCAP NOTEHOLDER MUTUAL RELEASE PARTIES. AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN ANY PLAN SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE PCAP NOTEHOLDER MUTUAL RELEASE PARTIES**

**SHALL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE PCP LENDER MUTUAL RELEASE PARTIES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES OR, IF APPLICABLE, THE WIND DOWN ESTATE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD BE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PCAP UNSECURED NOTES, PCAP UNSECURED NOTE AGREEMENT, THE DEBTORS, (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP OR OPERATION THEREOF), THE BANKRUPTCY CASES (INCLUDING THE FILING THEREOF), THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE WIND DOWN ADMINISTRATOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND PCAP NOTEHOLDERS, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE BANKRUPTCY CASES, THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE PLAN, AND DISCLOSURE STATEMENT, THE INDEPENDENT INVESTIGATION, THE DIP FACILITY, AN ACQUISITION AGREEMENT (IF ANY), THE PCP CREDIT BID TRANSACTION (IF APPLICABLE), THE GFL CREDIT BID TRANSACTION, ANY ALTERNATIVE TRANSACTION, THE FORMATION AND NEGOTIATION OF THE LIQUIDATING TRUST, THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT OR RELATED CONTRACTS, AGREEMENTS, INSTRUMENTS,**

**OR OTHER DOCUMENTS (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY PCP LENDER MUTUAL RELEASE PARTIES ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION), OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF A PCAP NOTEHOLDER MUTUAL RELEASE PARTY THAT IS A CRIMINAL ACT OR CONSTITUTES INTENTIONAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE IN <u>SECTION 11.4(a)</u> OF THE PLAN (THE "<u>PCAP NOTEHOLDER THIRD PARTY RELEASE</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE PCAP NOTEHOLDER THIRD PARTY RELEASE IS: (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE PCAP NOTEHOLDER MUTUAL RELEASE PARTIES, INCLUDING, WITHOUT LIMITATION, THE PCAP NOTEHOLDER MUTUAL RELEASE PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE IMPLEMENTING THE PLAN; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE PCAP NOTEHOLDER THIRD-PARTY RELEASE; (E) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE PCP LENDER MUTUAL RELEASE PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE PCP LENDER THIRD-PARTY RELEASE. <u>NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY CLAIMS HELD BY THE HOLDER OF ANY CLASS 3 CLAIM WHO HAS OPTED OUT OF THIS RELEASE ON THE BALLOT BY SUBMITTING THE BALLOT PRIOR TO THE VOTING DEADLINE IN THE MANNER SET FORTH IN THE BALLOT ITSELF.</u>**

**(b)    <u>RELEASE OF PCP LENDER MUTUAL RELEASE PARTIES</u>. AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE OBLIGATIONS CONTEMPLATED BY THE DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN ANY PLAN**

**SUPPLEMENT, ON AND AFTER THE EFFECTIVE DATE, THE PCP LENDER MUTUAL RELEASE PARTIES SHALL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE PCAP NOTEHOLDER MUTUAL RELEASE PARTIES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES OR, IF APPLICABLE, THE WIND DOWN ESTATE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD BE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PREPETITION FIRST LIEN PCP CREDIT FACILITY CLAIM, PREPETITION FIRST LIEN PCP CREDIT FACILITY, THE DEBTORS, (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP OR OPERATION THEREOF), THE BANKRUPTCY CASES (INCLUDING THE FILING THEREOF), THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE WIND DOWN ADMINISTRATOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND PCP LENDER MUTUAL RELEASE PARTIES, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE BANKRUPTCY CASES, THE NEGOTIATION, FORMULATION, PREPARATION, DISSEMINATION, OR CONSUMMATION OF THE PLAN, AND DISCLOSURE STATEMENT, THE INDEPENDENT INVESTIGATION, THE DIP FACILITY, AN ACQUISITION AGREEMENT (IF ANY), THE PCP CREDIT BID TRANSACTION (IF APPLICABLE), THE GFL CREDIT BID TRANSACTION, ANY ALTERNATIVE TRANSACTION, THE FORMATION AND NEGOTIATION OF THE LIQUIDATING TRUST, THE**

**DEFINITIVE DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT OR RELATED CONTRACTS, AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY PCAP NOTEHOLDER MUTUAL RELEASE PARTIES ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION), OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF A PCP LENDER MUTUAL RELEASE PARTY THAT IS A CRIMINAL ACT OR CONSTITUTES INTENTIONAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE IN <u>SECTION 11.4(b)</u> OF THE PLAN (THE "<u>PCP LENDER THIRD PARTY RELEASE</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE PCP LENDER THIRD PARTY RELEASE IS: (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE PCP LENDER MUTUAL RELEASE PARTIES, INCLUDING, WITHOUT LIMITATION, THE PCP LENDER MUTUAL RELEASE PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE IMPLEMENTING THE PLAN; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE PCP LENDER THIRD-PARTY RELEASE; (E) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE PCAP NOTEHOLDER MUTUAL RELEASE PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE PCAP NOTEDHOLDER THIRD-PARTY RELEASE. <u>NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY CLAIMS HELD BY THE HOLDER OF ANY CLASS 7 CLAIM WHO HAS OPTED OUT OF THIS RELEASE ON THE BALLOT BY SUBMITTING THE BALLOT PRIOR TO THE VOTING DEADLINE IN THE MANNER SET FORTH IN THE BALLOT ITSELF.</u>**

11.5    <u>Exculpation</u>. To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Cases (including the filing thereof); the negotiation, formulation, preparation, dissemination, execution, filing, and/or consummation of the DIP

Facility, PCP Credit Bid Transaction, the Disclosure Statement, the Restructuring Transactions, the Independent Investigation, and this Plan (including the Definitive Documents and the documents in the Plan Supplement), or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan and the transactions contemplated thereby; the Confirmation Order; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of Securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Wind Down Estates; or the transactions in furtherance of any of the foregoing; or any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion); other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

11.6 <u>Injunction</u>. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released pursuant to <u>Section 11.3</u>, discharged pursuant to <u>Section 11.1</u>, or are subject to exculpation pursuant to <u>Section 11.5</u>, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind Down Estates, the Released Parties, or the Exculpated Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property, or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; or (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action. Notwithstanding anything to the contrary in the foregoing, this injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action in the Bankruptcy Court to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan. Subject in all respects to Article XI, no entity or person may commence or pursue a Claim or Cause of Action

of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim or Cause of Action of any kind, including negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Released Party or Exculpated Party and (ii) specifically authorizing such entity or person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article XI, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

11.7    <u>Protection Against Discriminatory Treatment</u>. Consistent with Section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Authorities, shall not discriminate against the Wind Down Estates or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind Down Estates, or another Entity with whom the Wind Down Estates have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

11.8    <u>Recoupment</u>. In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

## ARTICLE XII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

12.1    <u>Modification and Amendments</u>. Subject to the limitations contained herein, the Debtors reserve the right to alter, amend, or modify the Plan, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and the restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

12.2    Effect of Confirmation on Modifications. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to Section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

12.3    Revocation or Withdrawal of the Plan. The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all Debtors prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date do not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the holders of Claims; (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; or (iv) be used by the Debtors or any other Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims; *provided that*, the foregoing reservation of rights shall not in any way amend, nullify, or void any action, act, or right ratified upon the Bankruptcy Court's entry of the Sale Approval Order.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

13.1    Retention of Jurisdiction.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, unsecured, or subordinated status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections relating to any of the foregoing;

(b)    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

(c)    resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to Section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that distributions to holders of Allowed Claims or Interests are accomplished pursuant to the provisions of the Plan;

(e)     consider any modifications of the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, the Confirmation Order, the Sale Approval Order or any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement, the Confirmation Order, to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into, delivered, or created in connection with the Plan, the Disclosure Statement, or the Confirmation Order in such manner as may be necessary or appropriate to consummate the Plan;

(f)     adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(g)     adjudicate, decide, or resolve any and all matters related to Causes of Action by or against a Debtor, the Liquidating Trust, or Liquidating Trustee;

(h)     adjudicate, decide, or resolve any and all matters related to Sections 1141, 1145, and 1146 of the Bankruptcy Code;

(i)     enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

(j)     enter and enforce any order for the sale of property pursuant to Sections 363 or 1123 of the Bankruptcy Code;

(k)     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(l)     adjudicate, decide, or resolve any dispute and all matters arising under the Liquidating Trust Agreement;

(m)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(n)     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(o)    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

(p)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(q)    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

(r)    adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein, including any Restructuring Transactions;

(s)    determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

(t)    hear and determine matters concerning state, local, and U.S. federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(u)    hear and determine matters concerning Section 1145 of the Bankruptcy Code;

(v)    hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute or matter relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(w)    enforce all orders previously entered by the Bankruptcy Court;

(x)    enter a final decree concluding or closing the Chapter 11 Cases;

(y)    enforce the injunction, release, and exculpation provisions set forth in Article XI of the Plan; and

(z)    hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

14.1    Immediate Binding Effect. Unless otherwise specified in this Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order, shall be immediately effective and enforceable and deemed binding upon the Debtors or the Wind Down Estates, as applicable, and any and all holders of Claims or Interests (regardless of whether the holders of such Claims or Interests are deemed to

64

have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

14.2    Additional Documents. On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, Wind Down Estates, the Liquidating Trust, or the Liquidating Trustee, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

14.3    Reservation of Rights. Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect unless the Effective Date occurs.  Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests.

14.4    Successors and Assigns. The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

14.5    Service of Documents. Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors, the Wind Down Estates, the Liquidating Trust, or the Liquidating Trustee as applicable, shall be served on:

| **Debtors** | **PrimaLend Capital Partners LP** |
| | 3460 Lotus Drive, Suite 100 |
| | Plano, TX 75075 |
| | Attn: Kellie Casse |
| | |
| | and |
| | |
| | **FTI Consulting** |
| | 1166 Avenues of the Americas |
| | Fifteenth Floor |
| | New York, NY 10036 |
| | Attn: Tanya Meerovich |

| | |
|---|---|
| **Attorneys to the Debtors** | **Spencer Fane LLP**<br>5700 Granite Parkway, Suite 650<br>Plano, TX 75024<br>Attn:  Jason P. Kathman<br>          Laurie N. Patton<br>          Alex Anderson<br><br>and<br><br>**Spencer Fane LLP**<br>1000 Walnut Street, Suite 1400<br>Kansas City, MO 64106<br>Attn:  Zachary R.G. Fairlie |
| **United States Trustee** | **Office of the United States Trustee**<br>**for the Northern District of Texas**<br>Earle Cabell Federal Building<br>1100 Commerce Street, Room 976<br>Attn:  Susan Hersch |
| **First Lien PCP Lenders and DIP Lenders** | **CIBC USA, Agent**<br>120 S. LaSalle Street<br>Chicago, IL 60603<br>Attn:  David Gozdecki<br>          Carol Koif |
| **Counsel to the First Lien PCP Lender Agent and DIP Agent** | **Hinshaw & Culbertson LLP**<br>400 Poydras Street, suite 3150<br>New Orleans, LA 70130<br>Attn:  Stewart Spielman |
| **Amarillo National Bank** | **Amarillo National Bank**<br>410 Taylor Street<br>Amarillo, TX 79101<br>Attn: Roxanne Grabbe |
| **Counsel to the Amarillo National Bank** | **Mullen Hoard & Brown, LLP**<br>500 S. Taylor, Suite 800<br>Amarillo, Texas 79101<br>Attn:  Steve Hoard<br>          David Langston |
| **Counsel to the Liquidating Trustee:** | **White & Case, LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020-1095 |

Attn:  Harrison Denman
(harrison.denman@whitecase.com)
    Peter Strom (peter.strom@whitecase.com)

-AND-

**Vartabedian Hester & Haynes, LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Attn:  Martin Sosland (martin.sosland@vhh.law)
    Suki Rosen (suki.rosen@vhh.law)

14.6    <u>Entire Agreement</u>. Except as otherwise indicated, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

14.7    <u>Exhibits</u>. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.stretto.com/PrimaLend/ or the Bankruptcy Court's website at https://www.txnb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

14.8    <u>Nonseverability of Plan Provisions</u>. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted, provided that any such alteration or interpretation shall be acceptable to the Debtors. Notwithstanding any such alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

14.9    <u>Votes Solicited in Good Faith</u>. Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Debtor Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities (if any) offered and sold under the Plan and any previous plan, and, therefore, neither

any of such parties or individuals nor the Wind Down Estates (as applicable) will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities (if any) offered and sold under the Plan and any previous plan.

14.10    <u>Request for Expedited Determination of Taxes</u>. The Debtors or the Liquidating Trustee, as the case may be, shall have the right to request an expedited determination under Section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

14.11    <u>Closing of Chapter 11 Cases</u>. The Wind Down Administrator (as applicable) shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to issue a final decree closing the Chapter 11 Cases.

14.12    <u>No Stay of Confirmation Order</u>. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

14.13    <u>Waiver or Estoppel</u>. Each holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement or the Debtors', or Wind Down Estates' (as applicable) right to enter into settlements was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court or the Noticing and Claims Agent prior to the Confirmation Date.

* * * *

Respectfully submitted, as of the date first set forth below,

Dated:      January 5, 2026
            Plano, Texas

                                                    */s/ Tanya Meerovich*
                                                    Tanya Meerovich
                                                    Chief Restructuring Officer
                                                    PrimaLend Capital Partners LP and
                                                    each Debtor party to the Plan